# 15-1192

# 15-1195

_____

In the

## UNITED STATES COURT OF APPEALS

### *for the*

## SECOND CIRCUIT

━━━━━━━━━━━━━━━━

RABBI JAMES BERNSTEIN, MOSHE AMBERS, BEATRICE ZAKS, SIMA ZAKS, NAFTOLI TESHER,

*Plaintiffs–Appellants*,

MOSDOS CHOFETZ CHAIM, INC., YESHIVA CHOFETZ CHAIM, INC., RABBI MAYER ZAKS, RABBI ARYEH ZAKS, NAFTOLI SOFER,

*Plaintiffs*,

v.

VILLAGE OF WESLEY HILLS, THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF WESLEY HILLS, ROBERT H. FRANKL, in his former official capacity, DAVID A. GOLDSMITH, in his official capacity, EDWARD B. MCPHERSON, in his official capacity, ROBERT I. RHODES, in his former official capacity, JAY B. ROSENSTEIN, in his former official capacity, THE VILLAGE OF POMONA, THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF POMONA, THE VILLAGE OF CHESTNUT RIDGE, THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF CHESTNUT RIDGE, THE VILLAGE OF MONTEBELLO, THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF MONTEBELLO,

*Defendants–Appellees*,

JOINT APPENDIX – VOLUME II, Pages 301 - 600

THE VILLAGE OF NEW HEMPSTEAD, THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF NEW HEMPSTEAD, ROBERT A. MOSKOWITZ, Trustee of the Village of New Hempstead in his individual and former official capacity, FORMER MAYOR HERBERT I. MARSHALL, in his individual and former official capacity, MAYOR OF POMONA  NICHOLAS L. SANDERSON, in his individual and official capacity, ROBERT H. FRANKL, in his individual capacity, DAVID A. GOLDSMITH, in his individual capacity, EDWARD B. MCPHERSON, in his individual capacity, ROBERT I. RHODES, in his individual capacity, JAY B. ROSENSTEIN, in his individual capacity, MAYOR JEROME KOBRE, MAYOR  OF THE VILLAGE OF CHESTNUT RIDGE, in his individual and former official capacity, TRUSTEE HOWARD L. COHEN, in his individual and official capacity, KATHRYN ELLSWORTH, FORMER MAYOR OF MONTEBELLO, A/K/A KATHRYN  GORMAN, in her individual and former official capacity, MAYOR OF MONTEBELLO JEFFERY OPPENHEIM, in his individual and official capacity, JOHN DOE, 1-37,

*Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE VILLAGE OF CHESTNUT RIDGE, THE VILLAGE OF MONTEBELLO, THE VILLAGE OF POMONA, THE VILLAGE OF WESLEY HILLS,

*Petitioners/Plaintiffs/Counterclaim Defendants–Appellees*,

MILTON B. SHAPIRO, DR. SONYA SHAPIRO,

*Petitioners/Plaintiffs*,

v.

MOSDOS CHOFETZ CHAIM, INC.,

*Respondent/Defendant/Counterclaim Plaintiff–Appellant*,

THE TOWN OF RAMAPO, THE TOWN BOARD OF THE  TOWN OF RAMAPO, THE PLANNING BOARD OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ CHAIM OF : RADIN SCENIC DEVELOPMENT, LLC, THE BOARD OF APPEALS OF THE TOWN OF RAMAPO,

*Respondents/Defendants*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**On Appeal From the United States District Court**
**For the Southern District of New York**

# JOINT APPENDIX – Volume II

## Pages 301 - 600

---

**JOSEPH J. HASPEL, ESQ.**
**Attorney for the Appellants**
**1 West Main Street**
**Goshen, New York 10924**
**(845) 294-8950**

**ZARIN & STEINMETZ**
**Attorneys for the Appellees**
**81 Main Street, Suite 415**
**White Plains, New York 10601**
**(914) 682-7800**

**MILBER MAKRIS**
**PLOUSADIS & SEIDEN**
**Attorneys for Appellee**
**3 Barker Avenue – 6th Fl**
**White Plains, NY 10601**
**(914) 260-5097**

# TABLE OF CONTENTS

Docket Entries  (08-1556)…..………………………………….…   1

Docket Entries (12-8856) …………………………………….…..   29

Notice of Appeal  ……………………………………………......   45

Judgment ……………………………………………………….   47

Opinion and Order ……………………………………………   48

Defendants' Notice of Motion for Summary Judgment ……………   124

Defendants' Joint Rule 56.1 Statement ……………………………   127

Declaration of Frank S. Fish, FAICP……………………………..   163

      Exhibit A – Summary Matrix  …………………………….   177

      Exhibit B – Comparative Site Evaluation Report …………   178

Joint Declaration of Jody T. Cross & Gregory R. Saracino ……....   234

     Exhibit A -  Plaintiffs' Amended Complaint
      (08-CV-0156), May 31, 2010 …………………………….   240

     Exhibit B -  Villages of Wesley Hill, Montebello
      and Chestnut Ridge Answer 08-CV-0156)
      Oct. 11, 2011  ……..……………………………………..   280

     Exhibit C – Village of Pomona Answer (08-CV-0156)
      Oct. 11, 2011 …………………….….……………………   319

     Exhibit D – Villages' Amended Verified Petition
      And Complaint (SEQRA Action) Dec. 23, 2004 ………….   356

Exhibit E – Mosdos Answer and Counterclaims

(SEQRA Action) Oct. 16, 2007 …….………………….……    415

Exhibit F – Villages' Answer to Counterclaims
  (SEQRA Action) Dec. 28, 2007 ………………………    483

Exhibit G – Yeshiva Chofetz Chaim of Radin's
  Amended Answer (SEQRA Action) Oct. 17, 2005 …..    567

Exhibit H – Transcript of Deposition of
  Rabbi James Bernstein, Nov. 15, 2012……………………    573

Exhibit I – Transcript of Moshe Ambers, Dec 6, 2012 ……    652

Exhibit J – Transcript of Deposition of
  Naftali Tescher, Nov. 28, 2012 …………………………..    719

Exhibit K – Transcript of Deposition of
  Beatrice Zaks, Oct. 25, 2012 …………………………….    780

Exhibit L – Transcript of Deposition of
  Sima Zaks, Nov. 14, 2012 ……………………………….    877

Exhibit M – Transcript of Deposition of
  Rabbi Aryeh Zaks, Feb. 4, 2013 ………………………….    974

Exhibit N – Transcript of Deposition of
  Rabbi Mayer Zaks, Jan. 29, 2013 ………………………..    1131

Exhibit O – Transcript of Deposition of
  Mayor David Goldsmith, Sept. 11, 2013 ……………….....    1368

Exhibit P – Transcript of Deposition of
  Edward B. McPherson, Sept. 30, 2013 ………………….    1536

Exhibit Q – Transcript of Deposition of
  Robert H. Frankl, Nov. 4, 2013 …………………………    1662

Exhibit R – Transcript of Deposition of
  Robert I. Rhodes, Oct. 7, 2013 …………………………..    1784

Exhibit S – Transcript of Deposition of
  Jeffrey Oppenheim, Sept. 16, 2013 ……………………..    1940

Exhibit T – Transcript of Deposition of
  Jerome Kobre, Oct. 17, 2013 ……………………………    2072

Exhibit U – Villages' Notice of Amended Verified Petition
  And Amended Verified Petition and
  Complaint Sept. 26, 2007 ……………………………..    2230

Exhibit V – Mosdos Notice of and Petition
  For Removal ………………………………………….    2237

Exhibit W – Reply Affidavit of Jeffrey Osterman
  Oct. 7, 2009 (SEQRA Action) ………………………    2244

Exhibit X – Nike Site Negative Declaration
  Nov. 30, 2004 …………………………………………    2252

Exhibit Y – County of Rockland Dept. of Planning
  General Municipal Law Review Nov. 22, 2004 ………    2255

Exhibit Z -  Village of Chestnut Ridge v. Town of Ramapo,
  (04-16876) Sup. Ct. Westchester Cty. Dec. 8, 2009
  (Nicolai, J.) … ………………………….…………….    2258

Exhibit AA – Affidavit of Jeffrey Osterman
  Aug. 14, 2009 (SEQRA Action) ………………………..    2279

Exhibit BB - Village of Chestnut Ridge v. Town of Ramapo
  (04-16876) Sup. Ct. Westchester Cty. Aug. 2, 2005
  (Nicolai, J.) …………………………………………..    2287

Exhibit CC - Save Ramapo Blog Post, Aug. 15, 2004 …    2305

Exhibit DD – Affidavit of Jeffrey Osterman
  Dec. 23, 2004 (SEQRA Action) ………………………    2307

Village of Pomona Notice of Motion for Summary Judgment
 May 9, 2014  …………………………….. …………………… 2321

Mosdos Plaintiffs' Notice of Motion for Summary Judgment
 May 9, 2014 …………………………………………………. 2325

Affirmation of Rabbi Aryeh Zaks …………………………….. 2328

 Exhibit A – Leonard Perles Written Statement
 Dec 14, 2004 …………………………………………….. 2348

Affirmation of Joseph J. Haspel …………………………….. 2350

 Exhibit B – Notice of Amended Verified Petition
 And Petition ………………………………………… 2353

 Exhibit C – Mosdos Answer and Counterclaims …….. 2410

 Exhibit D – Deposition of Robert H. Frankl
 Printed at PP. 1662-1782 …………………………… 2478

 Exhibit E – Deposition of Robert I. Rhodes
 Printed at PP. 1784 – 1938 …………………………. 2479

 Rhodes Deposition Exhibits ……… ………………. 2480

 Exhibit F – Deposition of David Goldsmith
 Printed at PP 1368-1534 …………………………… 2518

 Goldsmith Errata Sheet …………………………… 2519

 Exhibit G – Deposition of Edward B. McPherson
 Printed at PP 1536 – 1660 ………………………… 2520

 Exhibit H – Deposition of Jeffrey Oppenheim
 Printed at PP 1940-2070 ………………………….. 2521

 Oppenheim Errata Sheet ………………………….. 2522

Oppenheim Deposition Exhibits ………...…..……                 2532

Exhibit I – Deposition of Jerome Kobre
 Printed at PP 2072-2228 ……………………………          2533

Kobre Deposition Exhibits …………………………          2534

Mosdos Claimants Rule 56.1 Statement dated May 9, 2014 .        2619

Affidavit of Rabbi A. Zaks dated June 19, 2014 …………..          2632

Exhibit A – Publications and E-Mails Preserve Ramapo          2367

Exhibit B – Notarized Letter of Leonard Perles …….         2696

Mosdos Plaintiffs Counter Rule 56 Statement
 dated June 20, 2014 ………………………………………          2699

Villages Defendants' Counter Rule 56 Statement
 dated June 20, 2014 ………………………………………          2759

Exhibit A – Excerpt of Local Law – ASHL …………          2783

Exhibit B – Letter from Village of Montebello to
 Village of Airmont ……………………………          2787

Exhibit C – Discovery Request ………………………          2791

Exhibit D – Response to Discovery Request …………          2803

Exhibit E – Newspaper article ………………………..          2812

Declaration of David Goldsmith ………………………….          2814

Declaration of Robert Frankl …………………………...          2821

Declaration of Frank Brown …………………………….          2830

Exhibit A – Letter of Marc D. Stern ………………          2837

Declaration of Edward McPherson  ……………………….                    2839

Declaration of Robert Rhodes  …………………………..                      2847

    Exhibit A – Publication of Save Ramapo  ….………                     2858

    Exhibit B – Publication of Save Ramapo  …………….                    2863

Declaration of Jeffrey Oppenheim  ………………………                       2880

Declaration of Jerome Kobre  ………………………………                      2887

Exhibit A to Mosdos Plaintiffs' Reply Memorandum
-   Amended Verified Petition and Complaint  …………..                        2894

Exhibit B to Mosdos Plaintiffs' Reply Memorandum
-   Deed  …………………………………………………….                          2951

Exhibit C to Mosdos Plaintiff's Reply Memorandum
-   Appellate Division Decision  …………………………                          2956

Exhibit D to Mosdos Plaintiffs' Reply Memorandum
-   Order to Show Cause for Injunction  …………………                        2979

Exhibit E to Mosdos Plaintiffs' Reply Memorandum
-   Decision of Court in Mosdos Chofetz Chaim, Inc.
    v. RBS Citizens, N.A., et al  …………………………                        2983

Exhibit F to Mosdos Plaintiffs' Reply Memorandum
-   Appellate Division Decision  …………………………..                         3045

Exhibit G to Mosdos Plaintiffs' Reply Memorandum
-   Letter of Villages' attorney ……………………………                         3054

Order of Court dated February 6, 2015 ……………………….                     3058

Letter of Villages' attorney dated February 11, 2015  ……….                   3060

Order of Court dated February 13, 2015  ……………………      3065

Letter of Mosdos Plaintiffs' attorney dated February 23, 2015      3067

Order of Court dated March 18, 2015  ……………………….      3070

Letter of Villages' attorney dated March 25, 2015 with Exhibits      3072

Letter of Mosdos Plaintiffs' attorney dated March 25, 2015
     with Exhibits …………………………………………………..      3087

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 56 of the Complaint.

57.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 57 of the Complaint.

58.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 58 of the Complaint.

59.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 59 of the Complaint.

60.     Defendants deny the averments contained within Paragraph 60 of the Complaint.

61.     Defendants deny the averments contained within Paragraph 61 of the Complaint, except admit that the Town prepared a Generic EIS in connection with its Comprehensive Plan.

62.     Defendants deny the averments contained within Paragraph 62 of the Complaint.

63.     Defendants deny the averments contained within Paragraph 63 of the Complaint.

64.     Defendants deny the averments contained within Paragraph 64 of the Complaint.

65.     Defendants deny the averments contained within Paragraph 65 of the Complaint.

66.     Defendants deny the averments contained within Paragraph 66 of the Complaint, except admit that the Town adopted a Negative Declaration in connection with the

Adult Student Housing Law (the "ASHL") pursuant to Resolution No. 2004-358 on or about June 15, 2004, and respectfully refer the Court to said Resolution referenced therein for a complete and accurate recitation of its contents.

67.     Defendants deny the averments contained within Paragraph 67 of the Complaint, except admit that the Town enacted Local Law No. 9-2004, and respectfully refer the Court to said Local Law referenced therein for a complete and accurate recitation of its contents.

68.     Defendants deny the averments contained within Paragraph 68 of the Complaint.

69.     Defendants deny the averments contained within Paragraph 69 of the Complaint, and respectfully refer the Court to the documents referenced therein for a complete and accurate recitation of their contents.

70.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 70 of the Complaint.

71.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 71 of the Complaint.

72.     Defendants deny the averments contained within Paragraph 72 of the Complaint.

73.     Defendants deny the averments contained within Paragraph 73 of the Complaint.

74.     Defendants deny the averments contained within Paragraph 74 of the Complaint.

75.     Defendants deny the averments contained within Paragraph 75 of the Complaint.

76.     Defendants deny the averments contained within Paragraph 76 of the Complaint.

77.     Defendants deny the averments contained within Paragraph 77 of the Complaint.

78.     Defendants deny the averments contained within Paragraph 78 of the Complaint.

79.     Defendants deny the averments contained within Paragraph 79 of the Complaint.

80.     Defendants deny the averments contained within Paragraph 80 of the Complaint.

81.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 81 of the Complaint.

82.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 82 of the Complaint, and respectfully refer the Court to the proceedings cited therein entitled <u>Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona</u>, for a complete and accurate recitation of its contents.

83.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 83 of the Complaint, and respectfully refer the Court to the Village of Pomona Zoning Code for a complete and accurate recitation of its contents.

84.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 84 of the Complaint.

85.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 85 of the Complaint.

86.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 86 of the Complaint.

87.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 87 of the Complaint, except admit that Pomona, together with the other Defendant Villages and three non-party Villages, challenged the adoption of the Town's Comprehensive Plan pursuant to the New York State Environmental Quality Review Act ("SEQRA"), and respectfully refer the Court to the matter captioned Village of Airmont, et al. v. Town of Ramapo, et al., Index No. 04-08424 (Sup. Ct. Westchester Cty.) (Nicolai, J.), for a complete and accurate recitation of its contents.

88.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 88 of the Complaint.

89.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 89 of the Complaint.

90.     Defendants deny the averments contained within Paragraph 90 of the Complaint.

91.     Defendants deny the averments contained within Paragraph 91 of the Complaint, except admit that Mr. Rhodes is a former Trustee of the Village of Wesley Hills.

92.     Defendants deny the averments contained within Paragraph 92 of the Complaint, and respectfully refer the Court to the source of the quote cited therein for a complete and accurate recitation of its content, context and accuracy.

93.     Defendants deny the averments contained within Paragraph 93 of the Complaint, except admit that Mr. Rhodes is the chairman of Preserve Ramapo.

94.     Defendants deny the averments contained within Paragraph 94 of the Complaint.

95.     Defendants deny the averments contained within Paragraph 95 of the Complaint.

96.     Defendants deny the averments contained within Paragraph 96 of the Complaint.

97.     Defendants deny the averments contained within Paragraph 97 of the Complaint.

98.     Defendants deny the averments contained within Paragraph 98 of the Complaint, and respectfully refer the Court to the source of the quote cited therein for a complete and accurate recitation of its content, context and accuracy.

99.     Defendants deny the averments contained within Paragraph 99 of the Complaint, and respectfully refer the Court to the source of the quote cited therein for a complete and accurate recitation of its content, context and accuracy.

100.    Defendants deny the averments contained within Paragraph 100 of the Complaint.

101.    Defendants deny the averments contained within Paragraph 101 of the Complaint.

102.    Defendants deny the averments contained within Paragraph 102 of the Complaint.

103.     Defendants deny the averments contained within Paragraph 103 of the Complaint.

104.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 104 of the Complaint

105.     Defendants deny the averments contained within Paragraph 105 of the Complaint.

106.     Defendants deny the averments contained within Paragraph 106 of the Complaint.

107.     Defendants deny the averments contained within Paragraph 107 of the Complaint, and respectfully refer the Court to the Decision referenced therein in the matter Village of Chestnut Ridge v. Town of Ramapo, 45 A.D.3d 74, 841 N.Y.S.2d 321 (2007), for a complete and accurate recitation of its contents.

108.     Defendants deny the averments contained within Paragraph 108 of the Complaint.

109.     Defendants deny the averments contained within Paragraph 109 of the Complaint.

110.     Defendants deny the averments contained within Paragraph 110 of the Complaint.

111.     Defendants deny the averments contained within Paragraph 111 of the Complaint, except admit that Chestnut Ridge is over 4 miles away from the Site.

112.     Defendants deny the averments contained within Paragraph 112 of the Complaint.

113.     Defendants deny the averments contained within Paragraph 113 of the Complaint.

**AS A FIRST CAUSE OF ACTION**
**Free Exercise Clause**
**United States Constitution,**
**First and Fourteenth Amendments**
**42 U.S.C. § 1983**

114.     Defendants incorporate by reference the responses to Paragraphs 1 through 113, as if fully set forth herein, in response to Paragraph 114.

115.     Defendants note in response to Paragraph 115 that the Court dismissed Plaintiffs' First Cause of Action to the extent that it challenges Defendants' respective zoning laws.  (See Order at 46).  To the extent the Court did not dismiss Plaintiffs' First Cause of Action, the averments contained within Paragraph 115 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

116.     Defendants note in response to Paragraph 116 that the Court dismissed Plaintiffs' First Cause of Action to the extent that it challenges Defendants' respective zoning laws.  (See Order at 46).  To the extent the Court did not dismiss Plaintiffs' First Cause of Action, the averments contained within Paragraph 116 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

117.     Defendants note in response to Paragraph 117 that the Court dismissed Plaintiffs' First Cause of Action to the extent that it challenges Defendants' respective zoning laws.  (See Order at 46).  To the extent the Court did not dismiss Plaintiffs' First Cause of Action, the averments contained within Paragraph 117 of the Complaint constitute a legal

conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

### AS A SECOND CAUSE OF ACTION
### Establishment Clause
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

118.   Defendants incorporate by reference the responses to Paragraphs 1 through 117, as if fully set forth herein, in response to Paragraph 118.

119.   Defendants note in response to Paragraph 119 that the Court dismissed Plaintiffs' Second Cause of Action to the extent that it challenges Defendants' respective zoning laws.  (See Order at 46).  To the extent the Court did not dismiss Plaintiffs' Second Cause of Action, the averments contained within Paragraph 119 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

120.   Defendants note in response to Paragraph 120 that the Court dismissed Plaintiffs' Second Cause of Action to the extent that it challenges Defendants' respective zoning laws.  (See Order at 46).  To the extent the Court did not dismiss Plaintiffs' Second Cause of Action, the averments contained within Paragraph 120 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

121.   Defendants note in response to Paragraph 121 that the Court dismissed Plaintiffs' Second Cause of Action to the extent that it challenges Defendants' respective zoning laws.  (See Order at 46).  To the extent the Court did not dismiss Plaintiffs' Second Cause of Action, the averments contained within Paragraph 121 of the Complaint constitute a legal

conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

**AS A THIRD CAUSE OF ACTION**
**Equal Protection Clause**
**United States Constitution,**
**Fourteenth Amendment**
**42 U.S.C. § 1983**

122.    Defendants incorporate by reference the responses to Paragraphs 1 through 121, as if fully set forth herein, in response to Paragraph 122.

123.    The averments contained within Paragraph 123 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

124.    The averments contained within Paragraph 124 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

125.    The averments contained within Paragraph 125 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

**AS A FOURTH CAUSE OF ACTION**
**Fair Housing Act**
**42 U.S.C. § 3604**
**Individual Plaintiffs against Individual Defendant Acting in Individual Capacity**

126.    Defendants incorporate by reference the responses to Paragraphs 1 through 125, as if fully set forth herein, in response to Paragraph 126.

127.    The Court dismissed Plaintiffs' Fourth Cause of Action in its entirety. (See Order at 46-47).    Additionally, the averments contained within Paragraph 127 of the

Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

128.    The Court dismissed Plaintiffs' Fourth Cause of Action in its entirety. (See Order at 46-47).    Additionally, the averments contained within Paragraph 128 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

129.    The Court dismissed Plaintiffs' Fourth Cause of Action in its entirety. (See Order at 46-47).    Additionally, the averments contained within Paragraph 129 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

### AS A FIFTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3617
### Individual Plaintiffs against Individual Acting In Individual Capacity

130.    Defendants incorporate by reference the responses to Paragraphs 1 through 129, as if fully set forth herein, in response to Paragraph 130.

131.    The Court dismissed Plaintiffs' Fifth Cause of Action in its entirety.  (See Order at 46-47).  Additionally, the averments contained within Paragraph 131 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

132.    The Court dismissed Plaintiffs' Fifth Cause of Action in its entirety.  (See Order at 46-47).  Additionally, the averments contained within Paragraph 132 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

133. The Court dismissed Plaintiffs' Fifth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 133 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

## AS A SIXTH CAUSE OF ACTION
### Equal Rights Under the Law
### 42 U.S.C. § 1981

134. Defendants incorporate by reference the responses to Paragraphs 1 through 133, as if fully set forth herein, in response to Paragraph 134.

135. The averments contained within Paragraph 135 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

136. The averments contained within Paragraph 136 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS A SEVENTH CAUSE OF ACTION
### Violation of Civil Rights
### 42 U.S.C. § 1982

137. Defendants incorporate by reference the responses to Paragraphs 1 through 36, as if fully set forth herein, in response to Paragraph 137.

138. The averments contained within Paragraph 138 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained within therein.

139.    The averments contained within Paragraph 139 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

### AS AN EIGHTH CAUSE OF ACTION
### Conspiracy to Interfere with Civil Rights
### 42 U.S.C. § 1985(3)

140.    Defendants incorporate by reference the responses to Paragraphs 1 through 139, as if fully set forth herein, in response to Paragraph 140.

141.    The averments contained within Paragraph 141 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

142.    The averments contained within Paragraph 142 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

### AS A NINTH CAUSE OF ACTION
### Freedom of Association
### 42 U.S.C. § 1982

143.    Defendants incorporate by reference the responses to Paragraphs 1 through 142, as if fully set forth herein, in response to Paragraph 143.

144.    The averments contained within Paragraph 144 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

145.    The averments contained within Paragraph 145 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS A TENTH CAUSE OF ACTION
### Violation of the New York State Constitution

146.    Defendants incorporate by reference the responses to Paragraphs 1 through 145, as if fully set forth herein, in response to Paragraph 146.

147.    The averments contained within Paragraph 147 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

148.    The averments contained within Paragraph 148 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS AN ELEVENTH CAUSE OF ACTION
### Violation of the New York State Constitution

149.    Defendants incorporate by reference the responses to Paragraphs 1 through 148, as if fully set forth herein, in response to Paragraph 149.

150.    The averments contained within Paragraph 150 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

151.    The averments contained within Paragraph 151 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS A TWELFTH CAUSE OF ACTION
### Violation of § 40-c of the New York Civil Rights Law

152.    Defendants incorporate by reference the responses to Paragraphs 1 through 151, as if fully set forth herein, in response to Paragraph 152.

153.  The averments contained within Paragraph 153 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

154.  The averments contained within Paragraph 154 of the Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

155.  Plaintiffs' Complaint is barred on the grounds of absolute and/or qualified immunity under the *Noerr-Pennington* Doctrine.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

156.  Plaintiffs' Complaint fails to allege sufficient facts to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6).

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

157.  Some or all of Plaintiffs' claims are barred by the applicable Statue of Limitations.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

158.  Plaintiffs' claims pursuant to the New York Constitution are barred by Plaintiffs' failure to file a Notice of Claim.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

159.  Plaintiffs lack standing to maintain some or all of their claims.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

160.  Plaintiffs' allegations in their Complaint do not rise to the level of Constitutional violations.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

161.    All actions taken by Defendants toward Plaintiffs were lawful and made in good faith compliance with applicable provisions of all federal, state, and local laws, rules and regulations.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

162.    All actions taken by Defendants with respect to Plaintiffs were taken in good faith and for legitimate, nondiscriminatory reasons.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

163.    Any harm which came to Plaintiffs was a direct and proximate result of their own actions.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

164.    Plaintiffs failed to mitigate their damages, if there are any.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

165.    Plaintiffs' claims are barred by the doctrine of unclean hands.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

166.    Defendants contend that they cannot fully anticipate all affirmative defenses that may be applicable to this action based on the conclusory terms used in Plaintiffs' Complaint.  Accordingly, Defendants expressly reserve the right to assert additional affirmative defenses if and to the extent that such affirmative defenses become applicable.

**WHEREFORE**, Defendants respectfully requests that: (i) Plaintiffs' Complaint be dismissed with prejudice, with costs assessed against Plaintiffs; (ii) attorney's fees be awarded

<u>316</u>

to Defendants pursuant to 42 U.S.C. Section 1988(b); and (iii) the Court grant such other and further relief as the Court deems necessary and proper.

Dated: October 7, 2011
      White Plains, New York

                              Respectfully submitted,

                              ZARIN & STEINMETZ

            By:    s/_____
                    Michael D. Zarin (MDZ-6692)
                    Jody T. Cross (JTC-1433)
                    *Attorneys for Defendants*
                    81 Main Street, Suite 415
                    White Plains, New York 10601
                    (914) 682-7800

## CERTIFICATION

This is to certify that a copy of the foregoing Answer was served or caused by be served via the SDNY ECF system on October 7, 2011, with courtesy copies delivered by regular mail, upon the following:

Andrew F. Pisanelli, Esq.
Milber Makris Plousadis & Seiden, LLP
*Attorneys for all remaining Defendants*
3 Barker Avenue - Sixth Floor
White Plains, New York 10601

Joseph J. Haspel, Esq.
Joseph J. Haspel, PLLC
*Attorney for Plaintiffs*
40 Mathews Street, Suite 201
Goshen, New York 10924

Reuben S. Koolyk
Arnold & Porter LLP
*Attorney for Plaintiffs*
399 Park Avenue
New York, New York 10022

Andrew J. Romanow
Buchanan Ingersoll PC
*Attorneys for RBS Citizens, N.A.*
50 Fountain Plaza, Suite 1230
Buffalo, NY 14202

By:     S/_____
        Michael D. Zarin (MDZ-6692)
        Zarin & Steinmetz
        81 Main Street, Suite 415
        White Plains, New York 10601
        (914) 682-7800

318

**Exhibit C**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
MOSDOS CHOFETZ CHAIM INC., YESHIVA CHOFETZ
CHAIM INC., RABBI JAMES BERNSTEIN, MOSHE
AMBERS, RABBI  NAFTOLI SOFER, NAFTOLI TESHER,
BEATRICE ZAKS and SIMA ZAKS,

                                                        08-CV-0156 (KMK)

                   Plaintiffs,

          - against -

                                                   **ECF CASE**

THE VILLAGE OF WESLEY HILLS; THE MAYOR AND BOARD OF
TRUSTEES OF THE VILLAGE OF WESLEY HILLS; ROBERT H.
FRANKEL, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY;
EDWARD B. MCPHERSON, IN HIS INDIVIDUAL AND OFFICIAL
CAPACITY; DAVID A. GOLDSMITH, IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; ROBERT I. RHODES IN HIS INDIVIDUAL
AND FORMER OFFICIAL CAPACITY; JAY B. ROSENSTEIN, IN      **ANSWER**
HIS INDIVIDUAL AND FORMER OFFICIAL CAPACITY; THE
VILLAGE OF NEW HEMPSTEAD; THE MAYOR AND BOARD OF
TRUSTEES OF THE VILLAGE OF NEW HEMPSTEAD; ROBERT A.
MOSKOWITZ, TRUSTEE OF THE VILLAGE OF NEW HEMPSTEAD,
IN HIS INDIVIDUAL AND FORMER OFFICIAL CAPACITY; THE
VILLAGE OF POMONA; THE MAYOR AND BOARD OF TRUSTEES
OF THE VILLAGE OF  POMONA; FORMER MAYOR HERBERT I.
MARSHALL, IN HIS INDIVIDUAL AND FORMER OFFICIAL
CAPACITY; MAYOR OF POMONA, NICHOLAS L. SANDERSON, IN
HIS INDIVIDUAL AND OFFICIAL CAPACITY; THE VILLAGE OF
CHESTNUT RIDGE; MAYOR AND BOARD OF TRUSTEES OF THE
VILLAGE OF CHESTNUT RIDGE; MAYOR OF THE VILLAGE OF
CHESTNUT RIDGE, JEROME KOBRE IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; HOWARD L. COHEN, TRUSTEE, IN HIS
INDIVIDUAL AND OFFICIAL  CAPACITY; THE VILLAGE OF
MONTEBELLO; THE MAYOR AND BOARD OF TRUSTEES OF THE
VILLAGE OF MONTEBELLO; KATHRYN ELLSWORTH A.K.A.
KATHRYN GORMAN, FORMER MAYOR OF MONTEBELLO IN HER
INDIVIDUAL AND FORMER OFFICIAL CAPACITY; JEFFREY
OPPENHEIM, MAYOR OF MONTEBELLO IN HIS INDIVIDUAL AND
OFFICIAL CAPACITY; JOHN DOE 1-37,

                          Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

The Defendants THE VILLAGE OF POMONA and THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF POMONA[1] ("Defendants"), by their attorneys, Milber Makris Plousadis & Seiden, LLP, as and for their Answer to the document named "Amended Complaint" alleges the following upon information and belief:

## NATURE OF THIS ACTION

1.      The averments contained within Paragraph 1 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

2.      Defendants deny the averments contained within Paragraph 2 of the Amended Complaint. Defendants further respectfully refer the Court to the case *LeBlanc-Sternberg v. Fletcher*, 67 F.3d 412 (2d Cir. 1995), cited in Paragraph 2 of the Amended Complaint, for a complete and accurate recitation of its contents.

3.      Defendants deny the averments contained within Paragraph 3 of the Amended Complaint.

4.      Defendants deny the averments contained within Paragraph 4 of the Amended Complaint.

5.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 5 of the Amended Complaint with regard to Plaintiffs' motivation for commencing the instant action. Defendants deny the remaining averments contained within Paragraph 4 of the Amended Complaint.

---

[1] All claims against former defendants Herbert I. Marshall and Nicholas L. Sanderson both in their individual and official capacities have been dismissed in the Court's Order dated September 26, 2011.

## JURISDICTION AND VENUE

6. The averments contained within Paragraph 6 of the Amended Complaint constitute a legal conclusion to which no response is required. Defendants respectfully refer any and all questions of law to the Court, and respectfully refer the Court to the statutes cited therein for a complete and accurate recitation of their contents.

7. The averments contained within Paragraph 7 of the Amended Complaint constitute a legal conclusion to which no response is required. Defendants respectfully refer any and all questions of law to the Court, and respectfully refer the Court to the statute cited therein for a complete and accurate recitation of its contents.

## PARTIES

8. Pursuant to the Opinion and Order of this Court in this matter, dated September 26, 2011 (the "Order"), Plaintiff Mosdos Chofetz Chaim Inc. ("Mosdos") has been dismissed from this action, and as such, no response to the averments contained within Paragraph 8 of the Amended Complaint is required. (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 8 of the Amended Complaint.

9. Pursuant to the Order, Plaintiff Yeshiva Chofetz Chaim, Inc. has been dismissed from this action, and as such, no response to the averments contained within in Paragraph 9 of the Amended Complaint is required. (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 9 of the Amended Complaint.

10. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 10 of the Amended Complaint, except that

to the extent that the averments contained therein allege that Defendants took actions to prevent any of Plaintiffs' religious exercise, speech, assembly, and/or instructions, Defendants deny such averments.

11.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 11 of the Amended Complaint, except that to the extent that the averments contained therein allege that Defendants took actions to prevent any of Plaintiffs' religious exercise, speech, assembly, and/or instructions, Defendants deny such averments.

12.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 12 of the Amended Complaint, except that to the extent that the averments contained therein allege that Defendants took actions to prevent any of Plaintiffs' religious exercise, speech, assembly, and/or instructions, Defendants deny such averments.

13.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 13 of the Amended Complaint, except that to the extent that the averments contained therein allege that Defendants took actions to prevent any of Plaintiffs' religious exercise, speech, assembly, and/or instructions, Defendants deny such averments.

14.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 14 of the Amended Complaint, except that to the extent that the averments contained therein allege that Defendants took actions to prevent any of Plaintiffs' religious exercise, speech, assembly, and/or instructions, Defendants deny such averments.

15. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 15 of the Amended Complaint, except that to the extent that the averments contained therein allege that Defendants took actions to prevent any of Plaintiffs' religious exercise, speech, assembly, and/or instructions, Defendants deny such averments.

16. Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 16 of the Amended Complaint.

17. Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Goldsmith. (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 17 of the Amended Complaint.

18. Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. McPherson. (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 18 of the Amended Complaint.

19. Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Frankel (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 19 of the Amended Complaint.

20. Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Goldsmith. (See Order

at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 20 of the Amended Complaint.

21.     Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Rhodes. (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 21 of the Amended Complaint.

22.     Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Rosenstein. (See Order at 44). To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 22 of the Amended Complaint.

23.     Defendants admit the averments contained within Paragraph 23 of the Amended Complaint.

24.     Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Marshall. (See Order at 44). In addition, the Court dismissed all of Plaintiffs' claims against Mr. Marshall in his official capacity. (Id. at 53). As such, no response to Paragraph 24 of the Amended Complaint is required.

25.     Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Sanderson. (See Order at 44). In addition, the Court dismissed all of Plaintiffs' claims against Mr. Sanderson in his

official capacity. (Id. at 53). As such, no response to Paragraph 25 of the Amended Complaint is required.

26.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 26 of the Amended Complaint.

27.  Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Dr. Oppenheim. (See Order at 44). To the extent that a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 27 of the Amended Complaint.

28.  Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Ms. Ellsworth. (See Order at 44). To the extent that a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 28 of the Amended Complaint.

29.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 29 of the Amended Complaint.

30.  Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Kobre. (See Order at 44). To the extent that a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 30 of the Amended Complaint.

31.  Pursuant to the Order, the Court dismissed all of Plaintiffs' claims against all individual Defendants named in their individual capacity, including Mr. Cohen. (See Order at 44). To the extent that a response is required, Defendants are without knowledge or information

sufficient to form a belief as to the truth of the averments contained within Paragraph 31 of the Amended Complaint.

## **FACTUAL BACKGROUND**

32.     Defendants deny the averments contained within Paragraph 32 of the Amended Complaint.

33.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 33 of the Amended Complaint.

34.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 34 of the Amended Complaint.

35.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 35 of the Amended Complaint respectfully refer the Court to proceedings in the cited action, *Yeshiva Chofetz Chaim v. Village of New Hempstead*, for a complete and accurate recitation of those proceedings.

36.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within the Paragraph 36 of the Amended Complaint, except deny the averments relating to discriminatory practices and actions by Defendants.

37.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 37 of the Amended Complaint.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 38 of the Amended Complaint.

39.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 39 of the Amended Complaint.

40.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 40 of the Amended Complaint, except

Defendants deny that they have each individually and/or collectively acted to restrain the growth of the Orthodox and Hasidic Jewish communities.

41.     Defendants deny the averments contained within Paragraph 41 of the Amended Complaint.

42.     Defendants deny the averments contained within Paragraph 42 of the Amended Complaint, except Defendants are without knowledge or information sufficient to form a belief as to the truth of whether the Villages of Montebello, Chestnut Ridge and Wesley Hills are located within the geographic boundaries of the Town.

43.     Defendants deny the averments contained within Paragraph 43 of the Amended Complaint.

44.     Defendants deny the averments contained within Paragraph 44 of the Amended Complaint.

45.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 45 of the Amended Complaint.

46.     Defendants deny the averments contained within Paragraph 46 of the Amended Complaint.

47.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 47 of the Amended Complaint.

48.      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 48 of the Amended Complaint.

49.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 49 of the Amended Complaint.

50.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 50 of the Amended Complaint.

51. Defendants deny the averments contained within Paragraph 51 of the Amended Complaint.

52. Defendants answer the averments within the subparagraphs of Paragraph 52, as follows:

**(a)** Defendants deny the averments contained within Paragraph 52(a), and respectfully refer the Court to the relevant Exhibits annexed to the Affidavit of Michael D. Zarin, dated September 20, 2010, and submitted to the Court in connection with the Motion to Dismiss the Amended Complaint (the "September 2010 Exhibits"), for a complete and accurate recitation of their contents.

(i) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(a)(i) of the Amended Complaint.

(ii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(a)(ii) of the Amended Complaint.

(iii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(a)(iii) of the Amended Complaint.

(iv) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(a)(iv) of the Amended Complaint.

(v) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(a)(v) of the Amended Complaint.

(vi) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(a)(vi) of the Amended Complaint.

(vii) Defendants deny the averments contained within Paragraph 52(a)(vii) of the Amended Complaint.

(viii)    Defendants deny the averments contained within Paragraph 52(a)(viii) of the Amended Complaint.[2]

**(b)**    Defendants deny the averments contained within Paragraph 52(b) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

(i)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(b)(i) of the Amended Complaint.

(ii)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(b)(ii) of the Amended Complaint.

(iii)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(b)(iii) of the Amended Complaint.

(iv)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(b)(iv) of the Amended Complaint.

(v)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(b)(v) of the Amended Complaint.

(vi)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(b)(vi) of the Amended Complaint.

(vii)    Defendants deny the averments contained within Paragraph 52(b)(vii) of the Amended Complaint.

(viii)    Defendants deny the averments contained within Paragraph 52(b )(viii) of the Amended Complaint.[3]

---

[2]  This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(a)(vi).
[3]  This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(b)(vi).

**(c)**    Defendants deny the averments contained within Paragraph 52(c) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

(i)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52( c )(i) of the Amended Complaint.

(ii)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52( c )(ii) of the Amended Complaint.

(iii)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52( c )(iii) of the Amended Complaint.

(iv)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(iv) of the Amended Complaint.

(v)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(v) of the Amended Complaint.

(vi)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(vi) of the Amended Complaint.

(vii)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(vii) of the Amended Complaint.

(viii)    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(viii) of the Amended Complaint.[4]

**(d)**    Defendants deny the averments contained within Paragraph 52( d) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

---

[4] This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(c)(vi).

(i)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(d)(i) of the Amended Complaint.

(ii)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(d)(ii) of the Amended Complaint.

(iii)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(d)(iii) of the Amended Complaint.

(iv)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(d)(iv) of the Amended Complaint.

(v)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(d)(v) of the Amended Complaint.

(vi)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(d)(vi) of the Amended Complaint.

(vii)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(vii) of the Amended Complaint.

(viii)      Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(c)(viii) of the Amended Complaint.[5]

**(e)**      This Court has already determined that the Harbors of Haverstraw is not a similarly situated comparator to the Site, due to the fact that an Environmental Impact Statement ("EIS") was prepared in connection therewith. (See Order at 39). To the extent that a response is required, Defendants deny the averments contained within Paragraph 52(e) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

---

[5] This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(d)(vi).

(i)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(i) of the Amended Complaint.

(ii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(ii) of the Amended Complaint.

(iii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(iii) of the Amended Complaint.

(iv)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(iv) of the Amended Complaint.

(v)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e) (v) of the Amended Complaint.

(vi)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(vi) of the Amended Complaint.

(vii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(vii) of the Amended Complaint.

(viii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(e)(viii) of the Amended Complaint.[6] This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(e)(vi).

(f)     Defendants deny the averments contained within Paragraph 52(f) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

(i)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(i) of the Amended Complaint.

---

[6] This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(e)(vi).

(ii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(ii) of the Amended Complaint.

(iii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(iii) of the Amended Complaint.

(iv)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(iv) of the Amended Complaint.

(v)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(v) of the Amended Complaint.

(vi)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(vi) of the Amended Complaint.

(vii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(vii) of the Amended Complaint.

(viii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(f)(viii) of the Amended Complaint.[7]

**(g)**     This Court has already determined that Minisceongo Park is not a similarly situated comparator to the Site, due to the fact that an EIS was prepared in connection therewith. (See Order at 40). To the extent that a response is required, Defendants deny the averments contained within Paragraph 52(g) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

(i)     Defendants deny the averments contained within Paragraph 52(g)(i) of the Amended Complaint.

(ii)     Defendants deny the averments contained within Paragraph 52(g)(ii) of the Amended Complaint.

---

[7] This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(f)(vi).

(iii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(g)(iii) of the Amended Complaint.

(iv) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(g)(iv) of the Amended Complaint.

(v) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(g)(v) of the Amended Complaint.

(vi) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(g)(vi) of the Amended Complaint.

(vii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(g)(vii) of the Amended Complaint.

(viii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(g)(viii) of the Amended Complaint.[8]

**(h)** Defendants deny the averments contained within Paragraph 52(h) of the Amended Complaint, and respectfully refer the Court to the relevant September 2010 Exhibits for a complete and accurate recitation of their contents.

(i) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(i) of the Amended Complaint.

(ii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(ii) of the Amended Complaint.

(iii) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(iii) of the Amended Complaint.

(iv) Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(iv) of the Amended Complaint.

---

[8] This Paragraph is incorrectly numbered in the Amended Complaint as Paragraph 52(g)(vi).

(v)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(v) of the Amended Complaint.

(vi)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(vi) of the Amended Complaint.

(vii)     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 52(h)(vii) of the Amended Complaint.

53.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 53 of the Amended Complaint.

54.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 54 of the Amended Complaint.

55.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 55 of the Amended Complaint.

56.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 56 of the Amended Complaint.

57.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 57 of the Amended Complaint.

58.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 58 of the Amended Complaint.

59.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 59 of the Amended Complaint.

60.     Defendants deny the averments contained within Paragraph 60 of the Amended Complaint.

61.     Defendants deny the averments contained within Paragraph 61 of the Amended Complaint, except admit that the Town prepared a Generic EIS in connection with its Comprehensive Plan.

62.     Defendants deny the averments contained within Paragraph 62 of the Amended Complaint.

63.     Defendants deny the averments contained within Paragraph 63 of the Amended Complaint.

64.     Defendants deny the averments contained within Paragraph 64 of the Amended Complaint.

65.     Defendants deny the averments contained within Paragraph 65 of the Amended Complaint.

66.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 66 of the Amended Complaint.

67.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 67 of the Amended Complaint.

68.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 68 of the Amended Complaint.

69.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 69 of the Amended Complaint.

70.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 70 of the Amended Complaint.

71.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 71 of the Amended Complaint.

72.     Defendants deny the averments contained within Paragraph 72 of the Amended Complaint.

73.     Defendants deny the averments contained within Paragraph 73 of the Amended Complaint.

74.     Defendants deny the averments contained within Paragraph 74 of the Amended Complaint.

75.     Defendants deny the averments contained within Paragraph 75 of the Amended Complaint.

76.     Defendants deny the averments contained within Paragraph 76 of the Amended Complaint.

77.     Defendants deny the averments contained within Paragraph 77 of the Amended Complaint.

78.     Defendants deny the averments contained within Paragraph 78 of the Amended Complaint.

79.     Defendants deny the averments contained within Paragraph 79 of the Amended Complaint.

## **VILLAGE OF POMONA**

80.     Defendants deny the averments contained within Paragraph 80 of the Amended Complaint.

81.     Defendants deny the averments contained within Paragraph 81 of the Amended Complaint.

82.     Defendants deny the averments contained within Paragraph 82 of the Amended Complaint, and respectfully refer the Court to the proceedings cited therein entitled

*Congregation Rabbinical College of Tartikov, Inc. v. Village of Pomona*, for a complete and accurate recitation of its contents.

83.    Defendants deny the averments contained within Paragraph 83 of the Amended Complaint, and respectfully refer the Court to the Village of Pomona Zoning Code for a complete and accurate recitation of its contents.

84.    Defendants deny the averments contained within Paragraph 84 of the Amended Complaint.

85.    Defendants deny the averments contained within Paragraph 85 of the Amended Complaint.

86.    Defendants deny the averments contained within Paragraph 86 of the Amended Complaint.

87.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 87 of the Amended Complaint, except admit that Pomona, together with the other Defendant Villages and three non-party Villages, challenged the adoption of the Town's Comprehensive Plan pursuant to the New York State Environmental Quality Review Act ("SEQRA"), and respectfully refer the Court to the matter captioned *Village of Airmont, et al. v. Town of Ramapo, et al.*, Index No. 04-08424 (Sup. Ct. Westchester Cty.) (Nicolai, J.), for a complete and accurate recitation of its contents.

88.    Defendants deny the averments contained within Paragraph 88 of the Amended Complaint.

**VILLAGE OF WESLEY HILLS**

89.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 89 of the Amended Complaint.

90.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 90 of the Amended Complaint.

91.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 91 of the Amended Complaint.

92.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 92 of the Amended Complaint, and respectfully refer the Court to the source of the quote cited therein for a complete and accurate recitation of its content, context and accuracy.

93.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 93 of the Amended Complaint.

94.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 94 of the Amended Complaint.

95.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 95 of the Amended Complaint.

96.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 96 of the Amended Complaint.

97.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 97 of the Amended Complaint.

98.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 98 of the Amended Complaint, and respectfully refer the Court to the source of the quote cited therein for a complete and accurate recitation of its content, context and accuracy.

99.     Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 99 of the Amended Complaint, and

respectfully refer the Court to the source of the quote cited therein for a complete and accurate recitation of its content, context and accuracy.

100.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 100 of the Amended Complaint.

101.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 101 of the Amended Complaint.

102.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 102 of the Amended Complaint.

103.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 103 of the Amended Complaint.

104.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 104 of the Amended Complaint

105.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 105 of the Amended Complaint

106.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 106 of the Amended Complaint

107.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 107 of the Amended Complaint, and respectfully refer the Court to the Decision referenced therein in the matter *Village of Chestnut Ridge v. Town of Ramapo*, 45 A.D.3d 74, 841 N.Y.S.2d 321 (2007), for a complete and accurate recitation of its contents.

## VILLAGE OF CHESTNUT RIDGE

108.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 108 of the Amended Complaint

109.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 109 of the Amended Complaint

110.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 110 of the Amended Complaint

111.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 111 of the Amended Complaint

112.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 112 of the Amended Complaint

113.    Defendants are without knowledge or information sufficient to form a belief as to the truth of the averments contained within Paragraph 113 of the Amended Complaint.

## AS A FIRST CAUSE OF ACTION
**Free Exercise Clause**
**United States Constitution,**
**First and Fourteenth Amendments**
**42 U.S.C. § 1983**

114.    Defendants incorporate by reference the responses to Paragraphs 1 through 113, as if fully set forth herein, in response to Paragraph 114.

115.    Defendants note in response to Paragraph 115 that the Court dismissed Plaintiffs' First Cause of Action to the extent that it challenges Defendants' respective zoning laws. (See Order at 46). To the extent the Court did not dismiss Plaintiffs' First Cause of Action, the averments contained within Paragraph 115 of the Amended Complaint constitute a legal

conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

116.    Defendants note in response to Paragraph 116 that the Court dismissed Plaintiffs' First Cause of Action to the extent that it challenges Defendants' respective zoning laws. (See Order at 46). To the extent the Court did not dismiss Plaintiffs' First Cause of Action, the averments contained within Paragraph 116 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

117.    Defendants note in response to Paragraph 117 that the Court dismissed Plaintiffs' First Cause of Action to the extent that it challenges Defendants' respective zoning laws. (See Order at 46). To the extent the Court did not dismiss Plaintiffs' First Cause of Action, the averments contained within Paragraph 117 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.


### AS A SECOND CAUSE OF ACTION
**Establishment Clause**
**United States Constitution,**
**First and Fourteenth Amendments**
**42 U.S.C. § 1983**

118.    Defendants incorporate by reference the responses to Paragraphs 1 through 117, as if fully set forth herein, in response to Paragraph 118.

119.    Defendants note in response to Paragraph 119 that the Court dismissed Plaintiffs' Second Cause of Action to the extent that it challenges Defendants' respective zoning laws. (See Order at 46). To the extent the Court did not dismiss Plaintiffs' Second Cause of Action, the averments contained within Paragraph 119 of the Amended Complaint constitute a legal

conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

120. Defendants note in response to Paragraph 120 that the Court dismissed Plaintiffs' Second Cause of Action to the extent that it challenges Defendants' respective zoning laws. (See Order at 46). To the extent the Court did not dismiss Plaintiffs' Second Cause of Action, the averments contained within Paragraph 120 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

121. Defendants note in response to Paragraph 121 that the Court dismissed Plaintiffs' Second Cause of Action to the extent that it challenges Defendants' respective zoning laws. (See Order at 46). To the extent the Court did not dismiss Plaintiffs' Second Cause of Action, the averments contained within Paragraph 121 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

**AS A THIRD CAUSE OF ACTION**
**Equal Protection Clause**
**United States Constitution,**
**Fourteenth Amendment**
**42 U.S.C. § 1983**

122. Defendants incorporate by reference the responses to Paragraphs 1 through 121, as if fully set forth herein, in response to Paragraph 122.

123. The averments contained within Paragraph 123 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

124.    The averments contained within Paragraph 124 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

125.    The averments contained within Paragraph 125 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS A FOURTH CAUSE OF ACTION
### Fair Housing Act
### 42 U.S.C. § 3604
### Individual Plaintiffs Against Individual Defendant
### Acting in Individual Capacity

126.    Defendants incorporate by reference the responses to Paragraphs 1 through 125, as if fully set forth herein, in response to Paragraph 126.

127.    The Court dismissed Plaintiffs' Fourth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 127 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

128.    The Court dismissed Plaintiffs' Fourth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 128 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

129.    The Court dismissed Plaintiffs' Fourth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 129 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

## AS A FIFTH CAUSE OF ACTION
**Fair Housing Act**
**42 U.S.C. § 3617**
**Individual Plaintiffs Against Individual**
**Acting In Individual Capacity**

130.     Defendants incorporate by reference the responses to Paragraphs 1 through 129, as if fully set forth herein, in response to Paragraph 130.

131.     The Court dismissed Plaintiffs' Fifth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 131 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

132.     The Court dismissed Plaintiffs' Fifth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 132 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

133.     The Court dismissed Plaintiffs' Fifth Cause of Action in its entirety. (See Order at 46-47). Additionally, the averments contained within Paragraph 133 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that a response to said averments is required, Defendants deny the averments contained therein.

## AS A SIXTH CAUSE OF ACTION
**Equal Rights Under the Law**
**42 U.S.C. § 1981**

134.     Defendants incorporate by reference the responses to Paragraphs 1 through 133, as if fully set forth herein, in response to Paragraph 134.

135.    The averments contained within Paragraph 135 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

136.    The averments contained within Paragraph 136 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.


### AS A SEVENTH CAUSE OF ACTION
### Violation of Civil Rights
### 42 U.S.C. § 1982

137.    Defendants incorporate by reference the responses to Paragraphs 1 through 36, as if fully set forth herein, in response to Paragraph 137.

138.    The averments contained within Paragraph 138 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained within therein.

139.    The averments contained within Paragraph 139 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.


### AS AN EIGHTH CAUSE OF ACTION
### Conspiracy to Interfere with Civil Rights
### 42 U.S.C. § 1985(3)

140.    Defendants incorporate by reference the responses to Paragraphs 1 through 139, as if fully set forth herein, in response to Paragraph 140.

141.   The averments contained within Paragraph 141 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

142.   The averments contained within Paragraph 142 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

### AS A NINTH CAUSE OF ACTION
**Freedom of Association**
**42 U.S.C. § 1982**

143.   Defendants incorporate by reference the responses to Paragraphs 1 through 142, as if fully set forth herein, in response to Paragraph 143.

144.   The averments contained within Paragraph 144 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

145.   The averments contained within Paragraph 145 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

### AS A TENTH CAUSE OF ACTION
**Violation of the New York State Constitution**

146.   Defendants incorporate by reference the responses to Paragraphs 1 through 145, as if fully set forth herein, in response to Paragraph 146.

147.   The Court dismissed Plaintiffs' Tenth Cause of Action in its entirety as to the Pomona Defendants. (See Order at 53). Additionally, the averments contained within Paragraph

147 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

148.    The Court dismissed Plaintiffs' Tenth Cause of Action in its entirety as to the Pomona Defendants. (See Order at 53). Additionally, the averments contained within Paragraph 148 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.


### AS AN ELEVENTH CAUSE OF ACTION
### Violation of the New York State Constitution

149.    Defendants incorporate by reference the responses to Paragraphs 1 through 148, as if fully set forth herein, in response to Paragraph 149.

150.    The Court dismissed Plaintiffs' Eleventh Cause of Action in its entirety as to the Pomona Defendants. (See Order at 53). Additionally, the averments contained within Paragraph 150 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

151.    The Court dismissed Plaintiffs' Eleventh Cause of Action in its entirety as to the Pomona Defendants. (See Order at 53). Additionally, the averments contained within Paragraph 151 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

## AS A TWELFTH CAUSE OF ACTION
### Violation of § 40-c of the New York Civil Rights Law

152.    Defendants incorporate by reference the responses to Paragraphs 1 through 151, as if fully set forth herein, in response to Paragraph 152.

153.    The Court dismissed Plaintiffs' Twelfth Cause of Action in its entirety as to the Pomona Defendants. (See Order at 53). Additionally, the averments contained within Paragraph 153 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.

154.    The Court dismissed Plaintiffs' Twelfth Cause of Action in its entirety as to the Pomona Defendants. (See Order at 53). Additionally, the averments contained within Paragraph 154 of the Amended Complaint constitute a legal conclusion to which no response is required; however, to the extent that said averments do not constitute a legal conclusion, Defendants deny the averments contained therein.


## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

155.    Plaintiffs' Amended Complaint is barred on the grounds of absolute and/or qualified immunity under the *Noerr-Pennington* Doctrine.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

156.    Plaintiffs' Amended Complaint fails to allege sufficient facts to state a claim upon which relief can be granted pursuant to FRCP 12(b)(6).

## AS AND FOR A THIRD AFFIRMATIVE DEFENSE

157.    Some or all of Plaintiffs' claims are barred by the applicable Statute of Limitations.

## AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

158.     Plaintiffs' claims pursuant to the New York Constitution are barred by Plaintiffs' failure to file a Notice of Claim.

## AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

159.     Plaintiffs lack standing to maintain some or all of their claims.

## AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

160.     Plaintiffs' allegations in their Amended Complaint do not rise to the level of Constitutional violations.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

161.     All actions taken by Defendants toward Plaintiffs were lawful and made in good faith compliance with applicable provisions of all federal, state, and local laws, rules and regulations.

## AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

162.     All actions taken by Defendants with respect to Plaintiffs were taken in good faith and for legitimate, nondiscriminatory reasons.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

163.     If the plaintiff sustained any damages as alleged, which damages are expressly denied, then all such damages will have been caused or brought about in whole or in part by the affirmative wrongdoing, fault, negligence and failure of due care (hereinafter "culpable conduct") of the plaintiffs and/or their agents, and any recovery should be thereby diminished in the proportion which the plaintiffs' culpable conduct bears to the conduct which caused the alleged damages.

## AS AND FOR A TENTH AFFIRMATIVE DEFENSE

164.    Pursuant to Article 16 of the CPLR, the liability of the answering defendants, if any, to the plaintiffs for non-economic loss is limited to its equitable share, determined in accordance with the relative culpability of all persons or entities contributing to the total liability for non-economic loss, including named parties, parties to be joined and others over whom the plaintiff could have obtained personal jurisdiction with due diligence.

## AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

165.    That in the event the plaintiffs recover a verdict or judgment against the answering defendants, then said verdict or judgment must be reduced pursuant to CPLR §4545(c) by those amounts which have been, or will, with reasonable certainty, replace or indemnify the plaintiff in whole or in part, for any past or future claimed economic loss, any collateral source such as insurance.

## AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE

166.    If the plaintiffs sustained any damages as alleged in the Verified Complaint, such damages were caused, aggravated or contributed to by the plaintiffs' failure to take reasonable efforts to mitigate damages, and any award made to the plaintiffs must be reduced in such proportion and to the extent that the injuries complained of were caused, aggravated or contributed to by said failure to mitigate damages.

## AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE

167.    This action should be dismissed for plaintiffs' failure to join a necessary party or necessary parties.

## AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE

168.    Plaintiffs' claims are barred by the doctrine of unclean hands.

## AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE

169.    Defendants contend that they cannot fully anticipate all affirmative defenses that may be applicable to this action based on the conclusory terms used in Plaintiffs' Amended Complaint. Accordingly, Defendants expressly reserve the right to assert additional affirmative defenses if and to the extent that such affirmative defenses become applicable.


**WHEREFORE,** Defendants respectfully request that: (i) Plaintiffs' Amended Complaint be dismissed with prejudice, with costs assessed against Plaintiffs; (ii) attorney's fees be awarded to Defendants pursuant to 42 U.S.C. Section 1988(b); and (iii) the Court grant such other and further relief as the Court deems necessary and proper.


Dated: White Plains, New York
       October 11, 2011


Yours, etc.,

MILBER MAKRIS PLOUSADIS
 & SEIDEN, LLP


By: /S_____
        Gregory R. Saracino (GS-1020)
Attorneys for Defendants
*The Village of Pomona and the Mayor and*
*Board of Trustees of the Village of Pomona*
3 Barker Avenue, 6th Floor
White Plains, New York 10601
(914) 681-8700

To:    Joseph J. Haspel (JJH-5753)
       Attorney for Plaintiffs
       40 Matthews Street, Suite 201
       Goshen, New York 10924
       (845) 294-8950

       Michael D. Zarin (MDZ-6692)
       Jody T. Cross (JTC-1433)
       ZARIN & STEINMETZ
       The Remaining Defendants
       81 Main Street, Suite 415
       White Plains, New York 10601
       (914) 682-7800

## ATTORNEY VERIFICATION

GREGORY R. SARACINO, being duly sworn, deposes and says that he is a member the law firm Milber Makris Plousadis & Seiden, LLP, counsel for THE VILLAGE OF POMONA and THE MAYOR AND BOARD OF TRUSTEES OF THE VILLAGE OF POMONA, the answering defendants in the within action.[9] The defendant is not within the county where deponent has his office. Deponent has read the foregoing Answer to the Amended Complaint and knows the contents thereof; that the same is true on the basis of information and belief, based upon books and records in the possession of deponent, and conversation with the defendant.

Dated: White Plains, New York
        October 11, 2011

By: /S_____
        Gregory R. Saracino (GS-1020)

---

[9] All claims against former defendants Herbert I. Marshall and Nicholas L. Sanderson both in their individual and official capacities have been dismissed in the Court's Order dated September 26, 2011.

**Exhibit D**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE VILLAGE OF CHESTNUT RIDGE, THE :
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS, : Index No. 04-16846
JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO, : Assigned Judge:
 Hon. Francis A. Nicolai
     Petitioners/Plaintiffs, :

  - against - : NOTICE OF AMENDED
   VERIFIED PETITION

THE TOWN OF RAMAPO, THE TOWN :
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF :
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC DEVELOPMENT, LLC and :
THE BOARD OF APPEALS OF THE TOWN OF
RAMAPO, :

    Respondents/Defendants. :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**RECEIVED**
DEC 2 3 2004
CHIEF CLERK
WESTCHESTER SUPREME
AND COUNTY COURTS

  **PLEASE TAKE NOTICE**, that upon the Amended Verified Petition of

Petitioners, verified on the 23rd day of December 2004, and upon all pleadings and proceedings

previously had and filed herein, including, the Memorandum of Law in Support of Petitioners'

Article 78 Petition dated October 12, 2004; the Affidavit of Robert H. Frankl, sworn to October

5, 2004; the Affidavit of Jerome Kobre, sworn to October 6, 2004; the Affidavit of Jeffrey

Osterman, sworn to September 29, 2004; the Affidavit of Bernard Adler, sworn to October 6,

2004; the Affidavit of Jay B. Rosenstein, sworn to September 14, 2004; the Affidavit of Robert

Moskowitz, sworn to September 22, 2004, the Affidavit of Milton B. Shapiro and Dr. Sonya

Shapiro, sworn to September 30, 2004, and all exhibits annexed thereto, application will be made

to the Supreme Court of the State of New York, County of Westchester, at 111 Dr. Martin Luther

King, Jr. Boulevard, White Plains, New York on the 24th day of January 2005, at 9:30 o'clock in the forenoon, or as soon thereafter as counsel can be heard, for a judgment granting the relief requested in the Amended Verified Petition, and

**PLEASE TAKE FURTHER NOTICE**, that pursuant to Section 7804(c) of the Civil Practice Laws and Rules ("CPLR"), a Verified Answer and supporting affidavits, if any, must be served at least five (5) days before the return date of this application and that, pursuant to CPLR Section 7804(c), Respondents are directed to file a certified copy of the proceedings to be considered herein.

Dated:   White Plains, New York
         December 23, 2004

Respectfully submitted,

ZARIN & STEINMETZ

By:

Michael D. Zarin
*Attorneys for Petitioners/Plaintiffs*
81 Main Street, Suite 415
White Plains, New York  10601
(914) 682-7800

Ross & Gess, Attorneys, P.C.
*Attorneys for Individual*
         *Petitioners/Plaintiffs*
275 North Middleton Road
Pearl River, NY 10965
(845) 735-0088

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE VILLAGE OF CHESTNUT RIDGE, THE : 
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS, :    Index No. 04-16876
JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO, :    Assigned Judge:
                                    Hon. Francis A. Nicolai

                 Petitioners/Plaintiffs, : 

        - against -              :    AMENDED SUMMONS

                                    Plaintiffs designate
THE TOWN OF RAMAPO, THE TOWN :    Westchester County as
BOARD OF THE TOWN OF RAMAPO, THE      the place of trial.  Venue
PLANNING BOARD OF THE TOWN OF :    is based upon the judicial
RAMAPO, YESHIVA CHOFETZ CHAIM OF      district where the
RADIN, SCENIC  DEVELOPMENT, LLC and :    determination complained
THE   BOARD OF APPEALS OF THE TOWN OF    of was made.
RAMAPO,                             : 

             Respondents/Defendants. : 

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

To the above named Defendants:

       **YOU ARE HEREBY SUMMONED** to answer the Amended Verified

Complaint in this action and to serve a copy of your Answer, or, if the Amended Verified

Complaint is not served with this Amended Summons, to serve a Notice of Appearance, on the

Plaintiffs' attorneys within 20 days after the service of this Amended Summons, exclusive of the

day of service (or within 30 days after the service is complete if this Summons is not personally

delivered to you within the State of New York); and in case of your failure to appear or answer,

judgment will be taken against you by default for the relief demanded in the Amended Verified

Complaint.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE<br>VILLAGE OF MONTEBELLO, THE VILLAGE<br>OF POMONA, THE VILLAGE OF WESLEY HILLS,<br>JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,<br>MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | :<br><br>:<br><br>:<br><br>: | Index No. 04-16846<br><br>Assigned Judge:<br>Hon. Francis A. Nicolai |

Petitioners/Plaintiffs,                    :

- against -                         :          AMENDED VERIFIED
                                                      PETITION
THE TOWN OF RAMAPO, THE TOWN       :    AND COMPLAINT
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF      :
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC  DEVELOPMENT, LLC, and THE  :
BOARD OF APPEALS OF THE TOWN OF RAMAPO,
                                                      :
Respondents/Defendants.

                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Petitioners/Plaintiffs the Village of Chestnut Ridge, the Village of Montebello, the

Village of Pomona, and the Village of Wesley Hills (collectively, the "Villages"), by their

attorneys, Zarin & Steinmetz, and Jay B. Rosenstein, Robert Moskowitz, Milton B. Shapiro and

Dr. Sonya Shapiro (collectively with the Villages, the "Petitioners/Plaintiffs"), by their attorneys

Ross & Gess, Attorneys, P.C., as and for their Amended Verified Petition and Complaint herein,

respectfully allege, as follows:

<u>SUMMARY OF ACTION</u>

1.      Petitioners/Plaintiffs bring this hybrid action against the Town of Ramapo

and the Town Board of the Town of Ramapo (collectively, the "Town" or "Ramapo") to have the

Town's recently enacted Adult Student Housing Law declared void and unconstitutional.

2.      Petitioners/Plaintiffs seek, among other things, a determination pursuant to CPLR Article 78 that the Town Board's environmental review of the Adult Student Housing Law was arbitrary, capricious and an abuse of discretion under the New York State Environmental Quality Review Act ("SEQRA"), N.Y. Envtl. Conserv. Law § 8-0101, et seq.

3.      Petitioners/Plaintiffs also seek a determination that the Town Planning Board's issuance of a negative declaration for its first Adult Student Housing site plan application located on a site in the Town of Ramapo (the "Nike Site") was arbitrary, capricious and an abuse of discretion under SEQRA.

4.      On or about January 29, 2004, the Town adopted a Comprehensive Plan, following completion of a Generic Environmental Impact Statement of the Comprehensive Plan. The Comprehensive Plan proposed a series of major zoning changes in areas throughout the unincorporated portion of the Town.  These changes involved primarily the rezoning of residential districts to significantly increased density, and to convert certain non-residential districts to higher density residential districts.

5.      On or about May 27, 2004, Petitioner/Plaintiff Villages, together with the Villages of Airmont, Suffern and Sloatsburg, commenced a lawsuit against the Town in the Supreme Court of New York, Westchester County, Index No. 04-08424 ("Ramapo I"). Ramapo I, which is still pending, was brought pursuant to Article 78 of the Civil Practice Law and Rules, seeking to annul, vacate and set aside the Resolution adopting the Comprehensive Plan and SEQRA Findings of even date, on the grounds that the Town violated SEQRA.

6.      In Ramapo I, the Petitioner Villages asserted that the Town violated SEQRA by failing to take the required "hard look" at the potential impacts of the Comprehensive Plan, failing to consider reasonable alternatives to the adoption of the Comprehensive Plan,

improperly deferring analysis and resolution of impacts to the infrastructure, especially traffic, sewage, water and school systems, for review at a later time, and improperly segmenting review of known projects related to and dependent on the zoning changes set forth in the Comprehensive Plan.

       7.     Indeed, the Town Supervisor had stated on various occasions that the rezonings contemplated under the Comprehensive Plan would be proposed, studied and enacted in a comprehensive manner, not individually or in piecemeal fashion, so that their entire impact could be properly evaluated.

       8.     Yet, at the Town's first opportunity to follow through on these representations, on or about June 15, 2004, the Town proposed and enacted a zoning law allowing significantly higher density residential development throughout the Town, in a piecemeal fashion, without fully analyzing the environmental impacts from this zoning law and without studying it in conjunction with the other proposed rezonings.

       9.     The first zoning law enacted was the Adult Student Housing Law, Local Law No. 9-2004 ("Adult Student Housing Law"), permitting married adult student multi-family high-density housing in most single-family residential zones throughout the unincorporated portion of the Town of Ramapo. (See generally Adult Student Housing Law, Exh. "1"). This new high-density housing was to be allowed as an "accessory use" to a post-secondary educational institution so long as the educational institution occupies only ten (10) per cent of the site.

       10.    The substantial increase in development proposed under the Adult Student Housing Law would be located directly abutting Petitioners/Plaintiffs' borders, and would have significant potential adverse impacts on the character and/or infrastructure of the petitioning

communities, including the straining of already overburdened water supply and sewage systems, severe increases in traffic generation, and substantial increases in population and density.

11.     Yet, the Town determined in issuing a determination of non-significance under SEQRA that the Adult Student Housing Law would not result in even <u>one</u> potential significant environmental impact, avoiding the need to prepare an environmental impact statement as required by law.

12.     In its haste to enact the Adult Student Housing Law, as well as expedite various higher density development proposals already pending before the Law was even enacted, the Town simply ignored and failed to examine adequately any of the obvious potential environmental impacts the Law would have on Petitioners/Plaintiffs and their related communities.

13.     The Town also failed to provide a reasoned elaboration to support its Negative Declaration, as well as improperly delegated its decision-making responsibilities under SEQRA to its consultant.

14.     The Town also improperly segmented its review by deferring its analysis of the potential impacts from specific, definitive project proposals for married adult student multi-family housing before the Town at the time it enacted its Adult Student Housing Law.

15.     In particular, at the time the Town was considering the Adult Student Housing Law, there was already a pending application by Respondent/Defendant Yeshiva Chofetz Chaim for a sixty (60) unit housing development, which would increase the housing density at that site by over 750%.

16.     Shortly following the enactment of the Adult Student Housing Law, Respondent/Defendant Yeshiva Chofetz Chaim resubmitted its site plan application to

Respondent/Defendant Town Planning Board for the same project at a site known as the Nike Site.

17.    Shortly thereafter, in order to enact the additional zoning provisions proposed in the Comprehensive Plan, which were not otherwise enacted as part of the Adult Student Housing Law, the Town issued a "Draft Supplemental Environmental Impact Statement Assessing Comprehensive Plan Recommendations" and proposed new Comprehensive Zoning Law.

18.    While Respondent/Defendant Chofetz Chaim's application was pending before the Town under the recently enacted Adult Student Housing Law, the Town completed its environmental review of the new Comprehensive Zoning Law, which supposedly incorporated, inter alia, the Adult Student Housing Law as Section 376-1215.

19.    Contrary to any after-the-fact representations the Town may assert, the Town's supplemental environmental review relating to the enactment of its new Comprehensive Zoning Law failed to cure – let alone address – the deficiencies in the Town's previously issued negative declaration and flawed environmental review of its already enacted Adult Student Housing Law.

20.    In fact, Town representatives repeated on several occasions during its supplemental review under SEQRA that it would not accept any comments concerning the potential environmental impacts of the Adult Student Housing Law since such Law had already been enacted.

21.    Not wasting any time, approximately one week after issuing its SEQRA Findings concerning its supplemental review of its new Comprehensive Zoning Law and despite repeated assurances by the Town that any development application under the new Zoning would

be subject to a more detailed site specific environmental review, the Town Planning Board, without any meaningful environmental review, issued yet another determination of no environmental significance. This time the Town Planning Board closed the environmental review process on the pending adult student housing site plan application of Respondent/Defendant Chofetz Chaim for the Nike Site.

22. The Town Planning Board's cursory examination and negative declaration issued in connection with Respondent/Defendant Chofetz Chaim's application for a substantially higher density sixty (60) unit multi-family housing development under the Adult Student Housing Law was arbitrary, capricious and an abuse of discretion, and respectfully must be declared null and void.

23. The Town's flawed environmental review and Negative Declaration of its Adult Student Housing Law must also be annulled and vacated, and the Town must be required to undertake a more detailed and informative analysis and evaluation of the real and undisputed impacts.

24. The Town also failed to properly enact the Adult Student Housing Law in accordance with Municipal Home Rule Law and General Municipal Law. The Town did not hold another public hearing or refer the Adult Student Housing Law to the County Planning Department after making substantial changes to the Adult Student Housing Law. These substantial changes were included in the final version of the Adult Student Housing Law after the public hearing and after referring the Adult Student Housing Law to the County, preventing the public and the County from commenting on the substantial changes and their potential impacts.

25.    The Adult Student Housing Law also amounts to impermissible spot zoning.  The Adult Student Housing Law specifically singles out individual lots for this use, presumably requested by the property owners, to the detriment of surrounding property owners. The Adult Student Housing Law further impermissibly carves out an exception to one of the Adult Student Housing Law's requirements, which is applicable solely to one particular parcel, the Nike Site.

26.    Petitioners/Plaintiffs also seek a declaratory judgment declaring the Adult Student Housing Law unconstitutional.

27.    The Adult Student Housing Law violates the Due Process Clauses of the United States and New York State Constitutions by limiting the application of the Adult Student Housing Law to only married students.

28.    The Adult Student Housing Law also violates the Establishment Clause of the First Amendment to the United States Constitution. The Adult Student Housing Law has the purpose and effect of promoting religion and fosters the excessive entanglement of the government with religion by, inter alia, providing aid and preference to those engaged in full time study consistent with recognized religious practice or belief.

29.    The Adult Student Housing Law was also not enacted pursuant to the Town's police powers, and is not rationally related to a legitimate governmental purpose. The Adult Student Housing Law is not in conformance with the Town's recently enacted Comprehensive Plan.  It allows impermissible spot zoning, forbids development on properties that are assembled from smaller lots, and was enacted in response to the threat of litigation rather than in furtherance of the health, safety and welfare of the Town's residents.  Thus, the Adult

Student Housing Law is <u>ultra</u> <u>vires</u> and should be declared null and void as outside the Town's grant of police powers from the State.

30.    The Adult Student Housing Law is also unconstitutionally vague, and is inconsistent with certain other provisions of the Town's Zoning Law. Petitioners/Plaintiffs thus request that the Adult Student Housing Law be declared null and void as a matter of law in its entirety.

<u>THE PARTIES</u>

31.    Petitioner/Plaintiff, the Village of Chestnut Ridge ("Chestnut Ridge"), is a municipal corporation existing by and under the laws of the State of New York, located within the Town of Ramapo, with offices at 277 Old Nyack Turnpike, Chestnut Ridge, New York 10977.

32.    By Resolution dated July 15, 2004, the Board of Trustees for the Village of Chestnut Ridge authorized the retention of counsel and the commencement of this proceeding on behalf of Chestnut Ridge.

33.    Petitioner/Plaintiff, the Village of Montebello ("Montebello"), is a municipal corporation existing by and under the laws of the State of New York, located in the Town of Ramapo, with offices at 1 Montebello Road, Suffern, New York 10901-3901.

34.    By Resolution dated July 13, 2004, the Board of Trustees for the Village of Montebello authorized the retention of counsel and the commencement of this proceeding on behalf of Montebello.

35.    Petitioner/Plaintiff, the Village of Pomona ("Pomona"), is a municipal corporation existing under the laws of the State of New York, located in the Towns of Ramapo and Haverstraw, with offices at 100 Ladentown Road, Pomona, New York 10970.

36.     By Resolution dated June 28, 2004, the Board of Trustees for the Village of Pomona authorized the retention of counsel and the commencement of this proceeding on behalf of Pomona.

37.     Petitioner/Plaintiff, the Village of Wesley Hills ("Wesley Hills"), is a municipal corporation existing by and under the laws of the State of New York, located in the Town of Ramapo, with offices at 432 Route 306, Wesley Hills, New York 10952.

38.     By Resolution dated July 13, 2004, the Board of Trustees for the Village of Wesley Hills authorized the retention of counsel and the commencement of this proceeding on behalf of Wesley Hills.

39.     Petitioner/Plaintiff Jay Rosenstein is an individual residing on Skylark Drive in the Village of Wesley Hills in the Town of Ramapo, near the property known as the Nike Site.

40.     Petitioner/Plaintiff Robert Moskowitz is an individual residing on Fessler Drive in the Village of New Hempstead in the Town of Ramapo, near the property known as the Nike Site.

41.     Petitioner/Plaintiff Milton B. Shapiro is an individual residing on Scenic Drive in the unincorporated Town of Ramapo, adjacent to the property known as the Patrick Farm Site.

42.     Petitioner/Plaintiff Dr. Sonya Shapiro is an individual residing on Scenic Drive in the unincorporated Town of Ramapo, adjacent to the property known as the Patrick Farm Site.

43.     Respondent/Defendant, the Town of Ramapo, is a duly organized municipality existing by and under the laws of the State of New York, with offices at 237 Route 59, Suffern, New York 10901.

44.     Respondent/Defendant, the Town Board of the Town of Ramapo, is a legislative body formed pursuant to New York State law, with offices at Town Hall, 237 Route 59, Suffern, New York 10901.  The Town Board was the lead agency under SEQRA for the environmental review and adoption of the Adult Student Housing Law.

45.     Respondent/Defendant, the Planning Board of the Town of Ramapo, is a municipal body, with offices at Town Hall, 237 Route 59, Suffern, New York 10901.  Any application processed pursuant to the Adult Student Housing Law would come before the Planning Board.

46.     Respondent/Defendant the Board of Appeals of the Town of Ramapo is a municipal body, with offices at Town Hall, 237 Route 59, Suffern, New York 10901.

47.     Upon information and belief, and as set forth by Respondents/Defendants, applications pursuant to the Adult Student Housing Law are currently pending or are imminent for one or more of the four sites identified by the Town in the environmental assessment for application of the Adult Student Housing Law.

48.     Respondent/Defendant Yeshiva Chofetz Chaim of Radin ("Chofetz Chaim"), located in Suffern, Rockland County, New York, is the owner of and applicant for the properties known as the Nike Site and the Highview Road Site.

49.     Chofetz Chaim has submitted a site plan application to the Town Planning Board for married adult student multi-family housing to be located within the unincorporated Town of Ramapo, on Grandview Avenue on the Nike Site.  Not only would this proposal be

permitted under the Adult Student Housing Law, but the Adult Student Housing Law carves out an exception to its buffering requirement, which is specifically applicable to only one piece of property -- the Nike Site -- without any explanation except that the Nike Site cannot meet the buffering requirement.

50. The Town Planning Board has already issued an improper negative declaration of environmental significance for Respondent/Defendant Chofetz Chaim's site plan application on the Nike Site.

51. Upon information and belief, Chofetz Chaim has also submitted an application for one or more variances to the Town Board of Appeals for its married adult student multi-family housing proposal at the Nike Site.

52. Upon information and belief, Respondent/Defendant Scenic Development LLC, located in Nanuet, Rockland County, New York, is the owner of the property known as the Patrick Farm Site.

<u>JURISDICTION</u>

53. The Court has subject matter jurisdiction, and may exercise personal jurisdiction over the Respondents/Defendants in this matter.

54. Pursuant to CPLR Section 506(b), venue is proper in this Court. The determinations complained of were made and the material events took place in the County of Rockland, which is situated within the Ninth Judicial District.

55. No prior application for this or any similar relief has been made to this or any other Court, except for the related law suit referred to herein as <u>Ramapo I</u>.

56. On or about November 9, 2004, Respondent/Defendant Chofetz Chaim removed this matter to the United States District Court for the Southern District of New York.

Subsequently, Respondent/Defendant Chofetz Chaim withdrew its removal petition, and without objection from any party, this matter was subsequently remanded to this Court pursuant to an Order of Remand dated December 10, 2004.

FACTUAL BACKGROUND

The Town Of Ramapo

      57.    The Town of Ramapo is located in southern Rockland County. More than one-half of the geographical area of the Town is comprised of twelve incorporated Villages situated in an irregular ring bordering the areas of Monsey, Viola and Hillcrest, which form the Town of Ramapo's "central hub." The unincorporated areas of the Town are dominated by medium to high density residential, industrial and commercial uses.

      58.    In contrast, with the exception of relatively small areas of the Petitioner/Plaintiff Villages of Montebello and Chestnut Ridge, which lie along the New York State Thruway/Route 59 corridor, land use within the bordering Petitioner/Plaintiff Villages is almost exclusively low to medium density residential. The neighborhoods in the Petitioner/Plaintiff Villages are predominantly made up of single-family residences in zoning districts generally ranging from R-25 to R-50 (25,000 square foot lots and 50,000 foot lots, respectively).

      59.    The Villages share much of the Town's infrastructure, including, roadways, water supply, schools and sewage treatment systems. Thus, any meaningful increase in population density in the unincorporated Town along the Village borders would result in potential significant impacts to the Villages.

12

The Town Proposes An Updated Comprehensive Plan

      60.    In or about July 2000, the Town authorized the preparation of an update to the Town's Comprehensive Plan to govern zoning and development of the unincorporated areas of the Town.

      61.    In or about February 2001, the Town retained a consultant to prepare the update to the Comprehensive Plan.

      62.    A draft Comprehensive Plan was completed in or about September 2002.

      63.    The Comprehensive Plan proposes a series of major zoning changes in areas throughout the unincorporated portion of the Town. These changes primarily involve the rezoning of residential districts in the Town so as to significantly increase density in the zoning districts bordering the lower density residential Village areas. The Comprehensive Plan also proposes to convert various non-residential districts to higher density residential districts.

The Town Prepares A Generic Environmental
Impact Statement For The Comprehensive Plan

      64.    In conjunction with the preparation of the Comprehensive Plan, the Town retained the same consultants who prepared the Comprehensive Plan to prepare a Generic Environmental Impact Statement ("GEIS") for the Comprehensive Plan pursuant to SEQRA.

      65.    As defined by the regulations governing SEQRA, a "generic EIS[ ] may be broader, and more general than site or project specific EISs and should discuss the logic and rationale for the choices advanced. They may also include an assessment of specific impacts if such details are available. They may be based on conceptual information in some cases." 6 NYCRR § 617.10(a).

      66.    The Town accepted a Draft GEIS on the proposed Comprehensive Plan as complete in March 2003.

67.     The Town scheduled the only public hearing on the Town's DGEIS for the evening of April 7, 2003, only 18 days after the release of the DGEIS.  Due to a freak snowstorm, the Board was forced to adjourn commencement of the public hearing to the evening of April 28, 2003.

The Town Adds A Section On Adult Student Multi-Family
Housing To The Comprehensive Plan Following
Completion of the GEIS Without Any Environmental Studies

68.     Many parties commented on the DGEIS and Comprehensive Plan, in writing and orally at the public hearing.

69.     In one written comment to the Town on the DGEIS and the Comprehensive Plan, dated May 2, 2003 (submitted after the close of the public hearing), Respondent/Defendant Chofetz Chaim requested that the Comprehensive Plan provide for adult student housing for married students and their families while the students continue their post-secondary education.  Respondent/Defendant Chofetz Chaim was the only party to comment in this regard.

70.     Respondent/Defendant Chofetz Chaim, in its written comment, pointed out "one glaring deficiency in the proposed plan that needs to be addressed . . . [is that] [t]he community has many young men who marry and continue their pursuit of a rabbinical or secular degree for several years after marriage.  These young students are in need of dormitory housing that would provide all the needed space for their families to thrive while they pursue their educational goals."  (FGEIS at F-53, Exh. "2").

71.     Further, Respondent/Defendant Chofetz Chaim noted that it had previously submitted a plan for adult student dormitory housing for one of the properties it owns

at "the former US army base on five acres off Grandview Avenue" in the Town (i.e., the Nike Site), but had been advised that the zoning did not allow this use. (Id.).

72.     In response to this comment, the Town included in its FGEIS, without any further environmental study, a proposal that the Comprehensive Plan provide for and accommodate married adult student multi-family housing.

73.     As such, a provision for "Student Housing" was added to the "Community Resources and Character" chapter of the Comprehensive Plan, after completion of the GEIS.

74.     The "Student Housing" provision stated that "[t]he Town recognizes the need for married student housing within the Town and recognizes that an appropriate solution to this issue needs to be addressed.  The Town should develop an appropriate approach to address this issue." (Comprehensive Plan at C-8, Exh. "3").

75.     Of significance here, the Town promised in the FGEIS, as it would do on several other occasions, that, "a specific analysis of how to implement any zoning changes will need to be undertaken." (FGEIS at F-53, Exh. "2").

76.     The "Student Housing" provision in the Comprehensive Plan also recognized that "[a] specific analysis of how to implement any zoning changes should be undertaken.  Providing a proper balance between the need for married student housing and the community's interest in minimizing impacts to neighboring areas would be a critical consideration." (Id.).

77.     Thus, as admitted by the Town, adult student housing was not originally included in the Comprehensive Plan, as well as was not studied in the GEIS.  It was added to the Comprehensive Plan after the environmental review of the Comprehensive Plan was completed,

and the Town promised to undertake a full environmental review prior to enacting any new zoning amendments.

The Town Adopts The Comprehensive Plan, And Once
Again, Assures The Public That A Supplemental Environmental
Review Would Be Undertaken Prior To Any Rezonings

78.     As it would do throughout these proceedings, the Town once more promised in response to Ramapo I that before any actual rezonings, the Town would undertake a supplemental environmental impact statement that "will provide an analysis, as appropriate and as required by law, of the potential environmental impacts of the proposed zoning changes. This analysis generally will be more detailed than that provided in the GEIS process, although where adequate the studies, analyses and findings made in that process will be used." (Affidavit of John F. Lange, sworn to July 30, 2004, ¶ 38, Exh. "4").

79.     The Town's response in Ramapo I reflected similar statements in its SEQRA Findings with respect to its adoption of the Comprehensive Plan that "any actual rezoning of the Town or any portion of it must comply with applicable provisions of law, including ... SEQRA." (Affidavit of Christopher P. St. Lawrence, sworn to July 28, 2004, ¶ 9, Exh. "5").

80.     Likewise, the Town Supervisor has stated on numerous occasions that any rezonings would not be done in a piecemeal fashion. The rezonings would be proposed and studied all at once so their entire impact could be properly evaluated together.

81.     Yet, contrary to the Town's representations and the law, at the Town's very first opportunity to adopt a new zoning law following the Comprehensive Plan, the Town adopted the subject Adult Student Housing Law in a piecemeal fashion and without compliance with SEQRA or other applicable law.

The Town Proposes New Zoning Law

82.     After adopting the Comprehensive Plan, in or about April 2004, the Town proposed a new zoning law to permit adult student multi-family housing in most single-family residential zoning districts throughout the Town of Ramapo.

83.     As even acknowledged by the Town, the new zoning law has the potential to impact over 100 sites within the Town.  (Environmental Assessment Form ("EAF") Narrative at 2, Exh. "6").

84.     As originally proposed, the new zoning law provided, inter alia, that multi-family housing would be permitted as a special permit use in residential zones as an accessory use to post secondary educational institutions in order to provide housing for adult students.  The minimum lot size would be four acres, with a density not to exceed 16 units per acre.  The educational institution must occupy at least 10 per cent of the project site.

85.     Thus, with only a nominal educational institution on the site, the proposed Adult Student Housing Law would allow high density multi-family housing within a residential zone in the unincorporated Town of Ramapo, potentially impacting traffic, water supply, available sewer capacity, schools, services and the character of the surrounding neighborhoods.

The Town Refers The New Adult Student Housing Law To
Rockland County For Required General Municipal Law Review

86.     Pursuant to the requirements of General Municipal Law §§ 239-l and 239-m, on or about April 30, 2004, the Town referred the new proposed Adult Student Housing Law to the Rockland County Department of Planning for its review and recommendations.

87.     Upon reviewing the proposed Adult Student Housing Law, the County, in a letter dated June 2, 2004, expressed "concerns about the proposal," and recommended modifications. (Exh. "7").

88.    Specifically, the County noted that the proposed Adult Student Housing Law provides for the adult student housing to be an accessory use to an educational institution, yet the adult student housing component could occupy more than 50% of the site under the Adult Student Housing Law, making this "a primary use not an accessory use." (Id.).

89.    The County also expressed concern over "the impact of what is essentially a multi-family housing development on the existing infrastructure," especially since adult student housing was not originally considered in the environmental studies for the Comprehensive Plan and thus there were no opportunities to comment on the potential impact to sewer and water. (Id.).

90.    The County further indicated that the impact to the community character of low-density neighborhoods in adjoining municipalities, especially the Villages, of such adult student multi-family housing developments would be "significant." (emphasis supplied) (Id.).

91.    The Town, as set forth infra, overrode the County's GML review, and responded to few of its concerns.

The Town Holds A Public Hearing On The Adult Student Housing Law

92.    On or about June 2, 2004, the Town held a public hearing on the proposed Adult Student Housing Law. Numerous people spoke in opposition to the Law.

93.    Following the public hearing, the Town made several changes to the Adult Student Housing Law, including, adding a requirement that the students be married; changing to 30 days from 6 months within which the students must vacate when they are no longer eligible for the housing; adding a limitation on maximum lot size to 12 acres; adding a requirement that the project be located on an already existing lot that meets the lot size requirements or be created

by subdivision from a larger lot; adding an occupancy limitation of 6 years; and changing the buffering requirements.

94. These changes were material and substantial, requiring that the public and the County have the appropriate opportunity to provide comments on these revisions. The Town refused to hold an additional public hearing.

95. The Town also refused to refer the revised Adult Student Housing Law to the County for further GML review as required under the General Municipal Law.

The Town Conducts A Superficial, Incomplete SEQRA Review

96. In conjunction with the required GML review and public hearing, the Town also instituted its environmental review of the proposed Adult Student Housing Law under SEQRA.

97. Pursuant to the requirements of SEQRA, the Town Board declared itself lead agency. Of significance, it also determined that the proposed Adult Student Housing Law was a Type 1 action.

98. The Town's designation of the proposed Adult Student Housing Law as a Type I action, according to the SEQRA regulations, "carrie[d] with it the presumption that it is likely to have a significant adverse impact on the environment and may require an EIS [environmental impact statement]." 6 NYCRR § 617.4(a)(1).

99. The Town's consultant completed the checklists in Parts 1 and 2 of the EAF, and prepared a brief four and one half page "narrative" for Part 3 of the EAF.

100. As stated in the SEQRA regulations, an EAF is a form used by a lead agency "to assist it in determining the environmental significance or nonsignificance of actions.

A properly completed EAF must contain enough information to describe the proposed action, its location, its purpose and its potential impacts on the environment." 6 NYCRR § 617.2(m).

The EAF Fails To Take The Required "Hard Look"
At Potential Significant Environmental Impacts

101.    In the "EAF Narrative," the Town's consultant initially identified over 100 sites that could meet the Adult Student Housing Law's requirements, and receive the conditional use permit for adult student multi-family housing use.

102.    Using some unknown, arbitrary determination, however, the consultant concluded that only four sites within the Town might seek the use: the Nike Site, Patrick Farm Site, Highview Road Site and Spruce Road Site.  The consultant thus limited the EAF Narrative's analysis to these four sites only.  The consultant's conclusion was not based upon any empirical data or evaluation.

103.    The EAF also provided no analysis, let alone the required "hard look," of the potential impact on the character of the community from placing high density uses in the middle of low density single-family houses, not even for the four known sites discussed below.

104.    Nor did the EAF provide any analysis, let alone the required "hard look," of the potential traffic impacts from the Adult Student Housing Law on the four known sites, except for the unsupported statement that most of the students will stay on site for the majority of the days, and in "some specific cases, spouses may not drive." (EAF Narrative at 2, Exh. "6").

105.    The EAF also provided no analysis, let alone the required "hard look," of any impacts to the infrastructure from the Adult Student Housing Law, including, important potential impacts to the water, sewer and road infrastructure that the Villages share with the Town that would result from the significant increase in housing density under the Adult Student Housing Law.

106. The Town completely ignored the fact that the Adult Student Housing Law would create substantial increases in water and sewer demand over development under existing zoning. Normal water consumption of single-family and multi-family dwellings is 100 gallons and 75 gallons per person per day, respectively. An average family size in single-family dwellings on larger lot sizes is 4 persons per unit, and multi-family dwellings is 5.5 persons per unit. The combination of these factors yields a dramatic increase in water consumption with a multi-family adult student housing use pursuant to the Adult Student Housing Law, over existing single-family zoning.

107. If the Town had performed the requisite environmental review it would have found that there would be a significant potential environmental impact from the dramatic increase in water consumption from the extensive development of adult student multi-family housing use that would be permitted under the proposed Adult Student Housing Law.

108. Because most water brought into a dwelling is eventually released through a sewage treatment system, if the Town had performed the requisite environmental review, it would have also found that the increases in required sewage treatment of the potential development permitted under the Adult Student Housing Law would have been of the same magnitude as that of the water consumption.

109. The Town also failed to perform the requisite traffic analysis that the enactment of the Adult Student Housing Law and the development of adult student housing would have on the local roadways. If the Town had performed this requisite environmental review, the Town would have found that the enactment of the Adult Student Housing Law would generate significant volumes of traffic, certainly well above present levels of traffic generation.

Further, the Town would have learned that there is insufficient capacity at the roadway locations and intersections most likely impacted by the traffic.

110. An adequate review of the traffic impacts from the Adult Student Housing Law would have shown that the enactment of the Adult Student Housing Law would likely have a significant adverse impact on area traffic operating conditions, as well as that adequate mitigation measures may not be feasible.

111. The Town essentially deferred the aforementioned analyses to a later time, even when the Town acknowledged that at least one site was currently the subject of a specific site plan proposal under the proposed and now enacted Adult Student Housing Law.

The Town Also Failed To Take The Required "Hard Look" At The Potential Significant Impacts From The Adult Student Housing Law On Four Known Sites It Specifically Identified As Likely To Be Developed For This Use

112. Indeed, the Town identified four sites that would likely be developed under the proposed Adult Student Housing Law: Patrick Farm Site, Nike Site, Highview Road Site and Spruce Road Site.

113. The Town in considering and enacting the Adult Student Housing Law was required at a minimum to look at the potential environmental impacts to the Villages and the single-family neighborhoods surrounding the four sites, let alone the other 96 parcels it identified would be eligible. The Adult Student Housing Law would in effect rezone the sites from low density single-family, to high-density multi-family.

Patrick Farm Site

114. The Patrick Farm Site comprises approximately 200 acres, which are presently zoned primarily R-80 (80,000 square foot lots). The Patrick Farm Site is located in the northern part of Ramapo, bounded by Route 306 to the west, Route 202 to the north and the

Palisades Interstate Parkway to the east. The property adjoins both the western portion of the northerly boundary of Wesley Hills and the southern portion of the westerly boundary of Pomona. This site is surrounded by low-density single-family residences.

115. Upon information and belief, Respondent/Defendant Scenic Development, the owner of the Patrick Farm Site, plans to develop at least part of the site with adult student multi-family housing pursuant to the Adult Student Housing Law.

116. The maximum number of acres that could be used for each adult student multi-family housing development would be 12 acres under the Adult Student Housing Law. Application of the Adult Student Housing Law to the Patrick Farm Site would allow 192 dwelling units on these 12 acres. This amounts to an increase in density on these 12 acres from 6 under the prior existing zoning to 192 dwelling units, or an increase of 186 more units under the subject Adult Student Housing Law.

117. In analyzing the impact of the Adult Student Housing Law on the Patrick Farm Site, the EAF used the proposed rezoning of Patrick Farm to R-40, or 40,000 square foot lots, under the Comprehensive Plan as the comparison for the increased density. Presumably, the change in density between the existing zoning and the Adult Student Housing Law would be less, thus artificially reducing the potential impacts. Even using the R-40 zone as the basis of comparison, application of the Adult Student Housing Law would increase the density of the 12 acres from 13 units to 192, a significant increase by any standard.

118. The EAF's only analysis of the potential change in character to the neighborhood or the vastly increased allowable density was a cursory note that "the desired outcome" would be a centrally located facility amidst the proposed 40,000 square foot lots of the

surrounding area. This is not a careful or acceptable analysis of the potential adverse impacts from this significant density change.

119. In addition, hoping that a developer would institute this "desired outcome" is not a substitute for proper study and/or mitigation of the impacts from this rezoning.

120. The EAF also completely failed to analyze traffic, water or sewer impacts to the Patrick Farm Site, the Villages and the surrounding area from application of the Adult Student Housing Law.

121. In connection with potential water consumption impacts, for example, only two Adult Student Housing developments on the Patrick Farm Site would create 384 multi-family dwellings with a population of 2,112 persons, consuming 158,400 gallons of water per day. Thus, limited adult student housing development on only a very small portion of the Patrick Farm Site would alone increase water consumption by over 500%.

122. In addition, an adequate quantitative analysis of the potential traffic impacts from adult student housing on the Patrick Farm Site would have shown that the traffic generation from such a high density development would be at least four (4) times greater than allowed under the current zoning. The Town simply and improperly ignored the potential adverse impacts of this traffic generation trips by not conducting a quantitative intersection capacity analysis at the intersections most impacted by this traffic.

123. The Town's environmental review concerning its proposed Adult Student Housing Law failed to come close to properly analyzing the potential significant adverse impacts from its application to the Patrick Farm Site.

The Nike Site

124.    The Nike Site is comprised of approximately 4.7 acres on Grandview Avenue, and is presently zoned R-25 (25,000 square foot lots).  Application of the Adult Student Housing Law would permit 75 dwelling units, in comparison to the 8 single-family homes that could be built on the site under the existing zoning.  Twelve homes currently exist on the site.  These twelve homes were constructed by the United States Army in the 1950's, and are presently non-conforming.

125.    The Nike Site is surrounded by low-density single-family homes.  It is adjacent to the Villages of Wesley Hills and New Hempstead.

126.    The EAF acknowledged that the Nike Site has a "specific proposal for this type of development" of adult student multi-family housing in anticipation of the Adult Student Housing Law.

127.    There was no environmental analysis of this proposal, or its impacts on the Villages and surrounding neighborhoods in the EAF.

128.    Respondent/Defendant Yeshiva Chofetz Chaim of Radin is the owner of the Nike Site, and the applicant for said proposal for adult student multi-family housing on the Nike Site.

129.    The EAF further acknowledged that the Nike Site cannot accommodate the 500 foot buffer required under the Adult Student Housing Law between the adult student multi-family housing and abutting low density residential land within the Villages.

130.    The Adult Student Housing Law carves out a specific exception from the buffer applicable only to the Nike Site, without any rationale for this exception.

131. The EAF completely failed to mention or analyze the potential water, sewer or traffic impacts to the Nike Site and the surrounding area from application of the Adult Student Housing Law.

132. The generation of traffic at a 75-dwelling unit, adult student housing development that would be permitted on the Nike Site under the new Adult Student Housing Law, for example, would be significantly above present levels (more than twice present levels), whether that be defined by the existing 12 homes or by the number of housing units that could be developed under the single-family residential zoning requirements.

133. The Town ignored the potential adverse impacts of this traffic generation by not conducting any quantitative intersection capacity analysis at the intersections that would be most impacted by this traffic.

134. The EAF in general failed to analyze meaningfully any of the potential significant adverse impacts from the application of the Adult Student Housing Law to the Nike Site, even though a specific development proposal was pending for this site at the time the Adult Student Housing Law was under consideration.

Highview Road Site

135. The Highview Road Site is comprised of 11.7 acres. It is presently zoned R-25. If fully developed under the existing zoning, 20 single-family homes could be built on the 11.7 acre site.

136. The Highview Road Site is located on Highview Road between College Road and Spook Rock Road.

137. Upon information and belief, this site is also owned by Respondent/Defendant Yeshiva Chofetz Chaim of Radin.

138. Upon information and belief, Chofetz Chaim also plans to develop this site with adult student multi-family housing.

139. The EAF acknowledges that this site is "set in a neighborhood of single family dwellings." (EAF Narrative at 3, Exh. "6").

140. The EAF further acknowledged that traffic is near capacity for this site, even without increased development allowed under the Adult Student Housing Law.

141. Yet the EAF did not contain any discussion of the acknowledged traffic or other impacts from the special permit use of the site that would be allowed pursuant to the Adult Student Housing Law, including, the impacts to sewer, water, or neighborhood character that would result from the application of the Adult Student Housing Law to this site.

Spruce Road Site

142. The Spruce Road Site consists of 4.8 acres, and is surrounded on two sides by single-family homes. The site is presently zoned R-40A. If fully developed under the existing zoning, 5 single-family homes could be built on the 4.8-acre Spruce Road site. Under the Adult Student Housing Law, 77 dwelling units could be developed.

143. The Town, again, did not mention or analyze the potential impacts from traffic, sewer and water consumption, or neighborhood character from the vastly increased housing density that would be allowed under the Adult Student Housing Law for the Spruce Road site.

144. Yet, the generation of traffic would be potentially five times greater under the Adult Student Housing Law. The Town ignored these potential adverse impacts by not conducting any quantitative intersection capacity analysis, or other of the typical traffic study methodologies.

145.     In addition, the Spruce Road and Nike Sites are within a one-half mile radius of each other, and, combined, the sites comprise 9.6 acres.  Both sites could be developed under the Adult Student Housing Law.  If both the Nike and the Spruce Road Sites were developed as single-family housing, the combined 17 homes would generate 23 trips during the evening rush hour.  The 151 adult student housing units that could be developed on the combined sites under the Adult Student Housing Law would be expected to generate at least 70 evening rush-hour trips, more than three times as much traffic as would be generated by 17 single-family homes.

146.     Since both the Nike and the Spruce Road Sites are so close together, the traffic generated by adult student housing at these sites would overlap at adjacent intersections, potentially impacting operating conditions as discussed more fully hereafter. The Town ignored the potential adverse cumulative impacts of these trips by not conducting a quantitative intersection capacity analysis at any of these most impacted intersections.

147.     The EAF failed to properly analyze any of the potential significant impacts from application of the Adult Student Housing Law to the Spruce Road site.

The Town Fails To Set Forth A Reasoned
Elaboration For The Negative Declaration

148.     Thus, without undertaking any of the requisite environmental review as discussed supra, the Town, at its June 15, 2004 Board meeting, issued a negative declaration closing its cursory environmental review process, and adopted the Adult Student Housing Law.

149.     The Town's Resolution finding that the Adult Student Housing Law would not result in at least one potential significant adverse impacts on the environment contained no explanation, reasoned elaboration or independent analysis, similar to the EAF.

150. The Resolution was based solely "upon the recommendation of [Town consultant] Frederick P. Clark Associates." (Resolution No. 2004-358, dated June 15, 2004, Exh. "8").

151. In the Town's "Notice of Determination of Non-Significance," under the section titled "Reasons Supporting This Determination," for example, the Town failed to supply any analysis or the required reasoned elaboration for the Negative Declaration as required under SEQRA.

152. The Town merely stated that the Negative Declaration is "based on the Criteria for Determining Significance in SEQRA Section 617.[3](c)(1) and based on the approved full Environmental Assessment prepared as part of the request and the plans and reports submitted for this project." (Negative Declaration at 2, Exh. "9").

153. The Town's negative declaration of the Adult Student Housing Law and its finding of no potential significant environmental impacts failed to meet the most basic mandatory requirements under SEQRA.

The Adult Student Housing Law Also
Impermissibly Entangles Government And Religion

154. One of Ramapo's stated purposes for adopting the Adult Student Housing Law is that the "need for this type of housing has been identified in the context of a religious land use (RLUIPA) issue, arising from private schools which have no mechanism to provide such housing under the current regulations." (EAF Narrative at 1, Exh. "6"). Yet, no evidence has been presented, which indicates why high density multi-family housing is required to be constructed as part of such religious schools, nor how the failure to provide such housing would impose a burden on the free exercise of religion.

155.    The Town's current Zoning Law permits dormitories as accessory to all school uses, religious and secular.  Obviously, there is a mechanism for school-related housing.

156.    As such, the Adult Student Housing Law was proposed specifically in response to the request from a religious group for multi-family housing on the Nike Site and the Highview Road Site to house married adult students and their families, even though these Sites do not contain school uses.

157.    RLUIPA does not require indiscriminate high-density housing as an accommodation to religion.

158.    In addition, the Adult Student Housing Law specifically provides an exception from the required buffer for the Nike Site to benefit the property owner who would otherwise not be able to obtain the special permit for the adult student housing use.  Clearly, the Town is accommodating the user, not the use.

159.    Another example of the Adult Student Housing Law's impermissible entanglement of government with religion is that the Adult Student Housing Law provides that a student may extend his or her six (6) year residency upon application to the Planning Board "for good cause."  Adult Student Housing Law 9-2004(F).

160.    The Adult Student Housing Law defines good cause as "a longer period of full time study consistent with recognized religious practice or belief."  Id. (emphasis added).

161.    Thus, the only standard for guiding the Planning Board in granting an extension of the six-year residency limit is whether the student is engaged in full time study consistent with recognized religious practice or belief.

162.    In addition, the Planning Board must make a determination as to whether a religious practice or belief is adequately "recognized" in order to grant a student's request.

163. The Adult Student Housing Law does not provide a standard by which the Planning Board can make this determination of whether a religious practice or belief is "recognized," and thus the Adult Student Housing Law is also unconstitutionally vague.

Unmarried Adult Students And Their Families Cannot Seek
Or Obtain Housing Under The Adult Student Housing Law

164. The Town has also specifically limited the availability of adult student housing to "married" students and their families under the Adult Student Housing Law.

165. Adult students who are not married or do not have any other family status, may not reside in the adult student housing even if they have minor children.

166. Thus, the Adult Student Housing Law discriminates on the basis of familial status.

The Town Enacts The Adult Student Housing Law, Despite The
Deficiencies In The Law And The Lack Of Adequate Review

167. On or about June 15, 2004, the Town adopted the Adult Student Housing Law, without adequate environmental review, without additional review by the County, without holding further public hearings, and despite numerous land use and constitutional deficiencies.

Respondent/Defendant Chofetz Chaim Resubmits Site Plan Application
For Adult Student Housing Project Under The Adult Student Housing Law

168. Shortly after the Adult Student Housing Law was enacted, on or about September 8, 2004, Respondent/Defendant Chofetz Chaim supposedly resubmitted its site plan application to the Town Planning Board for the same or substantially the same 60 multi-family two and four-bedroom adult student housing development it had originally proposed on the Nike Site prior to the enactment of the Adult Student Housing Law.

Town Issues Draft Supplemental Environmental Impact
Statement For Comprehensive Plan And Comprehensive Zoning Law

169.    Almost simultaneously with the resubmission of Chofetz Chaim's Application, the Town issued a Draft Supplemental Environmental Impact Statement Assessing Comprehensive Plan Recommendations ("DSEIS") in connection with enacting the proposed zoning laws ("Zoning Law") recommended in the Comprehensive Plan.

170.    The purpose of the DSEIS, as stated by the Town, was to provide "a closer review and . . . evaluate impacts of the recommendations in the [Comprehensive] plan to provide additional housing." (DSEIS at 3.)

171.    The Town took the express position that the Adult Student Housing Law was not part of that review.

172.    As stated in the DSEIS, its purpose was to identify and evaluate specific impacts only to traffic, water supply and sewage collection system capacity that would result from expanding the supply and type of housing in the Town, specifically multi-family zones.

173.    The DSEIS included in its list of potential future developments as part of its traffic, water and sewer studies "four adult student housing sites . . . identified as possible developments." (DSEIS at 8.)

174.    To the extent that the Town's new supplemental review attempted to consider post-hoc the potential impacts of the already enacted Adult Student Housing Law, it continued to fail to analyze the impacts that it would have on the community character of the surrounding communities, or any of the potential parcels throughout the Town eligible for more intense adult student housing under the already existing Law.

175.    The traffic impact analysis in the DSEIS was insufficient to cure the prior deficient review of potential traffic impacts from the Adult Student Housing Law.

176.    The Town's supplemental review does not cure the lack of adequate analysis of the Adult Student Housing Law's impacts on water consumption, sewer, infrastructure or any other potential environmental impacts.

177.    Nor did the DSEIS address the potential impacts from the pending Adult Student Housing site plan application at the Nike Site, even though a specific application was then pending.

178.    Once again, the Town asserted, this time in the DSEIS, "that as individual projects are proposed, the Town will require detailed individual assessments of every applicant's proposal, and separate traffic, water and sewer reports and certifications will be required prior to approval or construction for each project." (DSEIS at 7).[1]

Town Holds Public Hearing On The DSEIS

179.    On or about September 27, 2004, the Town held a public hearing on the DSEIS, and established the minimum ten-day public written comment period ending on October 8, 2004.

180.    While many of the speakers at the public hearing wanted to comment on the Adult Student Housing Law again, Town representatives repeated their official position that the "Adult Student Housing was previously adopted by the Town and was not part of this hearing."

---

[1]    In light of the DSEIS and its stated purpose to evaluate the environmental impacts from the zoning provisions proposed in the Comprehensive Plan, the Petitioners in Ramapo 1 sought a stay of the Ramapo 1 litigation, which the Town opposed.

Petitioners/Plaintiffs File Suit
Challenging Adult Student Housing Law

181. On or about October 13, 2004, Petitioners/Plaintiffs filed its original Verified Petition/Complaint challenging the Adult Student Housing Law, together with the Town's flawed environmental review process as evidenced by its illegal negative declaration.

Town Adopts FSEIS And Zoning Law

182. On or about November 10, 2004, the Town issued the Final Supplemental Environmental Impact Statement ("FSEIS") for its new Zoning Law.

183. Once again, the FSEIS specifically refused to respond to any comments made on the Adult Student Housing Law as it was already enacted and not part of the SEIS or the public hearing on the DSEIS.

184. On or about November 22, 2004, after the absolute minimum ten (10) day comment period, the Town issued its Findings Statement for the Supplemental Environmental Impact Statement and, adopted its new Zoning Law.

185. Of significance here, the new Zoning Law included the previously enacted Adult Student Housing Law as Section 376-1215, with one minor modification, which does not address any of the Adult Student Housing Law fundamental legal flaws.

186. While the new Zoning Law states in a boilerplate provision that it "repealed" the prior Adult Student Housing Law, as acknowledged by the Town during the supplemental review, the SEIS included no further environmental review or analysis of the Adult Student Housing Law.

187. The SEIS failed to address or cure the prior deficiencies in the environmental review of the Adult Student Housing Law.

Town Planning Board Issues Declaration Of No Potential
Significant Environmental Impact For Respondent/Defendant
Chofetz Chaim's Adult Student Housing Application

188.　While considering its new Zoning Law, the Planning Board continued to process Respondent/Defendant Chofetz Chaim's adult student housing site plan application for the Nike Site under the existing and already enacted Adult Student Housing Law.

189.　On or about November 19, 2004, notice was issued of a public hearing before the Town Planning Board on a determination of significance for Respondent/Defendant Chofetz Chaim's adult student housing site plan application.

190.　Only eight (8) days after the new Zoning Law was adopted by the Town, and despite the Town's repeated promises that individual applications under the Adult Student Housing Law would be subject to a full environmental review, the Town Planning Board issued yet another determination of environmental nonsignificance this time concerning Respondent/Defendant Chofetz Chaim's site plan application for adult student housing at the Nike Site, again, without expressing a reasoned elaboration for its determination.

191.　Upon information and belief, the only environmental analysis upon which the Planning Board based its negative declaration was a March 2004 Environmental Assessment Form and a July 2003 traffic study submitted by Respondent/Defendant Chofetz Chaim when it resubmitted its multi-family adult student housing site plan application after enactment of the Adult Student Housing Law.  Respondent/Defendant Chofetz Chaim also submitted a two-page letter from its traffic consultant purportedly containing updated traffic counts for two impacted intersections submitted to the Board one day before the public hearing on or about November 29, 2004.

192.　This traffic study is insufficient and inadequate for the requisite hard look.

35

193.    There are potential adverse traffic impacts mandating an environmental impact statement.  Respondent/Defendant Chofetz Chaim's July 24, 2003 Traffic Impact Study shows that the proposed Adult Student Housing at the Nike Site will increase already unacceptable delays of over three (3) minutes by 10 per cent, yet the study concludes, that "the [p]roposed [60-unit multi-family housing]…will not result in a significant negative impact on the area roadways."

194.    Neither the traffic consultant nor the Applicant proposed any traffic mitigations even though they concede that the project will adversely impact intersections in the area, and one intersection already has failing capacity.

195.    The County Department of Highways in its comments dated November 15, 2004, on the Nike multi-family adult student housing site plan application noted specifically that it had requested that "the traffic study include information to assist in determining if a turning lane and widening may be required for safe traffic movement along Grandview Avenue." The County further noted that, "[w]e see no information in the traffic study to assist in this evaluation."

196.    The County Department of Highways raised additional traffic concerns, including, the use of slide gates, stacking of vehicles along Grandview Avenue, and traffic impacts from community activities.  None of these traffic impacts were addressed by the Applicant, its consultant or the Planning Board.

197.    The Rockland County Sewer District in its comments dated September 22, 2004, noted that the site plan application "reflects a change in permitted land use that will increase the building density on this site, resulting in higher quantities of sewage flowing from this project than for which the system was designed."  While the County indicated that the

existing system has adequate capacity "at this time," it expressed serious concern that "the practice of increasing density and consequently sewage flows from properties within the [Sewer] District may lead to an overload of the Sewer District's facilities in the future."

198.    Upon information and belief, the County Sewer District's comments were also not addressed.

199.    Upon information and belief, the site plan application was referred to the Rockland County Department of Planning for review and comment.  The County disapproved the application, citing specifically the application's "incompatibility" "with the surrounding community."

200.    Upon information and belief, the site plan application was also not timely referred to the adjoining municipalities for comment under the General Municipal Law.

201.    Despite the concerns of the aforementioned agencies and the clear impacts that would result from the extensive increase in housing density proposed for the Nike Site by Respondent/Defendant Chofetz/Chaim, on or about November 30, 2004, the Town Planning Board issued a determination that Defendant's adult student housing application would not result in even one potential significant adverse environmental impacts.

202.    Thus, contrary to the Town's repeated statements that the Town would require detailed individual environmental assessments for any multi-family or increased housing density individual projects, no such detailed assessments or report was required for the Nike Site application.

203.    In issuing its negative declaration and shortcutting the environmental review process under SEQRA, the Town Planning Board failed to consider any of the potential significant environmental impacts from the vastly increased housing density contained in the

Chofetz Chaim application, including, impacts to community character, infrastructure, traffic and pedestrian safety.

Respondent/Defendant Chofetz Chaim Files
Variance Application With The Town Board Of Appeals

204. Upon information and belief, once receiving its negative declaration under SEQRA, in or about December 2004, Respondent/Defendant Chofetz Chaim filed an application with the Town Board of Appeals for numerous required variances in connection with its application.

205. Upon information and belief, the Town Board of Appeals will be scheduling a public hearing on the variance application for January 2005.

206. The Rockland County Department of Planning has already disapproved this variance application.

FIRST CAUSE OF ACTION
(Violation of SEQRA–Failure To Take Requisite Hard Look At Adult Student Housing Law)

207. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 206 as if fully set forth herein.

208. The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law. The Town conducted an insufficient environmental review.

209. In order for the Town, the lead agency, to determine whether an "action may include the potential for at least one significant adverse environmental impact," SEQRA mandates that an agency take a "hard look" at the potential impacts on the environment of such proposed action. 6 NYCRR § 617.7(a) (emphasis added); 6 NYCRR § 617.2.

210.     The mandatory "hard look" for making a determination of significance requires that the lead agency identify the relevant environmental impacts, thoroughly analyze and take a hard look at these potential impacts, and provide a reasoned written elaboration of why the proposed action may or may not cause significant adverse environmental impacts.

211.     In approving the Negative Declaration, the Town ignored the well-established low threshold triggering the requirement to prepare a full EIS under SEQRA for a Type 1 action, namely, whether the Adult Student Housing Law "may" include the potential for at least <u>one</u> significant adverse environmental impact.

212.     The Town failed to comply with its substantive obligation to take a "hard look" at significant potential adverse impacts, which the Adult Student Housing Law might cause, including, but not limited to, impacts relating to community character, water, sewer, infrastructure, and traffic and safety.

213.     The Town's failure to prepare an EIS for the Adult Student Housing Law was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

SECOND CAUSE OF ACTION
(Violation of SEQRA– Arbitrary and Capricious Determination of
Significance For Adult Student Housing Law)

214.     Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 213 as if fully set forth herein.

215.     The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law.

216.     The potential adverse environmental impacts expected to result from the Adult Student Housing Law, including, but not limited to, impacts relating to community

character, water, sewer, infrastructure, and traffic and safety, surpass the "low threshold" triggering the requirement for comprehensive environmental review through an EIS. It was erroneous for the Town not to recognize these potential impacts.

217. The Town's determination that none of the aforementioned potential impacts from the Adult Student Housing Law might be significant and its failure to prepare an EIS was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

THIRD CAUSE OF ACTION
(Violation of SEQRA– Failure To Make A Reasoned Elaboration –
Improper Delegation For Adult Student Housing Law)

218. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 217 as if fully set forth herein.

219. The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with the Adult Student Housing Law.

220. SEQRA mandates strict and literal compliance with its procedures to ensure that agencies will err on the side of meticulous care in their environmental review.

221. The lead agency may not make a final decision concerning the proposed action that has been the subject of a negative declaration until it makes a "reasoned elaboration" of the basis of its ultimate environmental determination concerning the proposed action through certain explicit findings. N.Y. Envtl. Conserv. Law § 8-0109(8); 6 NYCRR §§ 617.7(b)(4), 617.11(c) & (d).

222. Without a reasoned elaboration, the Negative Declaration does not provide an adequate basis for the public or any reviewing agency to determine whether the lead agency

made a proper determination. Strict compliance with SEQRA's requirements guarantees that environmental concerns are properly confronted and resolved prior to agency action.

223.    The Town failed to make a reasoned elaboration supporting its Negative Declaration.

224.    The lead agency may not delegate its responsibilities for undertaking the SEQRA analysis to its experts.

225.    The Town as lead agency failed to make its own independent determination for the Negative Declaration, instead delegating its responsibilities by relying solely on the advice of the Town's planning consultant.

226.    The Town's failure to make a reasoned elaboration to support its determination of environmental non-significance and delegation of its decision-making authority was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the Adult Student Housing Law must be vacated.

FOURTH CAUSE OF ACTION<br>(Violation of SEQRA – Improper Segmentation)

227.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 226 as if fully set forth herein.

228.    The Town acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration for the Adult Student Housing Law.

229.    "Segmentation means the division of the environmental review of an action such that various activities or stages are addressed under this Part as though they were independent, unrelated activities, needing individual determinations of significance." 6 NYCRR § 617.2(ag).

230.    The general prohibition against segmentation is designed to prevent distortion or dilution of the potential environmental impacts, by splitting a project into two or more smaller projects, each falling below the threshold requiring full environmental review.

231.    By deferring environmental review of the impacts of the Adult Student Housing Law, the Town improperly segmented its analysis.  A lead agency fails to take the requisite hard look at potential significant environmental impacts by deferring resolution of potential environmental issues to a later date or not at all.

232.    During the environmental review process there were at least two projects of which the Board was aware and for which proposals had been made, which were awaiting and dependent upon the enactment of the Adult Student Housing Law, including the application of Respondent/Defendant Chofetz Chaim to build 60 adult student housing units on the Nike Site.

233.    Since such projects were related to and dependent upon the use permitted under  the proposed Adult Student Housing Law, SEQRA requires that such projects and the Adult Student Housing Law must be evaluated as a single action during the review process.

234.    The Town's failure to undertake a combined site specific review of known projects to be developed in conjunction with the enactment of the Adult Student Housing Law constitutes illegal segmentation in violation of SEQRA, mandating annulment of the Negative Declaration.

FIFTH CAUSE OF ACTION
(Violation Of SEQRA – SEIS Not Did Cure Deficiencies of
Original Illegal Negative Declaration)

235.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 234 as if fully set forth herein.

236. The SEIS issued for the Comprehensive Zoning Law did not cure -- let alone address -- the prior deficient environmental review of the Adult Student Housing Law.

237. By the Town's own admission, the SEIS was not meant to address the Adult Student Housing Law as this Law had been previously enacted. The Town specifically refused to take or respond to comments made on the SEIS pertaining to the Adult Student Housing Law.

238. To the extent that the SEIS may have indirectly related to the Adult Student Housing Law, the SEIS, by its own terms, only reviewed the general traffic impacts from four sites that the Town suspected might seek to be developed as adult student housing, as part of the overall future build conditions along with other potential developments. Even this purported review was completely inadequate.

239. The SEIS failed to address any of the other at least 96 sites identified by the Town as potentially eligible for development under the Adult Student Housing Law.

240. The SEIS also continued to ignore and failed to take the requisite "hard look" at any of the significant potential adverse impacts, which the Adult Student Housing Law might cause, including, but not limited to, impacts relating to community character, schools, and infrastructure from the vastly increased housing density permitted under the Adult Student Housing Law.

241. The SEIS also did not cure the prior inadequate review of the potential traffic, safety, water and sewer impacts from the Adult Student Housing Law for the four sites, and ignored numerous other potentially impacted traffic intersections.

242. Finally, the SEIS constituted improper segmentation as it continued to fail to evaluate the site specific impacts with respect to the known pending application from Defendant Chofetz Chaim for adult student housing at the Nike Site.

243. The Town's failure to satisfy its obligations as lead agency under SEQRA was arbitrary, capricious and an abuse of discretion and its adoption of the SEQRA Findings and alleged re-adoption of the Adult Student Housing Law as part of the Comprehensive Zoning Law, must be annulled and vacated, and no activities permitted.

244. The SEIS for the new Comprehensive Zoning Law cannot be used and did not cure the prior deficiencies in the environmental review of the Adult Student Housing Law and the alleged re-enactment of the Adult Student Housing Law as part of the new Comprehensive Law is null and void.

### SIXTH CAUSE OF ACTION
(Violation of SEQRA Procedures)

245. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 244 as if fully set forth herein.

246. SEQRA mandates strict and literal compliance with its procedures to ensure that agencies will err on the side of meticulous care in their environmental review.

247. SEQRA requires that the lead agency consider the substantive public comments received on a DEIS and respond to such comments in the FEIS. Lead agencies may not ignore public comments on a DEIS. See ECL § 8-0109.

248. If a lead agency determines to hold a public hearing on a DSEIS, then the lead agency must allow the public the opportunity to comment at the public hearing.

249.   During the public hearing on the DSEIS for the new Comprehensive Zoning Law, the Town repeatedly stated that this public hearing was not for comments on the Adult Student Housing Law as that Law was already enacted.

250.   In the FSEIS for the new Comprehensive Zoning Law, the Town refused to respond to comments on the Adult Student Housing Law as that Law was already enacted and not part of the SEIS for the new Comprehensive Zoning Law.

251.   The Town violated the requirements of SEQRA when it failed to hold the required public hearing under SEQRA in connection with the DSEIS for the alleged re-adoption of the Adult Student Housing Law and failed to respond to comments on the Adult Student Housing Law in the FSEIS.

SEVENTH CAUSE OF ACTION
(Impermissible Spot Zoning)

252.   Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 251 as if fully set forth herein.

253.   The Adult Student Housing Law requires that "no structure shall be located within five hundred feet (500) of abutting land within a village which is residentially zoned at a density of one dwelling unit per acre or less."

254.   Yet, the Adult Student Housing Law carves out an exception to this buffering requirement applicable the Nike Site.  The Adult Student Housing Law contains no explanation for this exemption except that the Nike Site cannot meet the buffering requirement. This is clearly beneficial to the property owner who would otherwise not be able to apply for this high density housing.

255.   The Nike Site is completely surrounded by low density single-family residences.

256.    Creating different zoning requirements for individual properties that are otherwise part of a class or that are similarly situated to other properties is spot zoning.

257.    The Town stated the Adult Student Housing Law is specifically applicable to four (4) named Sites: the Nike Site, Patrick Farm Site, Highview Road Site and Spruce Road Site.  Each of these Sites is surrounded by single-family zoning districts.  Application of the Adult Student Housing Law to the specified Sites constitutes spot zoning since the use is for the benefit of specific property owners to the detriment of the surrounding single family property owners and is contrary to the Comprehensive Plan.

258.    The Adult Student Housing Law should be declared void and illegal as constituting impermissible spot zoning.

EIGHTH CAUSE OF ACTION
(Violation of Municipal Home Rule Law)

259.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 258 as if fully set forth herein.

260.    The Town enacted the Adult Student Housing Law in violation of the Municipal Home Rule Law.

261.    Municipal Home Rule Law Section 20(4) mandates that no local law shall be passed unless it is in final form and on the desks of the legislative body at least seven calendar days prior to its final passage or mailed to the members of the legislative body at least ten calendar days prior to final passage.

262.    Municipal Home Rule Law Section 20(5) mandates a public hearing on the proposed local law prior to adoption of the local law.

263.    An additional public hearing must be held on a local law if substantial or material changes are made to the local law following the initial public hearing.

264. The only public hearing on the proposed Adult Student Housing Law was held on or about June 2, 2004.

265. Following the public hearing, numerous significant changes were made to the Adult Student Housing Law, including, (i) adding a requirement that the students be married; (ii) changing to 30 days from 6 months within which the students must vacate when they are no longer eligible for the housing; (iii) adding a limitation on maximum lot size to 12 acres; (iv) adding a requirement that the project be located on an already existing lot that meets the lot size requirements or be created by subdivision from a larger lot; (v) adding an occupancy limitation of 6 years; and (vi) changing the buffering requirements.

266. These changes to the Adult Student Housing Law were substantial, and required another public hearing prior to adoption of the Adult Student Housing Law. The public had a right to comment on the revised Adult Student Housing Law.

267. The Town failed to hold another public hearing on the Adult Student Housing Law, preventing Petitioners/Plaintiffs and the public from learning about and commenting on the Adult Student Housing Law as actually enacted.

268. In addition, upon information and belief, the Adult Student Housing Law was not in its final form until June 15, 2004, the day of the adoption of the Adult Student Housing Law.

269. At the public hearing held on or about September 27, 2004, on the new Comprehensive Zoning Law, the Town failed and refused to allow public comments on the Adult Student Housing Law, thus the changes to the Adult Student Housing Law were still not presented for public comment.

270.    The Adult Student Housing Law should be declared void and invalid for violating the Municipal Home Rule Law.

NINTH CAUSE OF ACTION
(Violation of General Municipal Law)

271.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 270 as if fully set forth herein.

272.    The Town enacted the Adult Student Housing Law in violation of the General Municipal Law.

273.    The General Municipal Law requires that if any substantive or material changes are made to a local law after the County's review, that the local law be resubmitted to the County for further review.

274.    Following the County's review and comments on the Adult Student Housing Law, the Town made numerous significant changes to the Adult Student Housing Law.

275.    These changes to the Adult Student Housing Law were substantial and required resubmittal to the County for another review pursuant to the General Municipal Law.

276.    The Town failed to submit the revised Adult Student Housing Law to the County for further review.

277.    The Adult Student Housing Law should be annulled and declared void for failure to comply with the General Municipal Law.

TENTH CAUSE OF ACTION
(Facial Invalidity of the Adult Student Housing Law – Violation of the Fourteenth Amendment,
United States Constitution and Article I, Section 6, New York State Constitution)

278.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 277 as if fully set forth herein.

279.    On its face, the provision of the Adult Student Housing Law, which limits occupancy of adult student housing to "married" adult students and their families and prevents unmarried adult students and their families from occupying adult student housing, does not further a legitimate governmental purpose.

280.    On its face, the provision of the Adult Student Housing Law, which limits occupancy of adult student housing to "married" adult students and their families and prevents unmarried adult students and their families from occupying adult student housing, bears no reasonable relation to the ends sought to be achieved by the Adult Student Housing Law.

281.    The Adult Student Housing Law discriminates on the basis of familial status.

282.    The Adult Student Housing Law amounts to a denial of the right to due process of law as guaranteed by the Fourteenth Amendment to the Constitution of the United States and Article I, § 6 of the Constitution of the State of New York.

283.    Petitioners/Plaintiffs request a judgment declaring that on its face the limitation of the Adult Student Housing Law to "married" adult students violates the Due Process Clauses of the Fourteenth Amendment to the Constitution of the United States and Article I, § 6 of the Constitution of the State of New York.

ELEVENTH CAUSE OF ACTION
(Facial Invalidity of the Adult Student Housing Law – Violation of the
Establishment Clause, First Amendment, United States Constitution)

284.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 283 as if fully set forth herein.

285.    The Adult Student Housing Law does not promote a secular purpose, in that the Planning Board must make a determination as to whether a religious practice or belief is

49

adequately "recognized" in order to grant a student's request "for good cause" to extend his or her six (6) year residency. Adult Student Housing Law 9-2004(F).

286.    This provision in the Adult Student Housing Law has as its principal effect to advance religion.

287.    The Adult Student Housing Law also fosters excessive government entanglement with religion.

288.    The legislative history shows that the Adult Student Housing Law is drawn to secure for one religious community a unique and significant zoning benefit as it is drafted to benefit four specific properties.

289.    The Adult Student Housing Law provides aid and preference to those engaged in full time study consistent with recognized religious practice or belief.

290.    The Adult Student Housing Law violates the Establishment Clause of the First Amendment to the Constitution of the United States, and must be annulled.

TWELFTH CAUSE OF ACTION
(Town Board's Actions Ultra Vires and Void)

291.    Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 290 as if fully set forth herein.

292.    The Town Board has no inherent power to enact zoning regulations and the Town Board exercises its zoning authority solely through the State's legislative grant of zoning authority as defined and set forth in the Town Law, Article 16.

293.    The Town Board is only empowered to enact zoning regulations pursuant to a comprehensive plan, and for the purpose of promoting the health, safety, morals or the general welfare of the community.

294. The Adult Student Housing Law, which permits multi-family housing in any residential zone throughout the Town, is not in accordance with the Town's recently adopted Comprehensive Plan, and is ultra vires.

295. The Comprehensive Plan for the Town of Ramapo, adopted in January 2004, establishes certain areas within the Town for multi-family or high density residential use. The Adult Student Housing Law places multi-family housing outside of these designated areas, and immediately adjacent to single-family residential zoning districts.

296. The Adult Student Housing Law permits married adult student multi-family housing on minimum four-acre sites. Such multi-family housing, pursuant to the Adult Student Housing Law "must be located on an already existing lot which meets the lot size requirements or on a lot created by subdivision from a larger existing lot, and may not be the result of the combination of existing lots which separately fail to meet the lot size requirements."

297. Forbidding adult student multi-family housing on assembled lots, while allowing the housing in "existing" or subdivided lots is not rationally related to, or in furtherance of, the health, safety, morals or general welfare of the community, and is ultra vires.

298. The Adult Student Housing Law permits only married students and their families to reside in the student housing, and forbids unmarried students and their families from residing in the student housing. Such a distinction is not rationally related to, or in furtherance of, the health, safety, morals or general welfare of the community, and is ultra vires.

299. The Town Board enacted the Adult Student Housing Law in response to the pressure of litigation from certain property owners. The Town Board expressly stated that the Adult Student Housing Law was being adopted in response to concerns that litigation would

be brought pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA").

300. The Adult Student Housing Law was not, therefore, adopted to protect the health, safety and welfare of its citizens, rather the Town adopted the Adult Student Housing Law in response to the pressure of litigation from Town property owners who want to maximize development on their property for economic purposes.

301. The Adult Student Housing Law is ultra vires and should be declared null and void as outside the Town's grant of police powers from the State.

<u>THIRTEENTH CAUSE OF ACTION</u>
(Violation of SEQRA – Failure to Take Requisite Hard Look At Nike Site Application)

302. Petitioners/Plaintiffs repeat and reallege paragraphs 1 through 301 as if fully set forth herein.

303. The Town Planning Board acted arbitrarily and capriciously and in violation of SEQRA when it issued a Negative Declaration in connection with Respondent/Defendant Chofetz Chaim's Nike Site adult student housing site plan application ("Nike Site Plan Application"). The Town Planning Board conducted an insufficient environmental review.

304. The Town Planning Board failed to comply with its substantive obligation to identify and take a "hard look" at potential significant adverse impacts from the Nike Site Plan Application, including but not limited to, specific impacts resulting from the Application relating to community character, water, sewer, infrastructure, and traffic and safety.

305. The Town Planning Board also failed to set forth the required reasoned elaboration for its determination that the Nike Site Plan Application would not result in even one

potential adverse environmental impact, requiring the preparation of a more detailed environmental impact statement.

306.    Contrary to the Town's repeated statements that the Town would require detailed individual assessments for all individual projects under the Adult Student Housing Law, in particular, no such detailed assessments or reports were conducted or required for the Nike Site Plan Application.

307.    The Town Planning Board's failure to require or prepare an EIS for the Nike Site Plan Application was arbitrary, capricious, and an abuse of discretion, and the Negative Declaration issued for the application must be vacated.

WHEREFORE, Petitioners/Plaintiffs request a judgment, as follows:

Article 78 Petition:

(1)    annulling and vacating the adoption of the Adult Student Housing Law;

(2)    annulling and vacating the finding of environmental non-significance under SEQRA for the Adult Student Housing Law;

(3)    annulling and vacating any actions taken by any of the Respondents/Defendants in reliance upon the SEQRA negative declaration for the Adult Student Housing Law;

(4)    annulling and vacating the alleged supplemental environmental review as it might relate to the Adult Student Housing Law;

(5)    enjoining Respondents/Defendants from implementing any of the provisions of the Adult Student Housing Law pending a determination of this proceeding;

(6)    declaring the Adult Student Housing Law constitutes impermissible spot zoning;

(7)    declaring the adoption of the Adult Student Housing Law violates the New York State Municipal Home Rule Law;

(8)    declaring the adoption of the Adult Student Housing Law violates the New York State General Municipal Law; and

(9)    annulling and vacating the finding of environmental non-significance for Respondent/Defendant Chofetz Chaim's site plan application for adult student housing on the Nike Site and enjoining any further processing of this application pending a determination of this proceeding;

Complaint For Declaratory Judgment:

(10)   declaring the Adult Student Housing Law violates the Due Process Clauses of the United States and New York State Constitutions;

(11)   declaring the Adult Student Housing Law violates the Establishment Clause of the United States Constitution;

(12)   declaring the Adult Student Housing Law was not enacted pursuant to the legislative grant of zoning powers to the Town;

(13)   awarding Petitioners/Plaintiffs the costs and disbursements of this action; and

(14)   granting such other and further relief as this Court deems just and proper.

Dated: December 23 2004
       White Plains, New York

ZARIN & STEINMETZ

By: _____
    Michael D. Zarin
    Susan H. Sarch
    *Attorneys for Petitioners/Plaintiffs Villages*
    81 Main Street, Suite 415
    White Plains, New York 10601
    (914) 682-7800

    Ross & Gess, Attorneys, P.C.
    *Attorneys for Individual*
        *Petitioners/Plaintiffs*
    275 North Middleton Road
    Pearl River, NY 10965
    (845) 735-0088

<u>VERIFICATION</u>

STATE OF NEW YORK    )
                        )    ss.:
COUNTY OF WESTCHESTER  )

       MICHAEL D. ZARIN, being duly sworn, deposes and says:

       He is the attorney for Petitioners/Plaintiffs The Villages of Chestnut Ridge, Montebello, Pomona and Wesley Hills in this action and his offices are located in White Plains, Westchester County, New York. He has read the foregoing Amended Verified Petition and Complaint and knows the contents thereof; that the same is true to his knowledge, except as to the matters therein stated to be alleged upon information and belief, and that as to those matters he believes them to be true.

       The reason why this Verification is made by deponent instead of the Petitioners/Plaintiffs is because Petitioners/Plaintiffs are not within the County of Westchester, which is the County where deponent has his office. Deponent further says that the grounds of his belief as to all matters in the Amended Verified Petition and Complaint not stated to be upon his knowledge are based upon a review of documents and other writings relevant to this action.

                                      _____
                                       MICHAEL D. ZARIN

Sworn to before me
this 23ʳᵈ day of December, 2004

_____
      Notary Public

**JODY TAMAR CROSS**
**NOTARY PUBLIC, STATE OF NEW YORK**
**NO. 02CR6078789**
**QUALIFIED IN PUTNAM COUNTY**
**COMMISSION EXPIRES AUGUST 5,** 2006

<u>414</u>

**Exhibit E**

Joseph J. Haspel
Attorney for Defendant - Mosdos Chofetz Chaim, Inc.
40 Matthews Street, Ste. 201
Goshen, NY 10924
845-294-8950

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                                        T

THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESTLEY HILLS,          **ANSWER AND**
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,          **COUNTERCLAIMS**

                    Petitioners/Plaintiffs,

        -against-                                  Case No.: 07 CIV 9278

THE TOWN OF RAMAPO, THE TOWN
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC DEVELOPMENT, LLC and
THE BOARD OF APPEALS OF THE TOWN
OF RAMAPO, and MOSDOS CHOFETZ
CHAIM, INC.

                    Respondents/Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

        Defendant, Mosdos Chofetz Chaim, Inc. ("Mosdos"), by its attorney, Joseph J. Haspel, as

and for its answer to the Complaint/Petition of Plaintiffs, state as follows:

        1.      Insofar as Paragraph 1 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent that there are allegations of fact in Paragraph, Mosdos

admits that this is a hybrid action and an attempt to address the constitutionality of actions of

both the Town of Ramapo and Mosdos.

        2.      Insofar as Paragraph 2 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent that it set forth what Plaintiffs seek, Mosdos denies the stated intention.

3. Insofar as Paragraph 3 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it set forth what Plaintiffs seek, Mosdos denies the stated intention.

4. Insofar as Paragraph 4 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it refers to a written document, Mosdos neither admits nor denies such allegations, but refers the Court to the document which speaks for itself.

5. Insofar as Paragraph 5 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it refers to a written document, Mosdos neither admits nor denies such allegations, but refers the Court to the document which speaks for itself.

6. Insofar as Paragraph 6 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it refers to a written document, Mosdos neither admits nor denies such allegations, but refers the Court to the document which speaks for itself.

7. Insofar as Paragraph 7 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation.

8. Insofar as Paragraph 8 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation.

9. Insofar as Paragraph 9 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation. To the extent the

allegations contained in Paragraph 9 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but refers the Court to the document which speaks for itself.

10. Insofar as Paragraph 10 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies that allegation.

11. Insofar as Paragraph 11 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation.

12. Insofar as Paragraph 12 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation.

13. Insofar as Paragraph 13 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation. To the extent the allegations contained in Paragraph 13 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but refers the Court to the document which speaks for itself.

14. Insofar as Paragraph 14 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation. To the extent the allegations contained in Paragraph 14 of the Complaint set forth a conclusion of law, Mosdos neither admits nor denies such allegation, but refers the is of law to the Court.

15.     Insofar as Paragraph 15 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies

knowledge and information sufficient to form a belief as to that allegation, except to the extent

that Paragraph 15 of the Complaint represent an admission that Plaintiffs' actions are directed at

a pending application by Respondent/Defendant Yeshiva Chofetz Chaim for a Yeshiva religious

campus, Mosdos admits the allegation.

16.     Insofar as Paragraph 16 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent the allegations contained in Paragraph 16 of the

Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but

refers the Court to the document which speaks for itself.

17.     Insofar as Paragraph 17 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies

knowledge and information sufficient to form a belief as to that allegation. To the extent the

allegations contained in Paragraph 17 of the Complaint refer to a written document, Mosdos

neither admits nor denies such allegation, but refers the Court to the document which speaks for

itself.

18.     Insofar as Paragraph 18 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies

knowledge and information sufficient to form a belief as to that allegation. To the extent the

allegations contained in Paragraph 18 of the Complaint refer to a written document, Mosdos

neither admits nor denies such allegation, but refers the Court to the document which speaks for

itself.

19.     Insofar as Paragraph 19 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation. To the extent the allegations contained in Paragraph 19 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but refers the Court to the document which speaks for itself.

20. Insofar as Paragraph 20 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation. To the extent the allegations contained in Paragraph 20 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but refers the Court to the document which speaks for itself.

21. Insofar as Paragraph 21 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. To the extent that it sets forth an allegation of fact, Mosdos denies knowledge and information sufficient to form a belief as to that allegation. To the extent the allegations contained in Paragraph 21 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but refers the Court to the document which speaks for itself.

22. Insofar as Paragraph 22 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 22 of the Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court, Mosdos expressly denies that Chofetz Chaim made an application exclusively under the Adult Student Housing.

23. Insofar as Paragraph 23 of the Complaint is introductory, Mosdos neither admits

nor denies such allegations. Insofar as the allegations contained in Paragraph 23 of the Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

24. Insofar as Paragraph 24 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 24 of the Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court. To the extent the allegations contained in Paragraph 24 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegation, but refers the Court to the document which speaks for itself.

25. Insofar as Paragraph 25 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 25 of the Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

26. Insofar as Paragraph 26 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 26 of the Complaint raise the specter of the constitutional issues of this lawsuit, Mosdos admits that this case presents constitutional issues.

27. Insofar as Paragraph 27 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 27 of the complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

28. Insofar as Paragraph 28 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 28 of the

Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

29.     Insofar as Paragraph 29 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 29 of the Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

30.     Insofar as Paragraph 30 of the Complaint is introductory, Mosdos neither admits nor denies such allegations. Insofar as the allegations contained in Paragraph 30 of the Complaint set forth a legal conclusion, Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

31.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 31 of the Complaint.

32.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 32 of the Complaint.

33.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 33 of the Complaint.

34.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 34 of the Complaint.

35.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 35 of the Complaint.

36.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 36 of the Complaint.

37.     Mosdos denies knowledge and information sufficient to form a belief as to the

allegations set forth in Paragraph 37 of the Complaint.

38. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 38 of the Complaint.

39. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 39 of the Complaint.

40. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 40 of the Complaint.

41. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 41 of the Complaint.

42. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 42 of the Complaint.

43. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 43 of the Complaint.

44. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 44 of the Complaint.

45. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 45 of the Complaint.

46. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 46 of the Complaint.

47. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 31 of the Complaint.

48. Mosdos denies the allegations set forth in Paragraph 48 of the Complaint, except Mosdos admits that Yeshiva Chofetz Chaim of Radin is located in Suffern, Rockland County,

New York.

49.     To the extent the allegations contained in Paragraph 49 of the Complaint refer to a
written document, Mosdos neither admits nor denies such allegation, but refers the Court to the
document which speaks for itself. Mosdos denies that Chofetz Chaim's application was for
"adult student multi-family housing" and that its application was exclusively under the Adult
Student Housing Law.

50.     Mosdos denies the allegations set forth in Paragraph 50, except insofar as the
allegations set forth a conclusion of law Mosdos neither admits nor denies such allegations, but
refers the issue of law to the Court.

51.     To the extent the allegations contained in Paragraph 51 of the Complaint refer to a
written document, Mosdos neither admits nor denies such allegation, but refers the Court to the
document which speaks for itself. Mosdos denies that Chofetz Chaim's application was for
"adult student multi-family housing" and that its application was exclusively under the Adult
Student Housing Law.

52.     Mosdos denies the allegations set forth in Paragraph 52 of the Complaint.

53.     Insofar as the allegations contained in Paragraph 53 contain a conclusion of law,
Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

54.     Insofar as the allegations contained in Paragraph 54 contain a conclusion of law,
Mosdos neither admits nor denies such allegation, but refers the issue of law to the Court.

55.     Mosdos denies knowledge and information sufficient to form a belief as to the
allegations set forth in Paragraph 55 of the Complaint.

56.     Mosdos denies the allegations set forth in Paragraph 56 of the Complaint, except
Mosdos admits that Yeshiva Chofetz Chaim of Radin previous removed this action and

thereafter consented to a remand order.

57. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 57 of the Complaint, except Mosdos admits The Town of Ramapo is located in southern Rockland County.

58. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 58 of the Complaint.

59. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 59 of the Complaint.

60. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 60 of the Complaint.

61. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 61 of the Complaint.

62. Insofar as the allegations contained in Paragraph 62 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

63. Insofar as the allegations contained in Paragraph 63 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

64. Insofar as the allegations contained in Paragraph 64 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

65. Insofar as the allegations contained in Paragraph 65 of the Complaint set forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law

to the Court.

66. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 66 of the Complaint, except insofar as the allegations contained in Paragraph 66 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

67. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 67 of the Complaint.

68. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 68 of the Complaint.

69. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 69 of the Complaint, except insofar as the allegations contained in Paragraph 69 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

70. Insofar as the allegations contained in Paragraph 70 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

71. Insofar as the allegations contained in Paragraph 71 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

72. Insofar as the allegations contained in Paragraph 72 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

73. Insofar as the allegations contained in Paragraph 73 of the Complaint refer to a

written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

74. Insofar as the allegations contained in Paragraph 74 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

75. Insofar as the allegations contained in Paragraph 75 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

76. Insofar as the allegations contained in Paragraph 76 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

77. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 77, except insofar as the allegations contained in Paragraph 77 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

78. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 78, except insofar as the allegations contained in Paragraph 78 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

79. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 79, except insofar as the allegations contained in Paragraph 79 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

80. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 80.

81. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 81, except insofar as the allegations contained in Paragraph 81 of the Complaint set forth a conclusion of law, Mosdos neither admits nor denies such allegations but refers the issue to the Court.

82. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 82, except insofar as the allegations contained in Paragraph 82 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

83. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 83, except insofar as the allegations contained in Paragraph 83 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

84. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 84, except insofar as the allegations contained in Paragraph 84 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

85. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 85, except insofar as the allegations contained in Paragraph 85 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court. Mosdos denies that its proposed campus contains "only a nominal educational institution on the site."

86.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 86, except insofar as the allegations contained in Paragraph 86 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

87.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 87, except insofar as the allegations contained in Paragraph 87 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

88.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 88, except insofar as the allegations contained in Paragraph 88 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

89.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 89, except insofar as the allegations contained in Paragraph 89 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

90.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 90, except insofar as the allegations contained in Paragraph 90 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

91.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 91, except insofar as the allegations contained in Paragraph 91 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations,

but refers the document to the Court which speaks for itself.

92.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 92 of the Complaint .

93.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 93, except insofar as the allegations contained in Paragraph 93 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

94.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 94, except insofar as the allegations contained in Paragraph 94 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

95.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 95, except insofar as the allegations contained in Paragraph 95 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

96.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 96 of the Complaint.

97.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 97 of the Complaint, except insofar as the allegations contained in Paragraph 97 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

98.     Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 98 of the Complaint, except insofar as the allegations contained

in Paragraph 98 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

99. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 99 of the Complaint, except insofar as the allegations contained in Paragraph 99 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

100. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 100, except insofar as the allegations contained in Paragraph 100 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

101. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 101 of the Complaint, except insofar as the allegations contained in Paragraph 101 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

102. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 102, except insofar as the allegations contained in Paragraph 102 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

103. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 103 of the Complaint, except insofar as the allegations contained in Paragraph 103 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself, and insofar as the allegations contained in Paragraph 103 of the Complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

104. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 104 of the Complaint, except insofar as the allegations contained in Paragraph 104 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself, and insofar as the allegations contained in Paragraph 104 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

105. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 105 of the Complaint, except insofar as the allegations contained in Paragraph 105 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself, and insofar as the allegations contained in Paragraph 105 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

106. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 106 of the Complaint, except insofar as the allegations contained in Paragraph 106 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

107. Mosdos denies the allegations set forth in Paragraph 107.

108. Mosdos denies knowledge the allegations set forth in Paragraph 108.

109. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 109, except to the extent that the allegations set forth in Paragraph 109 set for speculative conclusions, Mosdos denies such speculation. To the extent the allegations suggest that the Town did not see a traffic study, Mosdos denies such allegations

as it submitted a detailed analytical traffic report to the Town.

110. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 110, except to the extent that the allegations set forth in Paragraph 110 set for speculative conclusions, Mosdos denies such speculation.

111. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 111.

112. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 112 of the Complaint, except insofar as the allegations contained in Paragraph 112 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

113. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 113 of the Complaint, except insofar as the allegations contained in Paragraph 113 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

114. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 114.

115. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 115.

116. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 116 of the Complaint, except insofar as the allegations contained in Paragraph 116 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

117. Mosdos denies knowledge and information sufficient to form a belief as to the

allegations set forth in Paragraph 117 of the Complaint, except insofar as the allegations contained in Paragraph 117 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

118. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 118 of the Complaint, except insofar as the allegations contained in Paragraph 118 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

119. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 119 of the Complaint, except insofar as the allegations contained in Paragraph 119 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

120. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 120 of the Complaint, except insofar as the allegations contained in Paragraph 120 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

121. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 121 of the Complaint, except insofar as the allegations are speculative, Mosdos denies the speculation.

122. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 122 of the Complaint, except insofar as the allegations are speculative, Mosdos denies the speculation. Insofar as the allegations contained in Paragraph 122 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

123.    Insofar as the allegations contained in Paragraph 123 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

124.    Mosdos denies knowledge the allegations set forth in Paragraph 124 of the Complaint, except Mosdos admits that the Nike Site is approximately 4.7 acres on Grandview Avenue.

125.    Mosdos denies knowledge the allegations set forth in Paragraph 125 of the Complaint, except Mosdos admits that its site is adjacent to the Villages of Wesley Hills and New Hempstead.

126.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 126 of the Complaint, except insofar as the allegations contained in Paragraph 126 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

127.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 127 of the Complaint, except insofar as the allegations contained in Paragraph 127 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

128.    Mosdos denies the allegations set forth in Paragraph 128 of the Complaint.

129.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 128 of the Complaint, except insofar as the allegations contained in Paragraph 128 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

130.    Mosdos denies knowledge and information sufficient to form a belief as to the

allegations set forth in Paragraph 130 of the Complaint, except insofar as the allegations contained in Paragraph 130 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 130 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

131. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 131 of the Complaint, except insofar as the allegations contained in Paragraph 131 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

132. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 132 of the Complaint, except insofar as the allegations are speculative, Mosdos denies the speculation.

133. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 133 of the Complaint.

134. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 134 of the Complaint, except insofar as the allegations contained in Paragraph 134 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 134 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

135. Mosdos denies the allegations set forth in Paragraph 135, except Mosdos admits that it is presently zoned R-25.

136. Mosdos admits the allegations set forth in Paragraph 136 of the Complaint.

137. Mosdos denies the allegations set forth in Paragraph 137 of the Complaint.

138. Mosdos denies the allegations set forth in Paragraph 138 of the Complaint.

139. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 139 of the Complaint, except insofar as the allegations contained in Paragraph 139 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

140. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 140 of the Complaint, except insofar as the allegations contained in Paragraph 140 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

141. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 141 of the Complaint, except insofar as the allegations contained in Paragraph 141 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

142. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 142 of the Complaint.

143. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 143 of the Complaint, except insofar as the allegations contained in Paragraph 143 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

144. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 144 of the Complaint, except insofar as the allegations are speculative, Mosdos denies the speculation.

145. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 145 of the Complaint, except insofar as the allegations are speculative, Mosdos denies the speculation.

146. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 146 of the Complaint, except insofar as the allegations are speculative, Mosdos denies the speculation.

147. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 147 of the Complaint, except insofar as the allegations contained in Paragraph 147 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

148. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 148 of the Complaint, except insofar as the allegations contained in Paragraph 148 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 148 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

149. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 149 of the Complaint, except insofar as the allegations contained in Paragraph 149 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 149 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

150. Mosdos denies knowledge and information sufficient to form a belief as to the

allegations set forth in Paragraph 150 of the Complaint, except insofar as the allegations contained in Paragraph 150 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 150 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

151. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 151 of the Complaint, except insofar as the allegations contained in Paragraph 151 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 151 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

152. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 152 of the Complaint, except insofar as the allegations contained in Paragraph 152 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 152 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

153. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 153 of the Complaint, except insofar as the allegations contained in Paragraph 153 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 153 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

154.    Mosdos denies the allegations set forth in Paragraph 154 of the Complaint, except insofar as the allegations contained in Paragraph 154 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 154 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court. Mosdos admits that RLUIPA confers it, as a religious institution, certain rights with respect to land use issues.

155.    Insofar as the allegations contained in Paragraph 155 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

156.    Mosdos denies the allegations set forth in Paragraph 156 of the Complaint.

157.    Insofar as the allegations contained in Paragraph 157 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

158.    Mosdos denies allegations set forth in Paragraph 158 of the Complaint, except insofar as the allegations contained in Paragraph 158 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 158 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

159.    Insofar as the allegations contained in Paragraph 159 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

160. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 160 of the Complaint, except insofar as the allegations contained in Paragraph 160 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

161. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 161 of the Complaint, except insofar as the allegations contained in Paragraph 161 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

162. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 162 of the Complaint, except insofar as the allegations contained in Paragraph 162 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 162 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

163. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 163 of the Complaint, except insofar as the allegations contained in Paragraph 163 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 163 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

164. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 164 of the Complaint, except insofar as the allegations contained in Paragraph 164 of the Complaint refer to a written document, Mosdos neither admits

nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 164 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

165. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 165 of the Complaint, except insofar as the allegations contained in Paragraph 165 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 165 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

166. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 166 of the Complaint, except insofar as the allegations contained in Paragraph 166 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 166 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

167. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 167 of the Complaint, except insofar as the allegations contained in Paragraph 167 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

168. Mosdos admits the allegations set forth in Paragraph 168 of the Complaint.

169. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 169 of the Complaint, except insofar as the allegations contained in Paragraph 169 of the Complaint refer to a written document, Mosdos neither admits

nor denies such allegations, but refers the document to the Court which speaks for itself.

170. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 170 of the Complaint, except insofar as the allegations contained in Paragraph 170 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

171. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 171 of the Complaint, except insofar as the allegations contained in Paragraph 171 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

172. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 172 of the Complaint, except insofar as the allegations contained in Paragraph 172 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

173. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 173 of the Complaint, except insofar as the allegations contained in Paragraph 173 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

174. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 174 of the Complaint, except insofar as the allegations contained in Paragraph 174 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

175. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 175 of the Complaint, except insofar as the allegations

contained in Paragraph 175 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

176.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 176 of the Complaint, except insofar as the allegations contained in Paragraph 176 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 176 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

177.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 177 of the Complaint, except insofar as the allegations contained in Paragraph 177 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 177 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

178.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 178 of the Complaint, except insofar as the allegations contained in Paragraph 178 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 178 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

179.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 179 of the Complaint, except insofar as the allegations contained in Paragraph 179 of the Complaint sets forth a conclusion of law, Mosdos neither

admits nor denies such allegations, but refers the issue of law to the Court.

180. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 180 of the Complaint.

181. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 181 of the Complaint, except insofar as the allegations contained in Paragraph 181 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

182. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 182 of the Complaint, except insofar as the allegations contained in Paragraph 182 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

183. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 183 of the Complaint, except insofar as the allegations contained in Paragraph 183 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

184. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 184 of the Complaint, except insofar as the allegations contained in Paragraph 184 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

185. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 185 of the Complaint, except insofar as the allegations contained in Paragraph 185 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar

as the allegations contained in Paragraph 185 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

186.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 186 of the Complaint, except insofar as the allegations contained in Paragraph 186 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

187.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 187 of the Complaint, except insofar as the allegations contained in Paragraph 187 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 187 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

188.    Mosdos denies the allegations set forth in Paragraph 188 of the Complaint.

189.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 189 of the Complaint, except insofar as the allegations contained in Paragraph 189 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

190.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 190 of the Complaint, except insofar as the allegations contained in Paragraph 190 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

191.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 191 of the Complaint, except insofar as the allegations

contained in Paragraph 189 of the Complaint refer to a written document.

192.   Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 192 of the Complaint, except insofar as the allegations contained in Paragraph 192 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 192 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

193.   Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 193 of the Complaint, except insofar as the allegations contained in Paragraph 193 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 193 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

194.   Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 194 of the Complaint, except insofar as the allegations contained in Paragraph 194 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself. Insofar as the allegations contained in Paragraph 194 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

195.   Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 195 of the Complaint, except insofar as the allegations contained in Paragraph 195 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

196. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 196 of the Complaint, except insofar as the allegations contained in Paragraph 196 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

197. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 196 of the Complaint, except insofar as the allegations contained in Paragraph 196 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

198. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 195 of the Complaint.

199. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 199 of the Complaint, except insofar as the allegations contained in Paragraph 199 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

200. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 200 of the Complaint, except insofar as the allegations contained in Paragraph 200 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

201. Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 201 of the Complaint, except insofar as the allegations contained in Paragraph 201 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

202. Mosdos denies knowledge and information sufficient to form a belief as to the

allegations set forth in Paragraph 202 of the Complaint, except insofar as the allegations contained in Paragraph 202 of the Complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

203.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 203 of the Complaint, except insofar as the allegations contained in Paragraph 203 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

204.    Mosdos admits the allegations contained in Paragraph 204 of the Complaint.

205.    Mosdos denies the allegations contained in Paragraph 205 of the Complaint.

206.    Mosdos denies knowledge and information sufficient to form a belief as to the allegations set forth in Paragraph 206 of the Complaint, except insofar as the allegations contained in Paragraph 206 of the Complaint refer to a written document, Mosdos neither admits nor denies such allegations, but refers the document to the Court which speaks for itself.

207.    With respect to the allegations set forth in Paragraph 207 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 206.

208.    Mosdos denies the allegations contained in Paragraph 208 of the Complaint, except insofar as the allegations contained in Paragraph 208 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

209.    Mosdos denies the allegations contained in Paragraph 209 of the Complaint, Insofar as the allegations contained in Paragraph 209 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

210.    Mosdos denies the allegations contained in Paragraph 210 of the Complaint,

Insofar as the allegations contained in Paragraph 210 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

211. Mosdos denies the allegations contained in Paragraph 211 of the Complaint, Insofar as the allegations contained in Paragraph 211 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

212. Mosdos denies the allegations contained in Paragraph 212 of the Complaint, Insofar as the allegations contained in Paragraph 212 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

213. Mosdos denies the allegations contained in Paragraph 213 of the Complaint, Insofar as the allegations contained in Paragraph 213 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

214. With respect to the allegations set forth in Paragraph 214 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 213.

215. Mosdos denies the allegations contained in Paragraph 215 of the Complaint, Insofar as the allegations contained in Paragraph 215 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

216. Mosdos denies the allegations contained in Paragraph 216 of the Complaint, Insofar as the allegations contained in Paragraph 216 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

217. Mosdos denies the allegations contained in Paragraph 217 of the Complaint, Insofar as the allegations contained in Paragraph 217 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

218. With respect to the allegations set forth in Paragraph 218 of the Complaint,

Mosdos repeats its answers as set forth in Paragraphs 1 through 217.

219.  Mosdos denies the allegations contained in Paragraph 219 of the Complaint,

Insofar as the allegations contained in Paragraph 219 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

220.  Mosdos denies the allegations contained in Paragraph 220 of the Complaint,

Insofar as the allegations contained in Paragraph 220 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

221.  Mosdos denies the allegations contained in Paragraph 221 of the Complaint,

Insofar as the allegations contained in Paragraph 221 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

222.  Mosdos denies the allegations contained in Paragraph 222 of the Complaint,

Insofar as the allegations contained in Paragraph 222 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

223.  Mosdos denies the allegations contained in Paragraph 223 of the Complaint,

Insofar as the allegations contained in Paragraph 223 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

224.  Mosdos denies the allegations contained in Paragraph 224 of the Complaint,

Insofar as the allegations contained in Paragraph 224 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

225.  Mosdos denies the allegations contained in Paragraph 225 of the Complaint,

Insofar as the allegations contained in Paragraph 225 of the complaint sets forth a conclusion of

law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

226.  Mosdos denies the allegations contained in Paragraph 226 of the Complaint,

Insofar as the allegations contained in Paragraph 226 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

227. With respect to the allegations set forth in Paragraph 227 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 226.

228. Mosdos denies the allegations contained in Paragraph 228 of the Complaint, except insofar as the allegations contained in Paragraph 228 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

229. Mosdos denies the allegations contained in Paragraph 229 of the Complaint, except insofar as the allegations contained in Paragraph 229 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

230. Mosdos denies the allegations contained in Paragraph 230 of the Complaint, except insofar as the allegations contained in Paragraph 230 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

231. Mosdos denies the allegations contained in Paragraph 231 of the Complaint, except insofar as the allegations contained in Paragraph 231 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

232. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 232 of the Complaint, except insofar as the allegations contained in Paragraph 232 of the complaint sets forth a conclusion of law, Mosdos neither

admits nor denies such allegations, but refers the issue of law to the Court.

233.    Mosdos denies the allegations contained in Paragraph 233 of the Complaint,
except insofar as the allegations contained in Paragraph 233 of the Complaint set forth a
conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law
to the Court.

234.    Mosdos denies the allegations contained in Paragraph 234 of the Complaint,
except insofar as the allegations contained in Paragraph 234 of the Complaint set forth a
conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law
to the Court.

235.    With respect to the allegations set forth in Paragraph 235 of the Complaint,
Mosdos repeats its answers as set forth in Paragraphs 1 through 234.

236.    Mosdos denies the allegations contained in Paragraph 236 of the Complaint,
except insofar as the allegations contained in Paragraph 236 of the Complaint refer to a written
document, Mosdos neither admits nor denies such allegations but refers the Court to the
document which speaks for itself, and except insofar as the allegations contained in Paragraph
236 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such
allegations, but refers the issue of law to the Court.

237.    Mosdos denies knowledge or information sufficient to form a belief as to the
allegations contained in Paragraph 237 of the Complaint.

238.    Mosdos denies the allegations contained in Paragraph 238 of the Complaint,
except insofar as the allegations contained in Paragraph 238 of the Complaint refer to a written
document , Mosdos neither admits nor denies such allegations but refers the Court to the
document which speaks for itself, and except insofar as the allegations contained in Paragraph

238 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

239. Mosdos denies knowledge and information sufficient to respond to the allegations contained in Paragraph 239 of the Complaint, except insofar as the allegations contained in Paragraph 239 of the Complaint refer to a written document , Mosdos neither admits nor denies such allegations but refers the Court to the document which speaks for itself, and except insofar as the allegations contained in Paragraph 239 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

240. Mosdos denies knowledge and information sufficient to respond to the allegations contained in Paragraph 240 of the Complaint, except insofar as the allegations contained in Paragraph 240 of the Complaint refer to a written document , Mosdos neither admits nor denies such allegations but refers the Court to the document which speaks for itself, and except insofar as the allegations contained in Paragraph 240 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

241. Mosdos denies knowledge and information sufficient to respond to the allegations contained in Paragraph 241 of the Complaint, except insofar as the allegations contained in Paragraph 241 of the Complaint refer to a written document , Mosdos neither admits nor denies such allegations but refers the Court to the document which speaks for itself, and except insofar as the allegations contained in Paragraph 241 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

242. Mosdos denies knowledge and information sufficient to respond to the allegations contained in Paragraph 242 of the Complaint, except insofar as the allegations contained in Paragraph 242 of the Complaint refer to a written document , Mosdos neither admits nor denies

such allegations but refers the Court to the document which speaks for itself, and except insofar as the allegations contained in Paragraph 242 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

243. Mosdos denies the allegations contained in Paragraph 243 of the Complaint, except insofar as the allegations contained in Paragraph 243 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

244. Mosdos denies the allegations contained in Paragraph 244 of the Complaint, except insofar as the allegations contained in Paragraph 244 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

245. With respect to the allegations set forth in Paragraph 245 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 244.

246. Mosdos denies the allegations contained in Paragraph 246 of the Complaint, except insofar as the allegations contained in Paragraph 246 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

247. Mosdos denies the allegations contained in Paragraph 247 of the Complaint, except insofar as the allegations contained in Paragraph 247 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

248. Mosdos denies the allegations contained in Paragraph 248 of the Complaint, except insofar as the allegations contained in Paragraph 248 of the complaint sets forth a

conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

249. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 249 of the Complaint.

250. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 250 of the Complaint.

251. Mosdos denies the allegations contained in Paragraph 251 of the Complaint, except insofar as the allegations contained in Paragraph 251 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

252. With respect to the allegations set forth in Paragraph 252 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 251.

253. Insofar as the allegations contained in Paragraph 253 of the Complaint refer to a written document , Mosdos neither admits nor denies such allegations but refers the Court to the document which speaks for itself.

254. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 254 of the Complaint, except insofar as the allegations contained in Paragraph 254 of the Complaint refer to a written document , Mosdos neither admits nor denies such allegations but refers the Court to the document which speaks for itself.

255. Mosdos denies the allegations set forth in Paragraph 255 of the Complaint.

256. Mosdos denies the allegations contained in Paragraph 256 of the Complaint, except insofar as the allegations contained in Paragraph 256 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law

to the Court.

257. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 257 of the Complaint, except insofar as the allegations contained in Paragraph 257 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

258. Mosdos denies the allegations contained in Paragraph 258 of the Complaint, except insofar as the allegations contained in Paragraph 258 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

259. With respect to the allegations set forth in Paragraph 259 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 258.

260. Mosdos denies the allegations contained in Paragraph 260 of the Complaint, except insofar as the allegations contained in Paragraph 260 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

261. Mosdos denies the allegations contained in Paragraph 261 of the Complaint, except insofar as the allegations contained in Paragraph 261 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

262. Mosdos denies the allegations contained in Paragraph 262 of the Complaint, except insofar as the allegations contained in Paragraph 262 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

263. Mosdos denies the allegations contained in Paragraph 263 of the Complaint, except insofar as the allegations contained in Paragraph 263 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

264. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 264 of the Complaint.

265. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 265 of the Complaint.

266. Mosdos denies the allegations contained in Paragraph 266 of the Complaint, except insofar as the allegations contained in Paragraph 266 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

267. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 267 of the Complaint.

268. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 268 of the Complaint.

269. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 269 of the Complaint.

270. Mosdos denies the allegations contained in Paragraph 270 of the Complaint, except insofar as the allegations contained in Paragraph 270 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

271. With respect to the allegations set forth in Paragraph 271 of the Complaint,

Mosdos repeats its answers as set forth in Paragraphs 1 through 270.

272. Mosdos denies the allegations contained in Paragraph 272 of the Complaint, except insofar as the allegations contained in Paragraph 272 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

273. Mosdos denies the allegations contained in Paragraph 273 of the Complaint, except insofar as the allegations contained in Paragraph 273 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

274. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 274 of the Complaint.

275. Mosdos denies the allegations contained in Paragraph 275 of the Complaint, except insofar as the allegations contained in Paragraph 275 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

276. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 276 of the Complaint.

277. Mosdos denies the allegations contained in Paragraph 277 of the Complaint, except insofar as the allegations contained in Paragraph 277 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

278. With respect to the allegations set forth in Paragraph 278 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 277.

279. Mosdos denies the allegations contained in Paragraph 279 of the Complaint, except insofar as the allegations contained in Paragraph 279 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

280. Mosdos denies the allegations contained in Paragraph 280 of the Complaint, except insofar as the allegations contained in Paragraph 280 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

281. Mosdos denies the allegations contained in Paragraph 281 of the Complaint, except insofar as the allegations contained in Paragraph 281 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

282. Mosdos denies the allegations contained in Paragraph 282 of the Complaint, except insofar as the allegations contained in Paragraph 282 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

283. Mosdos denies the allegations contained in Paragraph 283 of the Complaint, except insofar as the allegations contained in Paragraph 283 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

284. With respect to the allegations set forth in Paragraph 284 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 283.

285. Mosdos denies the allegations contained in Paragraph 285 of the Complaint,

except insofar as the allegations contained in Paragraph 285 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

286. Mosdos denies the allegations contained in Paragraph 286 of the Complaint, except insofar as the allegations contained in Paragraph 286 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

287. Mosdos denies the allegations contained in Paragraph 287 of the Complaint, except insofar as the allegations contained in Paragraph 287 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

288. Mosdos denies knowledge and information sufficient to form a belief as to the allegations contained in Paragraph 288 of the Complaint.

289. Mosdos denies the allegations contained in Paragraph 289 of the Complaint.

290. Mosdos denies the allegations contained in Paragraph 290 of the Complaint, except insofar as the allegations contained in Paragraph 290 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

291. With respect to the allegations set forth in Paragraph 291 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 290.

292. Mosdos denies the allegations contained in Paragraph 292 of the Complaint, except insofar as the allegations contained in Paragraph 292 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law

to the Court.

293.    Mosdos denies the allegations contained in Paragraph 293 of the Complaint, except insofar as the allegations contained in Paragraph 293 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

294.    Mosdos denies the allegations contained in Paragraph 294 of the Complaint, except insofar as the allegations contained in Paragraph 294 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

295.    Mosdos denies the allegations contained in Paragraph 295 of the Complaint, except insofar as the allegations contained in Paragraph 295 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

296.    Mosdos denies the allegations contained in Paragraph 296 of the Complaint, except insofar as the allegations contained in Paragraph 296 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

297.    Mosdos denies the allegations contained in Paragraph 297 of the Complaint, except insofar as the allegations contained in Paragraph 297 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

298.    Mosdos denies the allegations contained in Paragraph 298 of the Complaint, except insofar as the allegations contained in Paragraph 298 of the complaint sets forth a

conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

299. Mosdos denies the allegations contained in Paragraph 299 of the Complaint, except insofar as the allegations contained in Paragraph 299 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

300. Mosdos denies the allegations contained in Paragraph 300 of the Complaint, except insofar as the allegations contained in Paragraph 300 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

301. Mosdos denies the allegations contained in Paragraph 301 of the Complaint, except insofar as the allegations contained in Paragraph 301 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

302. With respect to the allegations set forth in Paragraph 302 of the Complaint, Mosdos repeats its answers as set forth in Paragraphs 1 through 301.

303. Mosdos denies the allegations contained in Paragraph 303 of the Complaint, except insofar as the allegations contained in Paragraph 303 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law to the Court.

304. Mosdos denies the allegations contained in Paragraph 304 of the Complaint, except insofar as the allegations contained in Paragraph 304 of the complaint sets forth a conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law

to the Court.

305.    Mosdos denies the allegations contained in Paragraph 305 of the Complaint,
except insofar as the allegations contained in Paragraph 305 of the complaint sets forth a
conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law
to the Court.

306.    Mosdos denies knowledge and information sufficient to form a belief as to the
allegations contained in Paragraph 306 of the Complaint.

307.    Mosdos denies the allegations contained in Paragraph 228 of the Complaint,
except insofar as the allegations contained in Paragraph 228 of the complaint sets forth a
conclusion of law, Mosdos neither admits nor denies such allegations, but refers the issue of law
to the Court.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

308.    The Complaint fails to state a cause of action for which relief may be granted.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE

309.    Plaintiffs/Petitioners' claims are moot

## COUNTERCLAIMS

## FACTS AS TO ALL COUNTERCLAIMS

310.    This counterclaim is being interposed by Mosdos to redress violations of the their
civil rights—as protected by the United States and New York Constitutions, the Religious Land
Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc et *seq.* ("RLUIPA"), and the
Fair Housing Act, 42 U.S.C. § 3601 *et seq.*,  -  at the hands of Plaintiffs. The violations have
been caused by the Defendants' burdensome, discriminatory and intentional conduct which have

prohibited and continue to prohibit Mosdos from completing the building and operating its
Yeshiva and religious learning community that will include places of worship, religious
educational facilities, religious courts, libraries of Jewish texts, and accessory student housing
dedicated solely to its full-time rabbinical students, lecturers and their families (the "Yeshiva").

311.    This counterclaim seeks relief from the clear and purposeful deprivation of the
Plaintiffs' rights to freedom of religion, speech, assembly, due process, and equal protection of
the laws by the Defendants acting under the color of state law.

312.    Mosdos is a non-for-profit religious corporation which owns and has
developed a center of higher learning.

313.    Plaintiffs underlying lawsuit, including their requests for injunctive relief,
is a continuation of policy to stop the spread of orthodox jewry into the backyards of certain
neighborhoods in Rockland County.

314.    This NIMBY ("Not in My Back Yard") policy has manifested itself in the
recent movement of certain neighborhoods to secede from the Town of Ramapo and
incorporate villages, including each of the villages which is a plaintiff in this lawsuit.

315.    The stated purpose of the village incorporation movement was to be able
to exercise more local control of zoning and land use issues.

316.    The unstated purpose was to violate the civil rights of orthodox and
Hasidic jews by imposing barriers to the growth of their respective communities.

317.    Not content with the exclusion they have imposed on the orthodox jewish
community from their respective villages, the Plaintiffs have continually attempted to subvert
the political process in the Town government for the primary purpose of invidious
discrimination.  The discriminatory, disparate and selective treatment by the Plaintiff has

both the purpose and effect of directly depriving members of the Orthodox and Hasidic communities of their constitutional and statutory rights under the 1st Amendment to the U.S. Constitution, the 14th Amendment to the U.S. Constitution, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 2000cc, 42 U.S.C. § 3604, NEW YORK CONST. Art. I, § 3, NEW YORK CONST. Art. I, § 11, NY STATUTES, Chap. 6, Art. 4, § 40, § 40-C of the New York Civil Rights Law; and § 291 of the New York Executive Laws.

318.     The Plaintiffs have targeted the Orthodox and/or Hasidic communities for years, which has resulted in fierce anti-Orthodox and anti-Hasidic animus in the local community.

319.     In preventing Mosdos from using the Subject Property for its protected religious and expressive activity along with its housing availability, the Plaintiffs and their officials continue their civil rights violations by substantially burdening Mosdos' religious exercise and expression without a compelling governmental interest, or without using the least restrictive means of achieving any compelling governmental interest and by denying or otherwise making residential housing unavailable.

## JURISDICTION

320.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(3), (4), 42 U.S.C. § 2000cc *et seq.,* 42 U.S.C. § 3613(a), *et seq.,* and 42 U.S.C. § 1983, which confer original jurisdiction on federal district courts in suits to redress the deprivation of rights, privileges and immunities secured by the laws and Constitution of the United States, particularly the First and Fourteenth Amendments to the Constitution of the United States, and the Religious Land Use and Institutionalized Persons Act of 2000 and the Fair Housing Act.

321.     The removal of this action is proper since the underlying State Court

action was nothing more than a vehicle to further deprive Mosdos, and those similarly situated, of its civil rights.

322.     This Court has jurisdiction over the request for declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## **MOSDOS CHOFETZ CHAIM, INC**.

323.     Mosdos is a religious corporation having its principal place of business located at Kiryas Radin Drive, Spring Valley NY, Town of Ramapo, County of Rockland State of New York. Plaintiff is the owner of certain real property (the Kiryas Radin Campus) located in the Town of Ramapo, County of Rockland, State of New York also known as Section 9, Lot No. 718 and intends to provide housing for Orthodox Jewish Families at its premises.

324.     The Plaintiffs are the associated villages engaged in governmental exclusion and conspiracies to prevent Orthodox Jews from developing their property.

### FACTUAL BACKGROUND - THE ORTHODOX JEWISH COMMUNITY

325.     Mosdos is currently the owner of the certain real property known as the Nike Site.     It is on the former Nike site that Mosdos has been the subject of religious discrimination in the past.     It is this site, now known as Kiryas Radin that Mosdos has developed into a center of advanced learning.

326.     Yeshiva Chofetz Chaim Kiryas Radin, and Kiryas Radin, are a singular religious community designed to include the housing of scholars, students, and others who follow the teachings of the Torah and Talmud as taught by their founder, Rabbi Israel Mayer Kagan.     As developed, the site contains a synaguge, study halls, ritual emersion bath and familial residential areas.     The campus will serve rabbinical students and their families as a

center for advanced study and prayer. It is a live in - higher educational institution for the purpose of instructing students in philosophy, theology, spirituality and the religious life in order to prepare them to become permanent members of the clergy. It further serves many families as their synagogue and religious studies center.

327.     Rabbi Kagan founded the Yeshiva in Radin, Belarus[1] in 1864 and led it until his death in 1933. Rabbi Kagan was recognized worldwide as the leader of world Jewry. The Yeshiva in Radin was a Torah learning community and a communal center for religious students with over 400 students. Except for a short period of time during the Holocaust, the Yeshiva Chofetz Chaim has been continuously serving the local Jewish community.

328.     In the 1920's Rabbi Mendel Zaks married the daughter of Rabbi Kagan and joined the Rabbi Kagan as primary leader of the Yeshiva and in all other communal affairs. Rabbi Zaks incredible knowledge of the Talmud coupled with a photographic memory attracted more students to the Yeshiva and grew it greatly.

329.     The Yeshiva first incorporated in the United States in 1925. That year, the Yeshiva sent emissaries to the United States to raise money for the operation of the Yeshiva and its multiple missions; which by this time had grown to include a Free Loan Fund, a Study Program for Young Married Adults (Kolel Kodoshim), a Charity Fund for the Poor, a Burial Society, a Marriage Assistance Fund, a Publication Fund, Day Schools, and many other community based programs.

330.     Upon Rabbi Kagan's death in 1933 Rabbi Mendel Zaks began leadership of the Yeshiva. He continued Rabbi Kagan's record of training up the best and brightest Jewish scholars: scholars who founded well-respected Yeshivas elsewhere across the world.

---

[1] When the Yeshiva was founded, Radin was part of Poland, but the territory is now part of Belarus.

But like many other times in the life of the Jewish people, the Yeshiva was forced to flee.

331.     In 1941, the Yeshiva was closed and its members forced to flee the town of Radin. Rabbi Zaks escaped to the United States and restarted the Chofetz Chaim Yeshiva in Suffern, New York by gathering survivors of the Holocaust who came to the United States shores (to escape persecution). In 1950, Rabbi Mendel Zaks' son, Rabbi Gershon Zaks— who also survived the war—joined his father in the United States. A kolel and school were reestablished. Together, the two managed to raise up the Yeshiva and restore some of its prior prominence.

332.     The Yeshiva moved to Suffern, New York in the 1960's and settled in its current 14 acre location. The Yeshiva flourished at its location. However, nearly fifty years have passed at the present site and growth must be accommodated. The current needs of the Plaintiffs outstrip the ability of the Yeshivas to deliver, and thus it needs to expand.

333.     The Kiryas Radin Campus (the "Nike Site") is a Yeshiva physically located near the boundaries of the Village of New Hempstead, New York, though not a part of the incorporated Village. It was assumed back into the unincorporated Town of Ramapo (Town) pursuant to agreement and stipulation between the Village, the Town, and the Yeshiva which agreement was made as part of a Federal Court stipulation.

334.     The Nike site is critical to the continued religious practice of the Plaintiffs. The plan calls for a synagogue, a prayer/study hall, classrooms, a library/Talmudic research center, kitchen/dining facilities, living facilities, and a Mikvah. The residential facilities consist of two-story attached units utilized in two-bedroom and four-bedroom layouts. The entire site is enclosed with fencing gates, and partition walls. Furthermore, the Plaintiffs will provide visually pleasing buffers to improve and enhance the beauty of the proposed

site.

335.    The plan calls for an almost entirely self-sufficient facility. The sites are designed with full automatic fire sprinkler systems. The Plaintiffs will provide for their own sanitation, and will be responsible for all road maintenance, snow removal, and upkeep of the facilities. Additionally, over one hundred children will be living in the site premises. The education for these children is provided by the Yeshiva. Therefore, the children will place no strain on the public school system.

336.    This proposed development is in keeping with their religious teachings. Jewish religion and custom teaches that Yeshivas are a necessary and vital part of the Jewish life. Yeshivas serve as communities of learning for intense Torah study, charitable works, outreach, and continuous religious practice. According to the Plaintiffs' beliefs, everyone in the learning community, from spouses to children, benefits from the intense religious atmosphere. The creation of a Yeshiva and its communal setting furthers the teachings of the Torah, the goals of the Jewish religion, and it is central to the religious vision of the Plaintiffs. The Jewish Holy laws do not allow Orthodox Jews to carry objects outside of an enclosed area on the Holy Sabbath.

### THE TOWN AND THE VILLAGES

337.    The Town of Ramapo's Jewish population including Orthodox Jews has grown substantially and now represents approximately 50% of the population of the unincorporated Town of Ramapo. While the Town of Ramapo has attempted to work with the growth and expansion of the Orthodox and Hasidic Jewish communities, the Villages have consistently acted to restrain their growth.

338.    Within the Town of Ramapo in the County of Rockland, a 'village

incorporation movement' began in the late 1970's, when orthodox and Hasidic Jewish families began to reside in the Town of Ramapo in increasing numbers.

339.    In opposition to the influx of Orthodox and Hasidic Jews within the Town of Ramapo, residents began to establish villages for the purpose of controlling who resided within each village. Within the Town of Ramapo, the Villages of Pomona, Montebello, Chestnut Ridge, Wesley Hills and New Hempstead were formed in the past decade.

340.    The purpose of the village formation movement was to exercise control over zoning and planning and not accommodate influx of people the local villages deemed undesirable.

341.    The attitude towards the Orthodox and Hasidic Jewish communities in the area has been the platform of the local politician who have run their campaigns on platforms of containing the spread of the Orthodox and/or Hasidic Jewish communities.

342.    Reflecting the anti-orthodox and Hasidic views, the Town historically adopted a zoning plan which failed to accommodate the needs of the Orthodox and Hasidic Jewish residents. This zoning plan stayed in place until 2004.

343.    Recognizing the need to undertake a review of the Master Plan, so that sustained growth could continue, the Town of Ramapo initiated a review of its Master Plan.

344.    When the Town of Ramapo indicated its desire to begin a revision of the Master Plan the Villages took their position that no new construction could take place in the Town without a corresponding comprehensive review. They asserted that infrastructure and open-space concerns were the reasons behind their moratorium on construction.

345.    In 2000, a new supervisor was elected who undertook a reevaluation of the needs of the Town. The Supervisor, Christopher St. Lawrence, helped to craft a Master Plan

that addressed the needs of the growing community and its surrounding regions. Much to the delight of the needy population that cannot afford housing in this area, the new plan was a welcome change. However, to the horror of the surrounding Villages this Master Plan allowed for the inclusion of multi-family zones and accessory apartments.

346.     During its Master Plan review, the Town of Ramapo learned that there is a distinct population in the jurisdiction that are in need for adequate housing. Many of them are married and single students of the several large religious educational centers in the Town of Ramapo. These are Jewish students who continue their religious studies after marriage. As married couples studying Jewish teachings full-time, these students do not have much income. The Yeshivas wanted to build adequate living quarters for these students on their campuses. However, there were no Town codes available to set guidelines for this type of construction. In order to accommodate any expansion of the Yeshivas, either a variance had to be granted or the zoning code had to be amended to allow multi-family housing to be built in the Town of Ramapo.

347.     This Master Plan draft was initially promulgated in 2001 to address the needs of the entire Town of Ramapo, including those people who struggle economically. Multi-family zones and accessory apartments—necessary for poor and low-income families—were only allowed, but only in areas far from any villages. These multi-family zones and accessory apartments were only located near main roads so that it would not infringe on any of the Villages quality of life. One large area initially zoned for single-family homes on two acres was rezoned to one acre zoning so as to be in conformance with the surrounding areas. Over one thousand acres of land were set aside as open space and park areas. The Town adopted a new comprehensive plan following completion of an

environmental review on or about January 29, 2004.

348.    The approval of the Comprehensive Plan did not make any actual zoning changes in any area of the town. The Comprehensive Plan is simply a policy statement about goals, plans, etc. The areas selected for Multi-Family District zoning were recommended because they contain characteristics that make them suitable for such zoning (e.g., easy access to major roads). Because most of the land in the Town of Ramapo falls into either dedicated parkland or one of the incorporated villages, the Town only has zoning control for less than 30% of the land in the entire town lands.

349.    During this period of review and comment on the Comprehensive Plan, the s Villages who complained about the lack of resources still approved the development of over one thousand multi-family, high-density units in their own respective villages without any alarm over infrastructure or sewer capacity. In addition, an additional 1,200 units north of the Town of Ramapo are being, or have been connected to the town's infrastructure. In addition, over eighty senior units were approved by the Villages throughout Ramapo without any opposition. These newly approved projects were not a concern to the Villages, as they are not for Orthodox or Hasidic Jews.

350.    Mosdos approached the town with a site plan for approval on the Yeshiva campus at the former Nike missile base in 2001. The Plaintiff asked the Town for its opinion in allowing expansion of the religious Yeshiva Campus pursuant to the then newly passed RLUIPA legislation. After much delay Mosdos was told that the town would accept the proposed project under RLUIPA provided that the development could be reconciled with all Federal, State and Local Law.

351.    In September of 2002, the current Ramapo Town Attorney sent Rabbi

Zaks a letter that recapped the property history and approved Mosdos' proposed yeshiva project: "The proposed plan as projected is a genuine religious project in furtherance of religious goals and as such would meet all the requirements for such religious land use."

352.     Based upon the recommendation given by the Town of Ramapo's Attorney, a site plan under the R15 zoning bulk table was submitted. The proposed site plan contained a unit count less than what was permitted under R15 zoning for seniors, which was the most generous zoning in the Town at that time. After submitting the plans for review the Town Attorney's office and the building department requested that the project be redesigned to fit within the dormitory zoning code.

353.     At great expense and delay, Mosdos redesigned the site to accommodate the Town's requests. Only after submitting their redesigned Yeshiva site plans did the Community Design Review Committee (CDRC) inform Mosdos that the dormitory zoning ordinance does not fit housing for married students.

354.     Mosdos's plans included spaces for married students, and single students. According to the Chofetz Chaim's teachings, life at the Yeshiva is central to the student's religious experience and includes many rituals and constant religious practice in the home areas for the students, their spouses, and their children. This religious community would be free from the outside secular influence of mass media, such as television, and had been deemed permissible by the town attorney.

355.     Inclusion of the "Adult Married Student" housing classification in the Town's Comprehensive Plan, notwithstanding its limited extent, met with vehement opposition from Villages.     The Yeshiva was also opposed to this new law as it did not address its religious needs and served to limit its growth. Nevertheless, the Yeshiva did use

it as a guidepost for the development of the project.

356.     The Town used a Generic Environmental Impact Statement (GEIS) in preparation of putting together a Comprehensive Plan. Pursuant to the GEIS, public opinions (including those from the Villages) were thoroughly solicited and considered over the course of three years.

357.     The Villages, realizing that the Master Plan allowed for the growth of the Orthodox and Hasidic communities, started an organized campaign to defeat and block the Master Plan and the Adult Student Housing law from adoption.

358.     Defendants used racist remarks and racial stereotyping to install fear and misinformation in regards to the passage of the Master Plan. Articles were written and speeches were given, deriding the Orthodox and Hasidic Communities, including Chofetz Chaim, because of their religious beliefs and religious mode of dress. These articles and statements were made by officials of the Villags acting individually and in their official capacity.

359.     The Villages mounted a concerted effort to subvert and dominate the Town of Ramapo meetings, in their opposition to passage of the new Comprehensive Plan.

360.     On June 15, 2004 at a special meeting, Town adopted Resolution No. 2004-358, finding no significant adverse impact on the environment in permitting Adult Student Housing, and issued a Negative Declaration. The Town subsequently amended the zoning code to permit Adult Student Housing as a conditional use, to be known as Local Law #9-2004.

361.     The Town passed the Adult Student Housing law to address the need for a guidepost and planning tool for secular educational institutions and religious institutions in

planning campus development. The law was passed with the understanding that the law will not address all religious needs and some religious institutions will need to obtain variances from the Town zoning board for any deviations from this zoning law.

362.    Subsequently, Mosdos redesigned the project to conform to this new student housing code. The Plaintiff submitted its revised plans to the town for site plan approval. Included with this plan was a list of several matters requiring zoning board variances.

363.    Once the Villages learned that Mosdos intended to utilize the law (including RLUIPA) to build housing for its students, the Villages filed suit to stop the promulgation of the law. Although the pretext of the lawsuit is environmental concerns, the goal of the Village is to prevent the spread of the Orthodox and Hasidic communities through intimidation.

364.    The Villages have continually attempted to block any attempts of the Yeshiva to improve its Nike Site campus according to their religious beliefs. The Villages have gone so far as to contact federal and state agencies with contrived environmental concerns. When the federal agencies dismissed those complaints, the Villages continued to assert environmental problems, with no basis in fact or law.

365.    Prior to the events which are at the center of Plaintiffs' instant lawsuit, *i.e.* the enactment of the Adult Student Housing Law and the modifications of the Town of Ramapo's comprehensive plan (collectively, the "Town's Recent Enactments"), Mosdos maintained that it should be permitted to build its Yeshiva and associated housing under RLUIPA.

366.    Subsequent to the Town's Recent Enactments, Mosdos has maintained

that the Town's Recent Enactments are not critical upon its ability to build its Yeshiva and associated housing under RLUIPA.

367.    The Villages' challenge to the Town's Recent Enactments, which are set forth in the instant lawsuit, was designed to create a forum to impede the development of Mosdos's Real Property through the use of the judicial process.

## AS A FIRST COUNTERCLAIM
### Free Exercise Clause
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

368.    Plaintiffs repeat and reallege paragraphs 310  through 367 as if fully set forth herein.

369.    The Villages and actions deprived and continue to deprive the Plaintiffs of their right to free exercise of religion, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, (1) by substantially burdening Mosdos's religious exercise without a compelling governmental interest; (2) by discriminating against and Mosdos for disfavor; and (3) by treating religious assemblies and institutions on less than equal terms as nonreligious assemblies and institutions.

370.    Mosdos has no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

371.    Defendants have caused the Plaintiffs to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS A SECOND COUNTERCLAIM
### Free Speech Clause
### United States Constitution,
### First and Fourteenth Amendments
### 42 U.S.C. § 1983

372. Plaintiffs repeat and reallege paragraphs 310 through 371 as if fully set forth herein.

373. Defendants' laws and actions deprived and continue to deprive the Plaintiffs of their right to free speech and freedom of association, as secured by the First Amendment to the United States Constitution and made applicable to the States by the Fourteenth Amendment, by (1) prohibiting the Plaintiffs' protected expressive activity completely from the Village's jurisdiction; (2) by treating religious expressive activity on less than equal terms as nonreligious expressive activity; (3) by regulating expression and expressive conduct on the basis of the character of the speaker; (4) by failing to be content-neutral; (5) by failing to leave open any alternative channels of communication; and (6) by enforcing regulations against expressive activity that are not narrowly tailored to serve a legitimated governmental objective.

374. Mosdos has no adequate remedy at law for the harm and damage caused by Defendants' violation of its constitutional rights.

375. The Villages have caused Mosdos to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined

## AS AND FOR A THIRD COUNTERCLAIM
### "Substantial Burdens"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc(2)(a)

376. Mosdos repeats and realleges paragraphs 310 through 375 as if fully set forth herein.

377. Mosdos has been deprived and continues to be deprived of its right to the free exercise of religion, as secured by the Religious Land Use and Institutionalized Persons Act, by imposing and implementing a land use regulation in a manner that places a substantial burden on the Plaintiffs' religious exercise without any compelling interest, and without using the least restrictive means of furthering any compelling interest.

378. Mosdos has no adequate remedy at law for the harm and damage caused by Defendants' violation of its rights.

379. The Villages have caused Mosdos to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS AND FOR A FOURTH COUNTECLAIM
### "Nondiscrimination"
### Religious Land Use and Institutionalized Persons Act of 2000
### 42 U.S.C. § 2000cc(2)(b)(2)

380. Mosdos repeats and realleges paragraphs 310 through 375 as if fully set forth herein

381. The Villages actions deprived and continue to deprive the Congregation of its right to free exercise of religion, as secured by the Religious Land Use and Institutionalized

50

Persons Act, through the guise of SEQRA and the misuse of the Court system of the State of New York.

382. Mosdos has no adequate remedy at law for the harm and damage caused by Defendants' violations of its rights.

383. The Villages have caused Mosdos to suffer, and to continue io suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## AS A FOR A FIFTH COUNTERCLAIM
### Fair Housing Act
### 42 U.S.C. § 3604

384. Mosdos repeats and reallege paragraphs 310 through 383 as if fully set forth herein.

385. The Villages, by their conduct, have discriminated against Mosdos and the Yeshiva by preventing their religious educational institution and associated housing because of religion in violation of 42 U.S.C. § 3604(a).

386. The Villages actions discriminate against Mosdos based on religion, in violation of 42 U.S.C. § 3604(a).

387. Mosdos is an aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and it has suffered damages as a result of the Villages conduct.

388. Mosdos has no adequate remedy at law for the harm and damage caused by Defendants' violations of its rights.

389. The Villages have caused Mosdos to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages

unless the Village's acts and conduct complained of are permanently enjoined.

## AS A FOR A SIXTH COUNTERCLAIM

### Fair Housing Act

### 42 U.S.C. § 3617

390.     Mosdos repeats and reallege paragraphs 310 through 389 as if fully set forth herein.

391.     The Villages by their conduct, acts and legislative enactments, have interfered with the Plaintiffs' exercise or enjoyment of obtaining available housing within their boarders as well as outside their boarders in violation of 42 U.S.C. § 3617.

392.     Mosdos is an aggrieved persons as that term is defined in the Fair Housing Act, 42 U.S.C. § 3602(i) and it has suffered damages as a result of the Villages' conduct.

393.     Mosdos has no adequate remedy at law for the harm and damage caused by Defendants' violations of its rights.

394.     The Villages have caused Mosdos to suffer, and to continue to suffer, irreparable harm, damage and injury. The Plaintiffs will continue to suffer such damages unless the Village's acts and conduct complained of are permanently enjoined.

## RELIEF SOUGHT

WHEREFORE, plaintiffs demand Judgment on each of the Counterclaims a permanent

injunction enjoining the Plaintiffs from interfering with Mosdos' civil rights; Declaratory

judgment declaring that the Mosdos' use of its Property as a Yeshiva campus with famiy

residential housing is permitted, subject to legitimate health and safety review.

October 16, 2007

Respectfully submitted,

Joseph J. Haspel
*Attorney for Defendant Mosdos Chofetz Chaim Inc.*
40 Matthews Street
Suite 201
Goshen, New York 10924
845-294-8950

**Exhibit F**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE VILLAGE OF MONTEBELLO, THE VILLAGE OF POMONA, THE VILLAGE OF WESLEY HILLS, MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | : : : : |
| Petitioners/Plaintiffs, | : |
| - against - | : |
| THE TOWN OF RAMAPO, THE TOWN BOARD OF THE TOWN OF RAMAPO, THE PLANNING BOARD OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ CHAIM OF RADIN, SCENIC DEVELOPMENT, LLC, and THE BOARD OF APPEALS OF THE TOWN OF RAMAPO, and MOSDOS CHOFETZ CHAIM, INC., | : : : : : |
| Respondents/Defendants. | : |

07-CV-9278 (KMK)

**ECF CASE**

**ANSWER TO
COUNTERCLAIMS**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Petitioners/Plaintiffs the Villages of Chestnut Ridge, Montebello, Pomona, and Wesley Hills (collectively, the "Villages"), and Milton B. Shapiro and Dr. Sonya Shapiro (the "Shapiros," collectively with the Villages, the "Petitioners"), by their attorneys, Zarin & Steinmetz, respectfully allege, as follows:

1.     The allegations contained within Paragraph 310 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 310 of the Respondent/Defendant Mosdos Chofetz Chaim, Inc.'s ("Mosdos") Answer with Counterclaims, dated October 16, 2007 (the "Answer" or "Counterclaims").

2.     The allegations contained within Paragraph 311 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 311 of the Counterclaims.

3.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 312 of the Counterclaims.

4.     Petitioners deny the allegations contained within Paragraph 313 of the Counterclaims.

5.     Petitioners deny the allegations contained within Paragraph 314 of the Counterclaims.

6.     Petitioners deny the allegations contained within Paragraph 315 of the Counterclaims.

7.     Petitioners deny the allegations contained within Paragraph 316 of the Counterclaims.

8.     Petitioners deny the allegations contained within the first sentence of Paragraph 317 of the Counterclaims. The allegations contained within the remainder of Paragraph 317 constitute legal conclusions to which no response is required.  To the extent that said allegations do not constitute legal conclusions, however, Petitioners deny the allegations contained within Paragraph 317 of the Counterclaims.

9.     Petitioners deny the allegations contained within Paragraph 318 of the Counterclaims.

10.     The allegations contained within Paragraph 319 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute

a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 319 of the Counterclaims.

11.     The allegations contained within Paragraph 320 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 320 of the Counterclaims.

12.     The allegations contained within Paragraph 321 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 321 of the Counterclaims.

13.     The allegations contained within Paragraph 322 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 322 of the Counterclaims.

14.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 323 of the Counterclaims.

15.     Petitioners deny the allegations contained within Paragraph 324 of the Counterclaims.

16.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 325 of the Counterclaims.

17.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 326 of the Counterclaims.

18.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 327 of the Counterclaims.

19.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 328 of the Counterclaims.

20.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 329 of the Counterclaims.

21.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 330 of the Counterclaims.

22.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 331 of the Counterclaims.

23.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 332 of the Counterclaims.

24.     Petitioners deny the allegations contained within the first sentence of Paragraph 333 of the Counterclaims, except admit that the Nike Site is adjacent to the Villages of New Hempstead and Wesley Hills.  Petitioners deny the allegations contained within the second sentence of Paragraph 333 of the Counterclaims, except admit that the Nike Site is located within the unincorporated Town of Ramapo, and respectfully refer the Court to the Stipulation referred to therein for its terms and contents.

25.     Petitioners deny the allegations contained within Paragraph 334 of the Counterclaims.

26.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 335 of the Counterclaims.

27.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 336 of the Counterclaims.

28.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within the first sentence of Paragraph 337 of the Counterclaims.  Petitioners deny the allegations contained within the second sentence of Paragraph 337 of the Counterclaims.

29.     Petitioners deny the allegations contained within Paragraph 338 of the Counterclaims.

30.     Petitioners deny the allegations contained within Paragraph 339 of the Counterclaims, and respectfully refer the Court to the official records of each of the Villages for their respective dates of incorporation.

31.     Petitioners deny the allegations contained within Paragraph 340 of the Counterclaims.

32.     Petitioners deny the allegations contained within Paragraph 341 of the Counterclaims.

33.     Petitioners deny the allegations contained within Paragraph 342 of the Counterclaims.

34.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 343 of the Counterclaims.

35.     Petitioners deny the allegations contained within Paragraph 344 of the Counterclaims.

36.     Petitioners deny the allegations contained within Paragraph 345 of the Counterclaims, except admit that Supervisor Christopher St. Lawrence was initially elected in 2000.

37.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 346 of the Counterclaims.

38.     Petitioners deny the allegations contained within Paragraph 347 of the Counterclaims, and respectfully refer the Court to the Master Plan for its contents.

39.     Petitioners deny the allegations contained within Paragraph 348 of the Counterclaims.

40.     Petitioners deny the allegations contained within Paragraph 349 of the Counterclaims.

41.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 350 of the Counterclaims.

42.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 351 of the Counterclaims.

43.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 352 of the Counterclaims.

44.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 353 of the Counterclaims.

45.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 354 of the Counterclaims.

46.     Petitioners deny the allegations contained within the first sentence of Paragraph 355 of the Counterclaims.  Petitioners are without knowledge or information sufficient

to form a belief as to the truth of the allegations contained within the remainder of Paragraph 355 of the Counterclaims.

47.     Petitioners deny the allegations contained within Paragraph 356 of the Counterclaims, and respectfully refer the Court the GEIS for its contents.

48.     Petitioners deny the allegations contained within Paragraph 357 of the Counterclaims.

49.     Petitioners deny the allegations contained within Paragraph 358 of the Counterclaims.

50.     Petitioners deny the allegations contained within Paragraph 359 of the Counterclaims.

51.     Petitioners deny the allegations contained within Paragraph 360 of the Counterclaims, and respectfully refer the Court to Resolution No. 2004-358 and Local Law #9-2004 for its contents.

52.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 361 of the Counterclaims.

53.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 362 of the Counterclaims.

54.     Petitioners deny the allegations contained within Paragraph 363 of the Counterclaims.

55.     Petitioners deny the allegations contained within Paragraph 364 of the Counterclaims.

56.     Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 365 of the Counterclaims.

57.    Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 366 of the Counterclaims.

58.    Petitioners are without knowledge or information sufficient to form a belief as to the truth of the allegations contained within Paragraph 367 of the Counterclaims.

59.    Defendants incorporate by reference, as if fully set forth herein, the responses to Paragraphs 1 through 58 in response to Paragraph 368 of the Counterclaims.

60.    The allegations contained within Paragraph 369 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 369 of the Counterclaims.

61.    The allegations contained within Paragraph 370 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 370 of the Counterclaims.

62.    The allegations contained within Paragraph 371 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 371 of the Counterclaims.

63.    Defendants incorporate by reference, as if fully set forth herein, the responses to Paragraphs 1 through 62 in response to Paragraph 372 of the Counterclaims.

64.    The allegations contained within Paragraph 373 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute

a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 373 of the Counterclaims.

65.     The allegations contained within Paragraph 374 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 374 of the Counterclaims.

66.     The allegations contained within Paragraph 375 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 375 of the Counterclaims.

67.     Defendants incorporate by reference, as if fully set forth herein, the responses to Paragraphs 1 through 66 in response to Paragraph 376 of the Counterclaims.

68.     The allegations contained within Paragraph 377 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 377 of the Counterclaims.

69.     The allegations contained within Paragraph 378 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 378 of the Counterclaims.

70.     The allegations contained within Paragraph 379 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute

a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 379 of the Counterclaims.

71.     Defendants incorporate by reference, as if fully set forth herein, the responses to Paragraphs 1 through 70 in response to Paragraph 380 of the Counterclaims.

72.     The allegations contained within Paragraph 381 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 381 of the Counterclaims.

73.     The allegations contained within Paragraph 382 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 382 of the Counterclaims.

74.     The allegations contained within Paragraph 383 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 383 of the Counterclaims.

75.     Defendants incorporate by reference, as if fully set forth herein, the responses to Paragraphs 1 through 74 in response to Paragraph 384 of the Counterclaims.

76.     The allegations contained within Paragraph 385 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 385 of the Counterclaims.

77.     The allegations contained within Paragraph 386 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 386 of the Counterclaims.

78.     The allegations contained within Paragraph 387 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 387 of the Counterclaims.

79.     The allegations contained within Paragraph 388 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 388 of the Counterclaims.

80.     The allegations contained within Paragraph 389 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 389 of the Counterclaims.

81.     Defendants incorporate by reference, as if fully set forth herein, the responses to Paragraphs 1 through 80 in response to Paragraph 390 of the Counterclaims.

82.     The allegations contained within Paragraph 391 constitute a legal conclusion to which no response is required.  To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 391 of the Counterclaims.

83. The allegations contained within Paragraph 392 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 392 of the Counterclaims.

84. The allegations contained within Paragraph 393 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 393 of the Counterclaims.

85. The allegations contained within Paragraph 394 constitute a legal conclusion to which no response is required. To the extent that said allegations do not constitute a legal conclusion, however, Petitioners deny the allegations contained within Paragraph 394 of the Counterclaims.

**FACTS AS TO PETITIONERS' AFFIRMATIVE DEFENSES**

86. Petitioners repeat and reallege, and incorporate by reference herein, the facts and allegations set forth in the Petitioners' Amended Petition/Complaint, dated December 23, 2004, and filed initially in the New York State Supreme Court, Westchester County, Environmental Claims Part (the "Complaint"). (A copy of the Complaint is annexed hereto as Exhibit "A").

**The Matter Is Previously Removed To This Court
And Subsequently Remanded Back To State Court**

87. On November 9, 2004, within 30 days of the filing of the subject Complaint, Respondent/Defendant Yeshiva Chofetz Chaim of Radin ("Yeshiva") removed the instant matter to the United States District Court for the Southern District of New York (the

"SDNY"). See <u>Vill. of Chestnut Ridge, et al. v. Town of Ramapo, et al.</u>, 04 CV 8865 (S.D.N.Y.).

88.     A status conference was held on December 2, 2004.

89.     Thereafter, Yeshiva withdrew its Notice of Removal, and consented to the remand back to the Westchester County Supreme Court.

90.     Thus, by Order dated December 10, 2004, and entered on December 13, 2004, this Court "remanded [the matter] in its entirety to the New York Supreme Court, Westchester County," and closed the case in Federal Court. See <u>Vill. of Chestnut Ridge</u>, 04 CV 8865, slip op. at 2 (S.D.N.Y. Dec. 10, 2004) (SCR) (the "Remand Order"). (A copy of the Remand Order is annexed hereto as Exhibit "B").

91.     Yeshiva further consented not to seek any further remand in this matter. (Remand Order at 2).

**Petitioners Obtain Injunctive Relief**

92.     As early as January 6, 2005, all Petitioners/Plaintiffs moved for a Temporary Restraining Order ("TRO") and Preliminary Injunction, seeking to, *inter alia*, enjoin the Town from implementing the ASHL, and enjoining Yeshiva from commencing any construction activities in connection with the ASHL.

93.     The lower Court granted the TRO on January 18, 2005.

94.     On June 13, 2005, Judge Francis A. Nicolai, presiding justice of the Environmental Claims Part of the Westchester County Supreme Court, granted a preliminary injunction to former Petitioners Rosenstein and Moskowitz (the "2005 Injunction"). (<u>Vill. of Chestnut Ridge, et al. v. Town of Ramapo, et al.</u>, Index No. 16876/04, slip op. at 15 (Sup. Ct.

Westchester Cty. June 13, 2005) (Nicolai, J.) ("Ramapo II Decision"), annexed hereto as Exhibit "C").

95.    The Villages, however, were dismissed for lack of capacity and standing, and the Shapiros were dismissed for lack of standing.

96.    The Ramapo II Decision held that Petitioners' claims had a likelihood of success on the merits warranting injunctive relief "because, inter alia, it is not disputed that the Nike Site application received a negative declaration under SEQRA, although it was determined to be a Type I action." (June 2005 Decision at 15).

97.    It also held that Petitioners successfully supported its "contention that the proposed development of the Nike Site would be incongruous with the nearby neighborhoods." (Id. at 12).

98.    The State Supreme Court also found that there would be irreparable harm if the 2005 Injunction had not been granted as "the construction planned for the Nike site will likely proceed.  No money damages will be adequate, if the character of the neighborhood is severely damaged." (Id.).

99.    The Court further declared that the equities favored granting the preliminary injunction because "if the status quo is not maintained pending determination of this case on the merits, the changes caused by construction will be irreversible." (Id. at 16).

100.    The lower Court  conditioned the injunction on Plaintiffs/Petitioners Rosenstein and Moskowitz posting a $50,000.00 bond within 20 days after service of the Order with Notice of Entry.

101.    The lower Court provided no explanation as to why such a large undertaking was required, especially in light of the environmental and public interests relevant to this lawsuit.

102.    Ultimately, Rosenstein and Moskowitz were financially unable to secure requisite bond. The surety companies would not permit utilizing their home equity as collateral, but required the amount in cash, which the individual Petitioners could not afford.

103.    They made applications to stay the posting of the bond or reduce the amount to both the lower Court and to this Court, to no avail.

104.    Rosenstein and Moskowitz subsequently succumbed to the intimidation of the Town and private applicant-developers, and withdrew from the case.

105.    Despite the public environmental purpose at stake and clear, blatant environmental violations of the Town, the preliminary injunction temporarily lapsed.

**Petitioners Successfully Appeal The *Ramapo II* Decision**

106.    Petitioners appealed their dismissal from the case and diligently endeavored to preserve the status quo pending their appeal.

107.    On September 9, 2005, Petitioners moved by Order to Show Cause to Second Department to stay posting of bond pending appeal.

108.    On September 26, 2005, Petitioners moved by Order to Show Cause to the lower Court to stay posting of bond pending determination of their September 9th Motion to the Second Department.

109.    On October 14, 2005, the Second Department denied Petitioners' Motion, but granted Petitioners leave to appeal the lower Court Order.

110.     The lower Court granted the Town's Motion to Renew on December 9, 2005, but adheres to the original decision, and refuses to modify the Preliminary Injunction.

111.     Significantly, on March 9, 2006 – i.e., three (3) months after the purported transfer of the Nike Site to Mosdos, *Yeshiva* cross-moved for leave to appeal the December 9, 2005 Decision.

112.     Petitioners perfected their Appeal June 5, 2006.

113.     On June 27, 2006, Petitioners moved the Second Department for Calendar Preference and Injunctive Relief.

114.     The Second Department denied Petitioners motion for an injunction on August 22, 2006.

115.     Oral argument was held before the Second Department on January 9, 2007.

116.     On August 14, 2007, the Appellate Division, Second Department, in a seminal 20-page Decision, issued an Opinion and Order ("Second Department Order"), *inter alia*, reinstating all but two Causes of Action in this matter, and remitted it back to the lower Court for a determination on the merits.  See <u>Vill. of Chestnut Ridge v. Town of Ramapo</u>, 45 A.D.3d 74, 841 N.Y.S.2d 321 (2d Dep't 2007).  (A copy of the Second Department Order is annexed hereto as Exhibit "D").

117.     Of significance, the Second Department held that: (i) all of the Villages have standing and capacity to challenge the Adult Student Housing Law (the "ASHL") under the New York State Environmental Quality Review Act ("SEQRA") and General Municipal Law; (ii) the Village of Wesley Hills has standing and capacity to challenge the SEQRA approvals obtained by Yeshiva and/or Mosdos on the Nike Site; and (iii) the Shapiros have standing to

challenge the ASHL under SEQRA, Municipal Home Rule Law, and General Municipal Law, as well as on the grounds that the ASHL constitutes impermissible spot zoning, and the Town Board's actions were *ultra vires*. See id. at 340-41.

118.    In reinstating the above-referenced claims, the Second Department acknowledged specifically Petitioners' environmental concerns with regard to the potential massive density increase resulting from the implementation of the ASHL, as well as the potential significant impacts on water, sewage capacity and community character.   Vill. of Chestnut Ridge, 841 N.Y.S.2d at 338.

119.    All during this time, Yeshiva or Mosdos, with full knowledge of the Court's earlier rulings, the Villages' appeals, and Petitioners' attempts to reinstate their standing and injunctive relief, proceeded with full-scale, accelerated construction at the site completely at its own risk.

**Petitioners Again Move For Injunctive Relief**

120.    Once the action was reinstated, on September 5, 2007, Petitioners again sought injunctive relief from the State Supreme Court.

121.    On September 11, 2007, following notice and an opportunity for all parties to submit papers, the Supreme Court issued a temporary restraining order, enjoining, *inter alia*, the implementation by the Town of Ramapo Municipal Respondent/Defendants (collectively, the "Town") of the ASHL, the issuance of Certificates of Occupancy for the Nike Site (which is now almost entirely built), and occupation of the Nike Site (the "September 11[th] TRO").  (A copy of the September 11th TRO is annexed hereto as Exhibit "E").

122.    This TRO is presently still in effect.[1]

123.    On or about September 17, 2007, Yeshiva moved in the Appellate Division, Second Department to stay enforcement of the September 11th TRO, claiming that it "grants relief regarding real property owned by an entity who is not a party to this proceeding," and seeking leave to appeal on the same basis.

124.    Yeshiva claimed that a necessary party was lacking because it had purportedly transferred the Nike Site to a "different" entity – Mosdos – more than a year after the underlying litigation commenced.

125.    It is no coincidence that despite repeated motion practice and participation in litigation, it was not until the Second Department Decision and the reinstatement of the TRO that suddenly the subject conveyance was disclosed to the Court and Petitioners.  (See Sept. 5, 2007 Transcript (the "Sept. 5 Tr.") at 19-22, 32-33.  Relevant portions of the Sept. 5 Tr. are annexed to the Notice of Motion as Exhibit "F").

126.    On September 25, 2007, the Second Department denied Yeshiva's Motion. (A copy of the September 25, 2007 Second Department Decision & Order on Motion is annexed hereto as Exhibit "G").

**Mosdos's Acquisition Of The Nike Site**

127.    Based upon independent research, it was discerned that prior to the commencement of the instant action, it appears that due to alleged tax issues between the Town

---

[1]    Although an *ex parte* TRO generally expires within ten days, in this case, since there was notice and an opportunity for all parties to be heard, the TRO is, effectively, a preliminary injunction that does not automatically expire, and is treated as such.  See 11A Wright & Miller, Fed. Prac. & Proc. § 2951, citing Schiavone Constr. Co. v. N.Y. City Transit Auth., 593 F. Supp. 1257, 1261 n.10 (S.D.N.Y. 1984) (application for TRO treated as preliminary injunction where opposing parties had notice and opportunity to be heard); see also Lewis v. S. S. Baune, 534 F.2d 1115, 1121 (5th Cir. 1976) ("We note that the TRO here was issued after notice and a brief hearing, and was in effect for approximately one year. It was in substance and effect a preliminary injunction and we therefore view it as such.").

and Yeshiva (which are unrelated to the instant action), Yeshiva sought relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), by Petition dated October 27, 2003.  See In re Yeshiva Chofetz Chaim Kiryas Radin, Inc., Case No. 03-16729 (Bankr. S.D.N.Y.) (RDD).

128.    Yeshiva ultimately submitted to the Bankruptcy Court a Second Amended Plan of Reorganization, as Modified (Nov. 23, 2005) (the "Reorganization Plan").

129.    The Reorganization Plan, which was confirmed by a Bankruptcy Court Order, dated December 13, 2005, required that the Nike Site be transferred to Yeshiva Chofetz Chaim, Inc., an "*affiliate of [Yeshiva]*."  (Reorganization Plan at 10 (emphasis added)).

130.    By Deed dated December 13, 2005, the Nike Site was so transferred.  (A copy of the December 13, 2005 Deed is annexed hereto as Exhibit "H").

131.    The very next day, by Deed dated December 14, 2005, the Nike Site was transferred to Mosdos.  (A copy of the December 14, 2005 Deed is annexed hereto as Exhibit "I"; see also Mosdos's Answer, ¶ 325 ("Mosdos is currently the owner of . . . the Nike Site")).

132.    Yeshiva did not inform Petitioners or the State Court that it no longer held an interest in the Nike Site until almost two years later, as it proceeded to bring multiple motions, and litigate in the State Courts.

**Mosdos Is Added As A Respondent/Defendant To The Action**

133.    Once Yeshiva and Mosdos revealed that Mosdos was the actual owner of the Nike Site, in an attempt to short-circuit the gamesmanship by Yeshiva and Mosdos, Judge Nicolai suggested that for procedural purposes, Petitioners serve an Amended Petition/Complaint, *inter alia*, adding Mosdos as a Respondent/Defendant.

134.    Petitioners served Mosdos on September 26, 2007 with an Amended Summons and Notice of Amended Petition/Complaint, together with the Complaint.  (See Exhibit "J").

135.    No other amendments were made to the Complaint.

**Mosdos Files A Notice Of Removal And Petitioners Move To Remand**

136.    After three years of extensive litigation in the State Courts by Yeshiva, and two years after Mosdos acquired the Nike Site, on October 17, 2007, Mosdos filed the subject Notice of Removal.

137.    Mosdos also filed its Answer with Counterclaims, inserting meritless federal claims in a blatant attempt at forum shopping.

138.    On November 2, 2007, at Petitioners' request, the Federal Court held a Pre-Motion Conference in connection with Petitioners' proposed Motion to Remand the action to State Court pursuant to 28 U.S.C.A. Section 1447(c).

139.    On November 30, 2007, pursuant to a Motion Scheduling Order, dated November 2, 2007, Petitioners served their Motion to Remand, which Motion will be fully submitted on December 28, 2007.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

140.    Petitioners repeat and reallege Paragraphs 1 through 139 as if fully stated herein.

141.    Mosdos's Counterclaims fail to state a claim upon which relief can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

142.    Petitioners repeat and reallege Paragraphs 1 through 141 as if fully stated herein.

143.    Mosdos's Counterclaims are barred by the doctrine of documentary evidence.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

144.    Petitioners repeat and reallege Paragraphs 1 through 143 as if fully stated herein.

145.    Mosdos's Counterclaims are barred by the doctrine of laches.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

146.    Petitioners repeat and reallege Paragraphs 1 through 145 as if fully stated herein.

147.    Mosdos's Counterclaims are barred by the doctrine of estoppel.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

148.    Petitioners repeat and reallege Paragraphs 1 through 147 as if fully stated herein.

149.    Mosdos's Counterclaims are barred pursuant to the doctrine of unclean hands.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

150.    Petitioners repeat and reallege Paragraphs 1 through 149 as if fully stated herein.

151.   Mosdos's Counterclaims are barred by the applicable Statute of Limitations.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

152.   Petitioners repeat and reallege Paragraphs 1 through 151 as if fully stated herein.

153.   Mosdos's Counterclaims are barred pursuant to the doctrine of waiver.

### AS AND FOR A EIGHTH AFFIRMATIVE DEFENSE

154.   Petitioners repeat and reallege Paragraphs 1 through 153 as if fully stated herein.

155.   This Court lacks jurisdiction over the subject matter of Mosdos's Counterclaims.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

156.   Petitioners repeat and reallege Paragraphs 1 through 155 as if fully stated herein.

157.   Mosdos improperly removed this action to Federal Court.

**[intentionally left blank]**

**WHEREFORE**, Petitioners respectfully request: (i) that Mosdos's Counterclaims be dismissed with prejudice, with costs assessed against Mosdos; and (ii) that the Court grant such other and further relief as the Court deems necessary and proper.

Dated: December 28, 2007
     White Plains, New York

Respectfully submitted,

ZARIN & STEINMETZ

By: _____
Michael D. Zarin (MDZ-6692)
Daniel M. Richmond (DMR-2652)
Jody T. Cross (JTC-1433)
*Attorneys for Petitioners*
81 Main Street, Suite 415
White Plains, New York 10601
(914) 682-7800

23

Case 7:08-cv-00156-KMK Document 104-3 Filed 05/09/14 Page 25 of 90
Case 15-1195, Document 69, 07/29/2015, 1564752, Page216 of 310

506

**Exhibit A**

Exhibit B

Case 7:08-cv-00156-KMK Document 104-3 Filed 05/09/14 Page 29 of 90
Case 1:05-cv-01105-TJM-DRH Document 33 Filed 05/2/2005 Page 219 of 310

509

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
THE VILLAGE OF CHESTNUT RIDGE, THE    :
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS, :
JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,  :

      Petitioners/Plaintiffs, :

  - against -      :

THE TOWN OF RAMAPO, THE TOWN :
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF : \
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC DEVELOPMENT, LLC and :
ROSE OCKO FOUNDATION,
          :
     Respondents/Defendants.
          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

04 CIV 8865 (SCR)

ORDER OF REMAND

WHEREAS, pursuant to 28 U.S.C. § 1441, this matter was duly removed '..e

United States District Court, Southern District of New York, on November 9, 2004, from the

New York Supreme Court, Westchester County, by Respondent/Defendant Yeshiva Chofetz

Chaim of Radin; and

  WHEREAS, on December 2, 2004, the parties appeared before this Court for a

status conference; and

  WHEREAS, at the conference Respondent/Defendant Yeshiva Chofetz Chaim of

Radin, through its counsel, withdrew its petition of removal and stated its consent to have this

matter remanded to the New York Supreme Court, Westchester County in view of events that

transpired after removal, and no other party objected to said remand; and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ___12___
DATE FILED: _____

WHEREAS, Respondent/Defendant Yeshiva Chofetz Chaim of Radin further consented that, in the event that Petitioners/Plaintiffs amend the Verified Petition and Complaint, said Respondent/Defendant will not seek removal of this action or any part thereof to any United States District Court, provided, that no new Respondents/Defendants are added to this action; and

WHEREAS, counsel for Respondent/Defendant Yeshiva Chofetz Chaim of Radin will accept service of process from counsel for Petitioners/Plaintiffs;

NOW THEREFORE, for good cause having been shown and upon consideration of the foregoing, it is hereby

ORDERED, pursuant to 28 U.S.C. § 1441(c) and 28 U.S.C. § 1447(c), that this matter is hereby remanded in its entirety to the New York Supreme Court, Westchester County, and the Clerk is hereby directed to mail a certified copy of this Order of Remand to the Clerk of the New York Supreme Court, Westchester County.

*Case closed.*

Dated: December 10, 2004

_____
Honorable Stephen C. Robinson
United States District Judge

2

Exhibit C

directed that the award for past pain and suffering be increased from the sum of $225,000 to the sum of $375,000.

ORDERED that on the court's own motion, the defendants' notice of cross appeal from so much of the order as, in effect, sua sponte directed that the award for past pain and suffering be increased from the sum of $225,000 to the sum of $375,000 is treated as an application for leave to cross appeal from that portion of the order, and leave to cross appeal is granted (*see* CPLR 5701[c]); and it is further,

ORDERED that the order is modified, on the facts and in the exercise of discretion, (1) by deleting the provision thereof, in effect, sua sponte directing that the award for past pain and suffering be increased from the sum of $225,000 to the sum of $375,000 and (2) by deleting the provision thereof granting a new trial with respect to damages for future pain and suffering unless the plaintiff stipulates to reduce the award for future pain and suffering from the sum of $700,000 to the sum of $250,000, and substituting therefor a provision granting a new trial on the issue of damages for future pain and suffering unless the plaintiff stipulates to reduce the verdict as to those damages from the sum of $700,000 to the sum of $500,000; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and a new trial on the issue of damages as to future pain and suffering is granted unless within 30 days after service of a copy of this decision and order, the plaintiff serves and files in the office of the Clerk of the Supreme Court, Kings County, a written stipulation consenting to reduce the verdict as to damages for future pain and suffering to the sum of $500,000.

[1] "To grant a motion pursuant to CPLR 4404(a) to set aside a verdict and for judgment as a matter of law, the trial court must conclude that there is 'simply no valid line of reasoning and permissible inferences which could possibly lead rational [people] to the conclusion reached by the jury on the basis of the evidence at trial'" (*Roman v. I. Gold Corp.*, 35 A.D.3d 833, 834, 826 N.Y.S.2d 902, quoting *Cohen v. Hallmark Cards*, 45 N.Y.2d 493, 499, 410 N.Y.S.2d 282, 382 N.E.2d 1145).

[2, 3] The Supreme Court properly denied that branch of the defendants' motion pursuant to CPLR 4404(a) which was to set aside the jury verdict and for judgment as a matter of law on the ground that the plaintiff failed to establish a prima facie case. Based on the testimony presented at trial, including the testimony of the defendant Samuel Breger, the jury reasonably could have concluded that the defendants had actual knowledge of a recurrent, dangerous condition on the stairs where the plaintiff fell and, therefore, could be charged with constructive notice of each specific reoccurrence of the dangerous condition (*see Erikson v. J.I.B. Realty Corp.*, 12 A.D.3d 344, 345, 783 N.Y.S.2d 661; *McLaughlan v. Waldbaums, Inc.*, 237 A.D.2d 335, 336, 654 N.Y.S.2d 406; *Chin v. Harp Mktg.*, 232 A.D.2d 601, 602, 648 N.Y.S.2d 697). Such knowledge "is qualitatively different from a mere 'general awareness' that a dangerous condition may be present" (*McLaughlan v. Waldbaums, Inc., supra* at 336, 654 N.Y.S.2d 406, quoting *Chin v. Harp Mktg., supra* at 602, 648 N.Y.S.2d 697).

[4] The Supreme Court improvidently exercised its discretion by, in effect, sua sponte directing that the jury's award for past pain and suffering in the sum of $225,000 be increased to the sum of $375,000. The Supreme Court also improvidently exercised its discretion in granting a new trial on the issue of damages unless the plaintiff stipulated to re-

ducing the amount awarded for future pain and suffering to the sum of $250,000. We therefore modify the order appealed from to grant a new trial only on the issue of damages for future pain and suffering unless the plaintiff consents to reduce the award for future pain and suffering to the sum of $500,000 (*see* CPLR 5501[c]; *cf. Lifshits v. Variety Poly Bags*, 5 A.D.3d 566, 773 N.Y.S.2d 304).

The defendants' remaining contentions are without merit, are unpreserved for appellate review, or do not warrant reversal.



In the Matter of VILLAGE OF CHEST-
NUT RIDGE, et al., appellants, et al.,
petitioners/plaintiffs,

v.

TOWN OF RAMAPO, et
al., respondents.

Supreme Court, Appellate Division,
Second Department.

Aug. 14, 2007.

**Background:** Villages brought hybrid Article 78 proceeding to challenge local law enacted by municipality which permitted adult student living facilities in certain residential zones adjacent to villages. The Supreme Court, Westchester County, Francis Nicolai, J., dismissed petition and complaint. Villages appealed.

**Holdings:** The Supreme Court, Appellate Division, Spolzino, J.P., held that:

(1) Town Law that insulated zoning changes from legal challenge by neighboring villages did not limit capacity of villages to sue that they enjoyed by reason of Village Law that authorized municipalities to sue and be sued;

(2) bar to judicial review of zoning changes by adjoining villages established by Town Law did not apply to challenges to change in zoning regulations under New York State Environmental Quality Review Act (SEQRA);

(3) persons who were residents of municipality and owners of property in close proximity to area subject to zoning change had standing to assert cause of action complaining of procedural infirmities in municipality's adoption of adult student housing law under Municipal Home Rule Law;

(4) persons who owned and resided upon property in close proximity to area subject to zoning change had standing to raise claims alleging that adult student housing law adopted by municipality was inconsistent with municipality's comprehensive plan and thus constituted impermissible spot zoning and that adoption of adult student housing law was illegal under New York law in that it was not rationally related to health, safety, and welfare of community;

(5) adjoining villages did not have standing to assert claims against municipality that enacted adult student housing law alleging that such law constituted impermissible spot zoning, there were procedural infirmities in adoption of such law, and that law was not rationally related to health, safety, and welfare of community;

(6) adjoining landowners and adjoining villages had standing to assert that enacting municipality failed to comply with procedural requirements of General Municipal Law with respect to adoption of adult student housing law and revised comprehensive zoning law;

(7) adjoining villages did not have standing to raise claims alleging discrimination in violation of equal protection or due process; and

(8) married couple did not have standing to raise claims alleging discrimination in violation of equal protection or due process.

Affirmed as modified and remitted.

**1. Parties ⚖1**

Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing.

**2. Parties ⚖1**

As a general matter, capacity to sue concerns a litigant's power to appear and bring its grievance before the court.

**3. Associations ⚖20(1)**
   **Corporations ⚖499**
   **Parties ⚖1, 8**

Capacity to sue can be derived from an express statutory grant, as in the case of a business corporation or unincorporated association, or can be inferred, even in the absence of statutory authority, where the power to sue and be sued is a necessary incident of the party's responsibilities.

**4. Parties ⚖1**
   **Pretrial Procedure ⚖557**

Where there is no statutory authority to sue, and such authority is not necessarily implied from the entity's other powers, there is no capacity, and a petition or complaint must be dismissed.

**5. Municipal Corporations ⚖1016**

Being artificial creatures of statute, governmental entities have neither an inherent nor a common-law right to sue; rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate.

**6. Municipal Corporations ⚖1016**

The statute that authorizes villages "to sue and be sued, to complain and defend and to institute, prosecute, maintain, defend and intervene in, any action or proceeding in any court" constitutes an express grant of legislative authority empowering villages to sue. McKinney's Village Law § 1–102(5).

**7. Municipal Corporations ⚖1016**

The principle that a municipality may not sue the state does not bar an action by one creature of the state against another.

**8. Zoning and Planning ⚖571**

Town Law that insulated zoning changes from legal challenges by neighboring municipalities did not limit capacity of municipalities to sue that they enjoyed by reason of Village Law that authorized municipalities "to sue and be sued, to complain and defend and to institute, prosecute, maintain, defend and intervene in, any action or proceeding in any court," although municipalities' causes of action were not predicated on express grant of standing and Town Law provision was of concern in addressing issue of standing of municipalities. McKinney's Const. Art. 9, § 1 et seq.; McKinney's Municipal Home Rule Law § 20; McKinney's Town Law § 264(4).

**9. Action ⚖13**

A general power to sue necessarily yields to a clear legislative intent negating review.

**10. Zoning and Planning ⚖571**

Zoning changes made under the Town Law are insulated from legal challenges by neighboring municipalities. McKinney's Town Law § 264(4).

**11. Declaratory Judgment ⚖129**

Village Law prohibits a town from commencing a declaratory judgment action to challenge, as unconstitutional, a village zoning ordinance and amendment. McKinney's Village Law § 7–706(3).

**12. Zoning and Planning ⚖151, 191**

A town has the authority to adopt zoning changes by local law, without regard to the procedures required by the Town Law. McKinney's Municipal Home Rule Law § 10(1)(i).

**13. Environmental Law ⚖654**

Bar to judicial review of zoning changes by adjoining municipalities established by Town Law did not apply to challenges to change in zoning regulations under New York State Environmental Quality Review Act (SEQRA), and thus right of municipalities to challenge acts of its neighbor had to be determined on basis of same rules of standing that applied to litigants generally, since SEQRA contemplated that adjoining municipalities that had concern about an action would have same right to judicial review as any other interested party. McKinney's ECL § 8–0105(1), (4)(i); McKinney's Town Law § 264(4); 6 NYCRR 617.1(c), 617.2(s, t).

**14. Administrative Law and Procedure ⚖666, 668**

Generally, standing to challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute.

**15. Towns ⚖15**

When a town exercises the police power that has been granted to it, it must do so in a manner that provides a reasonable opportunity for the presentation to, and consideration by, the town's board or council of complete data and arguments for and against the proposed local law. McKinney's Municipal Home Rule Law § 20.

**16. Zoning and Planning ⚖571**

Persons who were residents of municipality and owners of property in close proximity to area subject to zoning change were among persons intended to be protected by Municipal Home Rule Law provisions and were harmed by municipality's alleged failure to comply with them and thus had standing to assert cause of action complaining of procedural infirmities in municipality's adoption of adult student housing law under Municipal Home Rule Law. McKinney's Municipal Home Rule Law § 20.

**17. Zoning and Planning ⚖571**

Persons who owned and resided upon property in close proximity to area subject to zoning change were affected by mutual benefits and restrictions that were enforced by comprehensive zoning plan requirement and would have been harmed by municipality's failure to act consistently with its comprehensive plan and thus had standing to raise claims alleging that adult student housing law adopted by municipality was inconsistent with municipality's comprehensive plan and thus constituted impermissible spot zoning and that adoption of adult student housing law was illegal under New York law in that it was not rationally related to health, safety, and welfare of community.

**18. Zoning and Planning ⚖234**

Zoning laws operate to impose mutual benefits and restrictions on the parties within the community.

**19. Zoning and Planning ⚖571**

Adjoining municipalities exercised their own zoning authority with respect to property located within their geographical jurisdiction and thus did not have any interest in other municipality's compliance

Case 7:08-cv-00156-KMK   Document 104-85   Filed 05/09/14   Page 33 of 90
514

with either its comprehensive plan or procedural requirements of Municipal Home Rule Law and consequently did not have standing to assert claims against other municipality that enacted adult student housing law alleging that such law constituted impermissible spot zoning, there were procedural infirmities in adoption of such law, and that law was not rationally related to health, safety, and welfare of community. McKinney's Municipal Home Rule Law § 20.

**20. Zoning and Planning ⊕571**

Adjoining landowners who were affected by land use determination that was subject to review under General Municipal Law, and adjoining municipalities that necessarily had same interest in regional review that General Municipal Law required, had standing to assert that enacting municipality failed to comply with procedural requirements of that statute with respect to adoption of adult student housing law and revised comprehensive zoning law. McKinney's General Municipal Law § 239–m.

**21. Constitutional Law ⊕850, 909, 940**

Municipalities that adjoined other municipality that enacted adult student housing law did not have personal stake in outcome of litigation, and thus did not have standing to raise claims alleging discrimination in violation of equal protection or due process on basis of familial status based upon exclusion of unmarried adult student housing from new zoning district or that adult student housing law was intended to benefit particular religious community. U.S.C.A. Const.Amends. 1, 14; McKinney's Const. Art. 1, §§ 6, 11.

**22. Constitutional Law ⊕909, 940**

Married couple did not have personal interest in municipality's alleged discrimination against unmarried persons by enactment of adult student housing law in

alleged violation of equal protection or due process, and thus couple did not have standing to raise those claims; although couple may have had abstract interest in whether municipality was impermissibly discriminating in favor of particular religion, they did not allege any injury as result of allegedly unconstitutional conduct. U.S.C.A. Const.Amends. 1, 14; McKinney's Const. Art. 1, §§ 6, 11.

**23. Environmental Law ⊕656**

Property owners, to extent that they resided in close proximity to site selected for development, possessed requisite interest in dispute over whether planning board took hard look as required by New York State Environmental Quality Review Act (SEQRA) in connection with application for approval of site plan in accordance with recently enacted adult student housing law, and thus owners had standing to challenge adoption of adult student housing law as violative of SEQRA, since it was inferred from owners' proximity to site that they would suffer environmental injury. McKinney's ECL § 8–0101 et seq.

**24. Environmental Law ⊕651**

To establish standing under the New York State Environmental Quality Review Act (SEQRA), a petitioner must show that: (1) that he will suffer an environmental injury that is in some way different from that of the public at large, and (2) the alleged injury falls within the zone of interest sought to be protected or promoted by SEQRA. McKinney's ECL § 8–0101 et seq.

**25. Environmental Law ⊕654**

Municipality could not be presumed to have suffered environmental injury, in context of standing inquiry under New York State Environmental Quality Review Act (SEQRA), by reason of its proximity to

source of impacts. McKinney's ECL § 8–0101 et seq.

**26. Municipal Corporations ⊕1017**

In the context of the standing inquiry, a municipality is not permitted to assert the collective individual rights of its residents; municipality is limited to asserting rights that are its own.

**27. Municipal Corporations ⊕1017**

In the context of the standing inquiry, municipalities, like individual litigants, have interests to protect, including property interests.

**28. Environmental Law ⊕654**

A municipality that has been identified as an involved agency, i.e., an agency with some approval authority with respect to the project, has standing to make a claim under the New York State Environmental Quality Review Act (SEQRA). 6 NYCRR 617.2(s).

**29. Environmental Law ⊕654**

The unique nature of a municipality's environmental interests under the New York State Environmental Quality Review Act (SEQRA) requires that the inquiry into its environmental standing not be a mechanical one, particularly in light of the established preference that the issues presented by land use disputes be decided on the merits, rather than by a "heavy-handed" approach to standing. McKinney's ECL § 8–0101 et seq.

**30. Environmental Law ⊕654**

Adjoining municipalities that were concerned that development permitted by other municipality's adult student housing law would have substantial detrimental effect on roads in their community, their shared water supply and sewer systems, and character of their neighborhoods, possessed requisite interest in dispute over whether other municipality's planning

board took hard look as required by New York State Environmental Quality Review Act (SEQRA) in connection with application for approval of site plan in accordance with recently enacted adult student housing law, and thus had standing to challenge adoption of adult student housing law as violative of SEQRA. McKinney's ECL §§ 8–0105(6), 8–0109(2); 6 NYCRR 617.7(c)(1)(iv, v).

**31. Environmental Law ⊕588**

The impact that a project may have on existing community character, with or without a separate impact on the physical environment, is a relevant concern in an environmental analysis under the New York State Environmental Quality Review Act (SEQRA). McKinney's ECL §§ 8–0105(6), 8–0109(2); 6 NYCRR 617.7(c)(1)(iv, v).

**32. Zoning and Planning ⊕571**

Landowners and municipalities that adjoined land selected for development under recently enacted adult student housing law suffered actual and concrete harm, and thus became aggrieved for purpose of having standing to challenge proposed development, when adult student housing law was enacted, at which point planning board committed itself to definite course of future action, notwithstanding fact that no site plan for development of any particular site had been approved.

———

Zarin & Steinmetz, White Plains, N.Y. (Michael D. Zarin and Jody T. Cross of counsel), for appellants.

Holland & Knight, LLP, New York, N.Y. (Robert Bergen and Leah Griggs Pauly of counsel), for respondents Town of Ramapo, Town Board of Town of Ramapo, Planning Board of Town of Ramapo, and Board of Appeals of Town of Ramapo.

Feerick Lynch MacCartney, PLLC, South Nyack, N.Y. (Dennis E.A. Lynch of counsel), for respondent Yeshiva Chofetz Chaim of Radin.

Rice & Amon, Suffern, N.Y. (Terry Rice of counsel), for respondent Scenic Development, LLC.

ROBERT A. SPOLZINO, J.P., DAVID S. RITTER, JOSEPH COVELLO, and RUTH C. BALKIN, JJ.

SPOLZINO, J.P.

The appellants, four villages located within the Town of Ramapo and two residents of the Town, challenge the Town's enactment of a local law permitting adult student living facilities in certain residential zones adjacent to the four villages. The Town cross-moved to dismiss the combined amended petition/complaint (hereinafter the amended petition) in this hybrid article 78 proceeding and declaratory judgment action on the grounds that the four villages do not have legal capacity to sue and that the appellants collectively lack standing to raise the claims asserted here. We conclude that it is within the authority granted by the Legislature to the four villages to sue on the claims that are made here, that Town Law § 264(4) does not deprive the four villages of either capacity or standing to assert those claims, and that the appellants have standing to assert some, but not all, of the claims that they raise.

The events leading to this litigation began in the spring of 2004, when the Town Board of the Town of Ramapo (hereinafter the Town Board) proposed to enact a local law amending the Town's zoning code to permit, as a conditional use, the construction and operation of "adult student living facilities" in certain residential zones. The proposed law defined an "adult student living facility" as "[h]ousing designated to

be used only for adult married students, faculty, spouses and minor children while the adult student is pursuing full time post secondary education at an educational institution.". The term "adult student" was further defined to encompass "[f]ull time married students attending a post secondary level educational institution whether for general or religious instruction."

The combined petition/complaint (hereinafter the petition) alleged that the proposed law was intended to address a finding in the Town's recently adopted comprehensive plan that such facilities were necessary to accommodate the growing number of married students attending Orthodox Jewish religious educational institutions in the Town. By virtue of the lot size requirements articulated in the proposed local law, the proposed permitted use was anticipated to be applicable initially only to four sites in the unincorporated area of the Town. Each of those sites is located adjacent to or near the border of one or more of the four villages, and all of those sites are located within two miles of each other.

The Town forwarded the proposed local law to the County of Rockland for its review and recommendations, in accordance with the requirements of General Municipal Law § 239–m, and held a public hearing with respect to the proposed local law on June 2, 2004. Acting as lead agency pursuant to the New York State Environmental Quality Review Act (ECL article 8 [hereinafter SEQRA]), the Town Board thereafter classified the adoption of the proposed local law as a Type I action under SEQRA, presumptively requiring the preparation of an Environmental Impact Statement (hereinafter EIS). The Town Board nevertheless issued a negative declaration, finding that the enactment of the local law would not have a signifi-

cant adverse impact on the environment, and thus did not require the preparation of an EIS. Despite several negative comments from the Rockland County Department of Planning, the Town Board, on June 15, 2004, unanimously enacted a modified version of the proposed law as Local Law No. 9 (2004) of Town of Ramapo (hereinafter the adult student housing law).

In October 2004 the Village of Chestnut Ridge, the Village of Montebello, the Village of Pomona, and the Village of Wesley Hills, all of which are located within the Town of Ramapo, together with, among others, Milton B. Shapiro and Sonya Shapiro, who are residents of the Town, commenced this hybrid CPLR article 78 proceeding and action (hereinafter this proceeding) against the Town, the Town Board, the Planning Board of the Town of Ramapo (hereinafter the Planning Board), and the Board of Appeals of the Town of Ramapo (hereinafter the Board of Appeals), as well as against Scenic Development, LLC, a developer involved in the development of the four sites, and Yeshiva Chofetz Chaim of Radin (hereinafter Chofetz Chaim), an Orthodox Jewish organization that was anticipated to own and operate adult student housing for its members on the four sites (hereinafter collectively the defendants).

Subsequent to the adoption of the adult student housing law, but prior to the commencement of this proceeding, the Town initiated a process leading to the adoption of a comprehensive revision of its zoning law. The local law that was proposed to accomplish that revision included the provisions permitting adult student housing facilities that had been enacted by the adult student housing law, with minor changes. After conducting an environmental review that did not include additional study of the potential impacts resulting from the adoption of the adult student housing law, the Town Board enacted the revised comprehensive zoning law in November 2004. During the same period, Chofetz Chaim applied to the Planning Board for site plan approval to permit the construction of adult student housing on one of the four sites. The Planning Board issued a negative declaration with respect to the site plan, thus determining that the construction of the facility would not have a significant impact on the environment and, concomitantly, foregoing the preparation of an EIS in connection with that project. Shortly thereafter, with the permission of the Supreme Court, the appellants amended the petition so as to include a CPLR article 78 challenge to the Town Board's adoption of the comprehensive zoning law and the Planning Board's issuance of the negative declaration with respect to the Chofetz Chaim site plan application.

The amended petition asserts thirteen causes of action. The first four causes of action allege that, in adopting the adult student housing law, the Town failed, in four different respects, to comply with the requirements of SEQRA. The fifth and sixth causes of action make similar assertions with respect to the subsequent adoption of the revised comprehensive zoning law. The seventh cause of action alleges that the adult student housing law is inconsistent with the Town's comprehensive plan and thus constitutes impermissible spot zoning. The eighth and ninth causes of action complain of procedural infirmities in the adoption of the adult student housing law under the Municipal Home Rule Law and the General Municipal Law, respectively. The tenth and eleventh causes of action allege constitutional violations, specifically, discrimination on the basis of familial status based upon the exclusion of unmarried adult student housing from the

new zoning district, in violation of the equal protection and due process clauses of the Fourteenth Amendment of the United States Constitution and New York Constitution article I, §§ 6, 11, and in violation of the First Amendment of the United States Constitution insofar as the adult student housing law is intended to benefit a particular religious community. The twelfth cause of action asserts that the adoption of the adult student housing is illegal under New York law in that it is not rationally related to the health, safety, and welfare of the community. The thirteenth cause of action asserts that the Planning Board failed to take the hard look required by SEQRA in connection with the application for approval of the site plan proposed by Chofetz Chaim for one of the four adult student housing sites.

Prior to answering the amended petition, the Town, the Town Board, the Planning Board, and the Board of Appeals cross-moved to dismiss the amended petition, asserting, inter alia, that the four villages (hereinafter the Villages) did not have legal capacity to sue and that the appellants collectively lacked standing to raise the claims asserted here. Scenic Development, LLC, and Chofetz Chaim each separately cross-moved for the same relief on the same grounds. The Supreme Court agreed with the defendants, granted the relevant branches of the cross motions, and dismissed the amended petition insofar as asserted by the appellants. This appeal ensued.

[1–4] The first issue presented is the Villages' legal capacity to prosecute this proceeding. "Capacity to sue is a threshold matter allied with, but conceptually distinct from, the question of standing. As a general matter, capacity 'concerns a litigant's power to appear and bring its grievance before the court'" (Silver v. Pataki, 96 N.Y.2d 532, 537, 730 N.Y.S.2d 482, 755

N.E.2d 842, quoting Community Bd. 7 of Borough of Manhattan v. Schaffer, 84 N.Y.2d 148, 155, 615 N.Y.S.2d 644, 639 N.E.2d 1; see Matter of Graziano v. County of Albany, 3 N.Y.3d 475, 478–479, 787 N.Y.S.2d 689, 821 N.E.2d 114). Capacity to sue can be derived from an express statutory grant, as in the case of a business corporation or unincorporated association (see Community Bd. 7 of Borough of Manhattan v. Schaffer, supra at 155, 615 N.Y.S.2d 644, 639 N.E.2d 1), or can be inferred, even in the absence of statutory authority, where the power to sue and be sued is a necessary incident of the party's responsibilities (see Silver v. Pataki, supra at 537–538, 730 N.Y.S.2d 482, 755 N.E.2d 842; Matter of Graziano v. County of Albany, supra at 480–482, 787 N.Y.S.2d 689, 821 N.E.2d 114). Where there is no statutory authority to sue, and such authority is not necessarily implied from the entity's other powers, however, there is no capacity, and a petition or complaint must be dismissed (see Community Bd. 7 of Borough of Manhattan v. Schaffer, supra at 157, 615 N.Y.S.2d 644, 639 N.E.2d 1; Matter of Pooler v. Public Serv. Commn., 43 N.Y.2d 750, 401 N.Y.S.2d 1009, 372 N.E.2d 797).

[5,6] "Being artificial creatures of statute, [governmental] entities have neither an inherent nor a common-law right to sue. Rather, their right to sue, if it exists at all, must be derived from the relevant enabling legislation or some other concrete statutory predicate" (Community Bd. 7 of Borough of Manhattan v. Schaffer, supra at 155–156, 615 N.Y.S.2d 644, 639 N.E.2d 1; see Matter of Town of Riverhead v. New York State Bd. of Real Prop. Servs., 5 N.Y.3d 36, 41, 799 N.Y.S.2d 753, 832 N.E.2d 1169; Matter of Graziano v. County of Albany, supra at 478–479, 787 N.Y.S.2d 689, 821 N.E.2d 114). Here, the necessary statutory predicate is provided

by Village Law § 1–102(5), which authorizes villages "to sue and be sued, to complain and defend and to institute, prosecute, maintain, defend and intervene in, any action or proceeding in any court." This provision constitutes an express grant of legislative authority empowering villages to sue (see Village of Lansing v. Triphammer Dev. Co., 193 A.D.2d 919, 920, 597 N.Y.S.2d 766; see also Village Law § 4–400[1][d]; cf. Village Law § 4–412[1]). Thus, it is not necessary to consider whether the Villages' capacity to sue may be inferred as a necessary incident of their municipal responsibilities.

[7] The defendants' argument that some more specific authority is required in order to establish the Villages' capacity to sue rests on two inapposite premises. The first is that the Villages' capacity to sue is somehow limited by the principle that a municipality may not sue the State (see City of New York v. State of New York, 86 N.Y.2d 286, 293, 631 N.Y.S.2d 553, 655 N.E.2d 649). While it is true that a village is a creature of the State and, as such, cannot sue its creator (id.), the Villages are not attempting to do so here. The rule does not bar an action by one creature of the State against another. The defendants' assertion that the Villages' ability to sue is limited in the same manner as that of a governmental agency (see Community Bd. 7 of Borough of Manhattan v. Schaffer, supra; Matter of Pooler v. Public Serv. Commn., supra) is similarly misplaced. Unlike the plaintiffs in those cases, the Villages here can point to enabling legislation directly empowering them to sue. That is sufficient to overcome the defendants' argument that the Villages lack capacity.

Our holding in Village of Port Chester v. City of Rye, 234 A.D.2d 453, 651 N.Y.S.2d 146 is similarly not implicated here. The issue in that case was whether a village

could challenge a traffic regulation adopted by an adjoining city with respect to a street wholly within that city, albeit one that provided access to the village. Although we addressed the city's argument in terms of the authority of the village to sue, the city's motion to dismiss was actually predicated on its assertion that the village lacked standing to sue. The focus of our analysis in that case, which was on the issue that the village sought to raise, rather than on its general corporate powers, makes it clear that the complaint was dismissed there for lack of standing, not the absence of capacity to sue. While Village of Port Chester v. City of Rye, supra thus arguably has some relevance to the discussion of the Villages' standing here, it does not stand for the proposition that specific legislation is required before a village may commence a lawsuit.

[8,9] The defendants are correct in asserting, however, that even where the Legislature has conferred capacity to sue, it may take it away. A general power to sue necessarily yields to a "clear legislative intent negating review" (Community Bd. 7 of Borough of Manhattan v. Schaffer, supra at 156, 615 N.Y.S.2d 644, 639 N.E.2d 1; see Matter of Town of Riverhead v. New York State Bd. of Real Prop. Servs., supra at 42–43, 799 N.Y.S.2d 753, 832 N.E.2d 1169). Here, the defendants identify what appears to be such a limitation in Town Law § 264, which, after establishing various procedural requirements for the adoption of zoning regulations, provides that a village, although among the entities entitled to be heard at a public hearing held by a neighboring town with respect to a proposed zoning change, "shall not have the right of review by a court as hereinafter provided" (Town Law § 264[4]). The defendants construe this provision as depriving a village of capacity to challenge

any change in a town's zoning regulations, regardless of the manner in which the change is accomplished or the nature of the challenge. Although statutory language expressly depriving a party of a "right of review" would appear to raise an issue of capacity (see *City of New York v. State of New York, supra* at 298, 631 N.Y.S.2d 553, 655 N.E.2d 649), the Court of Appeals has addressed the corresponding provision of the Village Law (see Village Law § 7–706[3]) as presenting, instead, an issue of standing (see *Town of North Hempstead v. Village of N. Hills*, 38 N.Y.2d 334, 379 N.Y.S.2d 792, 342 N.E.2d 566). Consistent with this approach, we conclude that while Town Law § 264(4) may be of concern in addressing the issue of the Villages' standing, it does not limit the capacity to sue that they enjoy by reason of Village Law § 1–102(5).

[10] The legislative history of Town Law § 264(4) evidences a clear legislative intent that zoning changes made under the Town Law be insulated from legal challenges by neighboring municipalities. The language in issue was introduced into the Town Law in 1956 (see L. 1956, ch. 83), apparently after some controversy as to the proper role of adjoining municipalities in the zoning process. Prior to the 1950s, the Town Law, as well as the Village Law, required that a municipality seeking to adopt a zoning law first hold a public hearing "at which parties in interest and citizens shall have an opportunity to be heard" (Town Law § 264 [L. 1932, ch. 634]; see Village Law § 178 [L. 1923, ch. 564]). These statutes did not, however, address whether such parties might be entitled to judicial review. Beginning in 1952, the Legislature amended these provisions to require that various public agencies, such as regional state park commissions and housing authorities, be notified of proposed zoning changes that might be relevant to them (see L. 1952, ch. 623; L. 1954, ch. 130). Adjoining municipalities were not initially included in these notice requirements. In 1955, however, the Legislature passed a bill defining adjoining municipalities as "parties in interest" with respect to municipal zoning changes (1955 N.Y. Senate Bill S. 2356), but the bill was vetoed by Governor Harriman because "a neighboring municipality would be enabled to interfere with practically all acts of the adjoining community which would extend within five hundred feet of the boundary line" (Governor's Veto Message, April 25, 1955). A compromise bill, adopting the language that is in issue here, passed in the following legislative session and was approved by Governor Harriman (see L. 1956, ch. 83), who wrote in doing so: "In the bill now before me the objections which were raised last year have been met, the affected community now has the right to be heard but cannot otherwise interfere with the municipality which is changing its regulations" (Governor's Mem. Approving L. 1956, ch. 83, 1956 N.Y. Legis. Ann., at 453).

[11] Based upon this legislative history, there can be no real dispute that the Legislature's intent in adopting Town Law § 264(4) was to allow the adjoining municipality to have some input into its neighbor's planning process, but to deprive it of the ability to impede, through litigation, the decisions of the enacting municipality. Consistent with this, the only authoritative construction of the statute holds that the corresponding provision of the Village Law (see Village Law § 7–706[3]) prohibits a town from commencing a declaratory judgment action to challenge, as unconstitutional, a village zoning ordinance and amendment (see *Town of North Hempstead v. Village of N. Hills, supra*).

The issue that is presented here, however, differs significantly from that which was decided by the Court of Appeals in *Town of North Hempstead v. Village of N. Hills*, since the zoning change at issue here is not a product of the Town's authority under Town Law § 264. Rather, the adult student housing law, formally known as "Local Law No. 9 (2004) of the Town of Ramapo," was, as its name implies, adopted as a local law pursuant to the authority provided by the Municipal Home Rule Law (see Municipal Home Rule Law § 20). To hold that the Villages' claims with respect to the adult student housing law are barred by Town Law § 264(4) would thus require not merely that we enforce the statutory bar and adhere to its interpretation as established by the Court of Appeals, as is our obligation, but that we extend the effect of the statute to preclude all claims by one municipality with respect to the zoning enactments of its neighbors, without regard to the source of the authority by which that action is taken. Moreover, even if we were to conclude that the restriction imposed by Town Law § 264(4) applies to judicial review of a local law adopted pursuant to the Municipal Home Rule Law, we would further have to hold, in order to reach the result urged by the defendants, that the statute bars review of statutory claims, including claims under SEQRA, that did not exist at the time when Town Law § 264(4) was adopted. We conclude that such an extension of its effect is not warranted.

Despite its otherwise expansive reading of Town Law § 264(4), the Court of Appeals has held that the restriction it imposes is not absolute and must yield when a contrary legislative intent is apparent. The Court of Appeals expressly recognized this in *Town of North Hempstead v. Village of N. Hills, supra*, by distinguishing its prior decision in *Matter of Town of Bedford v. Village of Mount Kisco*, 33 N.Y.2d 178, 351 N.Y.S.2d 129, 306 N.E.2d 155, and noting the continuing vitality of the holding in that case that an independent statutory basis for standing will overcome the stricture of Town Law § 264(4) (see *Town of North Hempstead v. Village of N. Hills, supra* at 341, 379 N.Y.S.2d 792, 342 N.E.2d 566). While neither the Municipal Home Rule Law nor the statutes upon which the Villages' causes of action are predicated has expressly granted standing to an adjoining municipality to challenge the adoption of a local law, their history and purpose provide a sound basis for reaching the conclusion that such a legislative intent may safely be inferred.

[12] In 1963, eight years after the Legislature adopted the language of Town Law § 264(4) upon which the defendants rely, the voters approved New York Constitution article IX, granting significant additional authority to local governments. The Municipal Home Rule Law (see L. 1963, ch. 843) and its companion, the Statute of Local Governments (see L. 1964, ch. 205), were adopted by the Legislature to implement these new provisions (see *Holt v. County of Tioga*, 56 N.Y.2d 414, 417–418, 452 N.Y.S.2d 383, 437 N.E.2d 1140). The Municipal Home Rule Law provides, among other things, that a town is empowered to adopt local laws relating to its property, affairs, and government, as long as those laws are not inconsistent with the terms of the state constitution or any general law (see Municipal Home Rule Law § 10[1][i]). This grant includes the authority to adopt zoning changes by local law, without regard to the procedures required by the Town Law (see *Matter of Dalrymple Gravel & Contr. Co. v. Town of Erwin*, 305 A.D.2d 1036, 758 N.Y.S.2d 755; *Matter of Pete Drown, Inc. v. Town Bd. of Town of Ellenburg*, 229 A.D.2d 877, 646 N.Y.S.2d 205; *Kasper v. Town of Brookhaven*, 142 A.D.2d 213, 217, 535 N.Y.S.2d 621; *Matter of Schilling v. Dunne*, 119 A.D.2d 179, 184, 506 N.Y.S.2d 179; *North Bay*

*Assoc. v. Hope,* 116 A.D.2d 704, 706, 497 N.Y.S.2d 757; *Village of Savona v. Soles,* 84 A.D.2d 683, 446 N.Y.S.2d 639; *Yoga Socy. of N.Y. v. Incorporated Town of Monroe,* 56 A.D.2d 842, 843, 392 N.Y.S.2d 81). Considering the fact that the Municipal Home Rule Law was adopted at a time when the dispute that led to the language of Town Law § 264(4) here at issue was within memory, the absence of any corresponding provision restricting the standing of adjoining municipalities to challenge zoning changes adopted in that manner is a telling indicator of the Legislature's intent that there be no such limitation.

[13] The case for refusing to extend the effect of Town Law § 264(4) to claims raised under SEQRA is more compelling. Even within the context of its decision in *Town of North Hempstead v. Village of N. Hills, supra,* the Court of Appeals recognized the potential for inconsistency between an interpretation of Town Law § 264(4) that would deny a neighboring municipality the right to review a zoning change that may affect it and that court's identification, a few weeks earlier, in *Berenson v. Town of New Castle,* 38 N.Y.2d 102, 378 N.Y.S.2d 672, 341 N.E.2d 236, of the need for regional planning (see *Town of North Hempstead v. Village of N. Hills, supra* at 341, 379 N.Y.S.2d 792, 342 N.E.2d 566). In reaching its decision in *Town of North Hempstead,* however, the Court of Appeals had no occasion to consider the impact of SEQRA, which had been enacted in August 1975, but did not become effective until the following September (see L. 1975, ch. 612, § 2; L. 1976, ch. 228, § 3), or of the regulations implementing SEQRA, which were not initially filed until March 1976 (see 6 NYCRR 617.1 [Historical Note]). Thus, although the Court of Appeals expressly declined in *Town of North Hempstead* to allow the town's suit to proceed, under the principles of environmental standing that were then developing, that decision cannot be read as precluding a SEQRA challenge to a change in zoning regulations (see *Town of North Hempstead v. Village of N. Hills, supra* at 340–341, 379 N.Y.S.2d 792, 342 N.E.2d 566).

SEQRA, in fact, permits just such a challenge. By defining the term "agency" to include the governing body of any political subdivision of the state (ECL 8-0105[1]) and the term "action" to include any project or activity "directly undertaken by any agency" (ECL 8-0105[4][i] ) or "involving the issuance to a person of a ... permit" (ECL 8-0105[4][i] ), SEQRA clearly applies to local zoning determinations (see 6 NYCRR 617.1[c] ). SEQRA does not expressly define, however, the role of neighboring municipalities in the SEQRA review process. In addressing the broader issue of public participation in that process, the statute provides only that the draft environmental impact statement shall be "made available to the public prior to acting on the proposal which is the subject of the environmental impact statement," leaving the particulars of notice, standing, and related issues to the regulations to be promulgated by the Commissioner of the New York State Department of Environmental Conservation (hereinafter the DEC) (ECL 8-0109[6]; see ECL 8-0113[2][f], [i] ).

The DEC's SEQRA regulations developed the distinction between an involved agency, which is "an agency that has jurisdiction by law to fund, approve or directly undertake an action" (6 NYCRR 617.2[s] ), and an interested agency, which is "an agency that lacks the jurisdiction to fund, approve or directly undertake an action but wishes to participate in the review process because of its specific expertise or concern about the proposed action" (6 NYCRR 617.2[t] ). Critically, the regulations make no provision respecting the entitlement of an interested agency to judicial review, other than that "[a]n 'interested agency' has the same ability to participate in the review process as a member of the public" (id.). That ability to participate, of course, includes the right, in accordance with the applicable principles of the doctrine of standing, to seek judicial review of the SEQRA determination. SEQRA thus contemplates, that an adjoining municipality that has a concern about an action would have the same right to judicial review as any other interested party. The only conclusion that can reasonably be drawn from this is that the bar to judicial review of zoning changes by adjoining municipalities established by Town Law § 264(4) does not apply to challenges under SEQRA, and that the right of a municipality to challenge the acts of its neighbors must be determined on the basis of the same rules of standing that apply to litigants generally (cf. Town Law § 264[3] ).

[14] The issue presented by the doctrine of standing is whether the litigants "should be allowed access to the courts to adjudicate the merits of [the] dispute" (*Society of Plastics Indus. v. County of Suffolk,* 77 N.Y.2d 761, 769, 570 N.Y.S.2d 778, 573 N.E.2d 1034). The inquiry is twofold. "Generally, standing to challenge an administrative action turns on a showing that the action will have a harmful effect on the challenger and that the interest to be asserted is within the zone of interest to be protected by the statute" (*Matter of Gernatt Asphalt Prods. v. Town of Sardinia,* 87 N.Y.2d 668, 687, 642 N.Y.S.2d 164, 664 N.E.2d 1226; see *Matter of Dairylea Coop. v. Walkley,* 38 N.Y.2d 6, 10, 377 N.Y.S.2d 451, 339 N.E.2d 865). Applying these principles here, we conclude that the Villages have standing to assert the claims that they raise under SEQRA and General Municipal Law § 239–m with respect to the adoption of the adult student housing law and the revised comprehensive zoning law, and that the Village of Wesley Hills has standing to raise the SEQRA claim that is asserted with respect to the Chofetz Chaim site plan application. Moreover, the Shapiros have standing to assert the same causes of action as the Villages, as well as the causes of action alleging that the adult student housing law was not properly enacted under the Municipal Home Rule Law, that it is not consistent with the Town's comprehensive plan, and that it is not rationally related to the health, safety, and welfare of the community. The Shapiros have no standing, however, to challenge Chofetz Chaim's site plan application, and none of the appellants have standing to raise the constitutional claims that have been asserted.

[15, 16] Municipal Home Rule Law § 20 articulates the particulars of the notice, hearing, voting, filing, and publication requirements for the enactment of a local law. The purpose of these requirements is to ensure that when a town exercises the police power that has been granted to it, it does so in a manner that provides "a reasonable opportunity ... for the presentation to and consideration by the [town's board or] council of complete data and arguments for and against the proposed local law" (*Martin v. Flynn,* 19 A.D.2d 653, 654, 241 N.Y.S.2d 883). As residents of the Town and as the owners of property in close proximity to the area subject to the zoning change, the Shapiros are among the persons intended to be protected by these provisions, and are harmed by the Town's alleged failure to comply. They, therefore, have standing to assert a cause of action that these provisions have been violated (see *Matter of Duke & Benedict v. Town of Southeast,* 253 A.D.2d 877, 678 N.Y.S.2d 343; *Matter of Andrews v. Nag-*

ourney, 41 A.D.2d 778, 342 N.Y.S.2d 79, affd. 32 N.Y.2d 784, 345 N.Y.S.2d 542, 298 N.E.2d 680). The Supreme Court should not, therefore, have dismissed the Shapiros' eighth cause of action.

[17, 18] The Shapiros have a similar argument assuring that the Town did not act beyond its zoning authority by adopting a zoning law that is not consistent with the Town's comprehensive plan. Zoning laws operate to impose mutual benefits and restrictions on the parties within the community (see Topanga Assn. for a Scenic Community v. County of Los Angeles, 11 Cal.3d 506, 517, 113 Cal.Rptr. 836, 522 P.2d 12; Benner v. Tribbitt, 190 Md. 6, 20, 57 A.2d 346; Bogert v. Washington Twp., 45 N.J.Super. 13, 31, 131 A.2d 535, 545, affd. 25 N.J. 57, 135 A.2d 1). This mutuality is maintained by enforcement of the requirement that zoning decisions be made in accordance with the community's comprehensive plan (see Udell v. Haas, 21 N.Y.2d 463, 469, 288 N.Y.S.2d 888, 235 N.E.2d 897). The Shapiros own and reside upon property affected by the mutual benefits and restrictions that are enforced by the comprehensive plan requirement. They thus have an interest that is intended to be protected by the comprehensive plan requirement, and they would be harmed by the Town's failure to act consistently with its comprehensive plan. The Shapiros, therefore, have standing to raise such claims (see Matter of Sun-Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, 69 N.Y.2d 406, 409–410, 515 N.Y.S.2d 418, 508 N.E.2d 130) and, accordingly, the dismissal of the seventh and twelfth causes of action insofar as asserted by the Shapiros was in error.

[19] The Villages, by contrast, have no interest in the Town Board's compliance with either its comprehensive plan or the procedural requirements of Municipal Home Rule Law § 20. Since the Villages exercise their own zoning authority with respect to property located within their geographical jurisdiction (see Village Law § 7–700), they are beyond the bounds of the mutuality of restriction and benefit that underlies the comprehensive plan requirement. They also have, at most, a limited stake in the integrity of the governmental decision-making process in the Town. Because the interests of the Villages are thus related marginally, if at all, to the purposes intended to be promoted by the procedural requirements of Municipal Home Rule Law § 20, they do not have standing to prosecute the seventh, eighth, and twelfth causes of action (see Mahoney v. Pataki, 98 N.Y.2d 45, 52, 745 N.Y.S.2d 760, 772 N.E.2d 1118; Matter of Gizzo v. Town of Mamaroneck, 36 A.D.3d 162, 824 N.Y.S.2d 366; Matter of Rediker v. Zoning Bd. of Appeals of Town of Philipstown, 280 A.D.2d 548, 550, 721 N.Y.S.2d 77). Those causes of action were, therefore, properly dismissed insofar as asserted by the Villages.

[20] The causes of action alleging a violation of General Municipal Law § 239–m, however, may be asserted by all of the appellants. The purpose of General Municipal Law § 239–m is to "bring pertinent inter-community and county-wide planning, zoning, site plan and subdivision considerations to the attention of neighboring municipalities and agencies having jurisdiction" (General Municipal Law § 239–l) and by so doing to facilitate regional review of land use proposals that may be of regional concern (see Matter of Gernatt Asphalt Prods. v. Town of Sardinia, supra at 677, 642 N.Y.S.2d 164, 664 N.E.2d 1226). Individuals such as the Shapiros, who are affected by a land use determination that is subject to review under General Municipal Law § 239–m, have standing to assert that the enacting municipality has failed to comply with the requirements of that stat-

ute (see Matter of Duke & Benedict v. Town of Southeast, supra). Because adjoining municipalities necessarily have the same interest in the regional review that General Municipal Law § 239–m requires, the Villages also have standing to assert such claims. The appellants' ninth cause of action should not, therefore, have been dismissed.

[21, 22] The appellants' constitutional claims, however, were properly dismissed, since none of the appellants have standing to raise them. Whether a municipality is or is not a person for the purpose of asserting a violation of the Fourteenth Amendment of the United States Constitution (compare Township of River Vale v. Town of Orangetown, 403 F.2d 684, with South Macomb Disposal Auth. v. Township of Washington, 790 F.2d 500, 505; City of S. Lake Tahoe v. California Tahoe Regional Planning Agency, 625 F.2d 231, 233, cert. denied 449 U.S. 1039, 101 S.Ct. 619, 66 L.Ed.2d 502; City of New Rochelle v. Town of Mamaroneck, 111 F.Supp.2d 353, 364), it must still have a personal stake in the outcome of the litigation in order to have standing to raise an equal protection or due process claim (see Warth v. Seldin, 495 F.2d 1187, 1192 n. 6, affd. 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343). The Villages have no such stake in either of the constitutional claims. Similarly, the Shapiros, as a married couple, have no personal interest in the Town's alleged discrimination against the unmarried. While the Shapiros may have an abstract interest in whether the Town is impermissibly discriminating in favor of a particular religion, they have failed to allege any injury as a result of the allegedly unconstitutional conduct, as they are required to do (see Valley Forge Christian Coll. v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700). The

Supreme Court therefore properly dismissed, for lack of standing, the tenth and eleventh causes of action insofar as asserted by all of the appellants.

[23, 24] The appellants' remaining causes of action center upon the Town's alleged failure to comply with the requirements of SEQRA. "To establish standing under SEQRA, the petitioners must show (1) that they will suffer an environmental 'injury that is in some way different from that of the public at large,' and (2) that the alleged injury falls within the zone of interest sought to be protected or promoted by SEQRA" (Matter of Barrett v. Dutchess County Legislature, 38 A.D.3d 651, 653, 831 N.Y.S.2d 540, quoting Society of Plastics Indus. v. County of Suffolk, supra at 772–773, 570 N.Y.S.2d 778, 573 N.E.2d 1034; see Matter of Gernatt Asphalt Prods. v. Town of Sardinia, supra at 687, 642 N.Y.S.2d 164, 664 N.E.2d 1226; Matter of Blue Lawn v. County of Westchester, 293 A.D.2d 532, 533, 740 N.Y.S.2d 404).

The Shapiros live immediately across the street from the Patrick Farm site, which is one of the four sites identified in the course of the Town's review processes as subject to development in accordance with the adult student housing law. Such proximity alone permits an inference that the Shapiros possess the requisite interest in the dispute (see Matter of Gernatt Asphalt Prods. v. Town of Sardinia, supra at 687, 642 N.Y.S.2d 164, 664 N.E.2d 1226; Matter of Barrett v. Dutchess County Legislature, supra; Matter of Long Is. Contractors' Assn. v. Town of Riverhead, 17 A.D.3d 590, 594–595, 793 N.Y.S.2d 494; Matter of Rediker v. Zoning Bd. of Appeals of Town of Philipstown, supra at 550, 721 N.Y.S.2d 77). The Shapiros thus have standing to challenge the adoption of the adult student housing law as violative of SEQRA because it is inferred from their proximity to the site that they will suffer

environmental injury (see Matter of Sun–Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, supra at 413–414, 515 N.Y.S.2d 418, 508 N.E.2d 130; Golden v. Steam Heat, 216 A.D.2d 440, 628 N.Y.S.2d 375; Matter of Prudco Realty Corp. v. Palermo, 93 A.D.2d 837, 461 N.Y.S.2d 646, affd. on other grounds 60 N.Y.2d 656, 467 N.Y.S.2d 830, 455 N.E.2d 483; Matter of Marasco v. Luney, 99 A.D.2d 492, 470 N.Y.S.2d 436). The Shapiros do not allege, however, that they reside in close proximity to the Nike site, one of the four sites to which the adult student housing law applies, and the one on which Chaim Chofetz applied for site plan approval in order to construct adult student housing. Since the Shapiros have not alleged any other basis upon which they have suffered injury with respect to that site plan application, therefore, the thirteenth cause of action was properly dismissed insofar as asserted by the Shapiros.

[25] The inference from proximity that supports the standing of an individual or non-governmental entity, however, does not operate in the same way to confer standing on a municipality. That presumption rests on the unremarkable conclusion that environmental injury is the ordinary consequence of proximity to the source of a significant environmental impact (see Matter of Mobil Oil Corp. v. Syracuse Indus. Dev. Agency, 76 N.Y.2d 428, 559 N.Y.S.2d 947, 559 N.E.2d 641; Akpan v. Koch, 75 N.Y.2d 561, 569, 555 N.Y.S.2d 16, 554 N.E.2d 53; Vinnie Montes Waste Sys. v. Town of Oyster Bay, 199 A.D.2d 493, 606 N.Y.S.2d 41; Matter of Valhalla Union Free School Dist. v. Board of Legislators of County of Westchester, 183 A.D.2d 771, 583 N.Y.S.2d 503). The residents near a road that will receive substantial additional traffic from a significant development, or the neighbors of an industrial facility that will give rise to smoke or noise, are clearly affected directly by those impacts in a way that others are not (see Matter of Barrett v. Dutchess County Legislature, supra; Matter of Committee to Preserve Brighton Beach & Manhattan Beach v. Planning Commn. of City of N.Y., 259 A.D.2d 26, 32–33, 695 N.Y.S.2d 7; Matter of Parisella v. Town of Fishkill, 209 A.D.2d 850, 851–852, 619 N.Y.S.2d 169).

[26] A municipality, however, does not suffer from that traffic or noise in the same way. A municipality, as such, neither breathes foul air, nor hears loud noises, nor waits in traffic. As a result, since a municipality is limited to asserting rights that are its own (see Town of Scarsdale v. County of Westchester, 192 A.D.2d 517, 518, 595 N.Y.S.2d 811), and is not permitted to assert the collective individual rights of its residents (see Gulotta v. State of New York, 228 A.D.2d 555, 557, 645 N.Y.S.2d 41; Incorporated Vil. of Northport v. Town of Huntington, 199 A.D.2d 242, 243–244, 604 N.Y.S.2d 587), it cannot be presumed to have suffered environmental injury by reason of its proximity to the source of the impacts. A municipality thus cannot establish its standing merely on that basis.

To say that a municipality is not presumed to suffer environmental injury in the same way as an individual, however, does not mean that a municipality can never suffer cognizable environmental injury. We have held that "villages may have standing to sue in appropriate cases" (Incorporated Vil. of Northport v. Town of Huntington, supra at 243, 604 N.Y.S.2d 587), where they have "a demonstrated interest in the potential environmental impacts of the project" (Matter of Town of Babylon v. New York State Dept. of Transp., 33 A.D.3d 617, 618–619, 822 N.Y.S.2d 138). Thus, although we have denied standing to a municipality where it could not demonstrate that it was aggrieved by the determination in issue (see Village of Port Chester v. City of Rye, supra; Village of East Hills v. Siegel, 83 A.D.2d 849, 441 N.Y.S.2d 747), we have found a municipality to have standing where a specific municipal interest was articulated (see Town of Riverhead v. Long Is. Light. Co., 258 A.D.2d 643, 644, 685 N.Y.S.2d 792).

[27, 28] A municipality's "demonstrated interest in the potential environmental impacts of the project" can be established in several ways. A municipality that has been identified as an involved agency, i.e., an agency with some approval authority with respect to the project (see 6 NYCRR 617.2[s]), for example, has standing on that basis alone (see Matter of Town of Pleasant Val. v. Town of Poughkeepsie Planning Bd., 289 A.D.2d 583, 736 N.Y.S.2d 70). Direct authority over the matter, however, is not required. Municipalities, like individual litigants, have interests to protect, including property interests. In Town of Riverhead v. New York State Dept. of Envtl. Conservation, 193 A.D.2d 667, 669, 598 N.Y.S.2d 14, for example, we held that a town was entitled to litigate a challenge to an action taken by the DEC because the town was an interested property owner. Similarly, in Matter of Town of Coeymans v. City of Albany, 284 A.D.2d 830, 728 N.Y.S.2d 797, the Appellate Division, Third Department, held that where a town alleged that, as a result of a city's siting of a regional waste disposal facility within the town, "an aquifer and other water resources are subject to potential contamination and that Town public use facilities, such as schools ... would be adversely affected by blowing trash, noise and odors, [and] infestations of vectors' because of their proximity to the proposed landfill" (id. at 833, 728 N.Y.S.2d 797), the town had standing to challenge the city's compliance with SEQRA because "these alleged adverse effects are peculiar to the Town's role as a municipal agency" (id. at 833, 728 N.Y.S.2d 797).

[29, 30] The unique nature of a municipality's environmental interests, however, requires that the inquiry into its environmental standing not be a mechanical one, particularly in light of the established preference that the issues presented by land use disputes be decided on the merits (see Matter of Barrett v. Dutchess County Legislature, supra), rather than by a "heavy-handed" approach to standing (see Matter of Sun–Brite Car Wash v. Board of Zoning & Appeals of Town of N. Hempstead, supra at 413, 515 N.Y.S.2d 418, 508 N.E.2d 130; Matter of Douglaston Civic Assn. v. Galvin, 36 N.Y.2d 1, 6, 364 N.Y.S.2d 830, 324 N.E.2d 317). Applying those principles here, and assuming, as we must for the purpose of this motion, that the allegations set forth in the complaint and in opposition to the motion are true (see Matter of Long Is. Contractors' Assn. v. Town of Riverhead, 17 A.D.3d 590, 594, 793 N.Y.S.2d 494), the Villages have established a "demonstrated interest in the potential environmental impacts" of the adult student housing law sufficient to give them SEQRA standing.

The amended petition alleges that land use in the Villages is mostly low to medium density residential, and that significant parcels of land that could be developed under the adult student housing law adjoin the villages, including the 200-acre Patrick Farm site and the 4.7-acre Nike site, both of which are surrounded by low density residential uses. The amended petition alleges that the change in zoning would increase the total number of residential units that may be built on these parcels by a factor of more than 10. It further alleges that the Villages share much of their infra-

structure with the Town, and that development under the adult student housing law will generate substantial increases in water and sewage system usage and traffic. In this regard, Jeffrey Osterman, appellants' expert planner, opined in his affidavit, submitted in opposition to the defendants' cross motions, that development to the maximum potential permitted by the adult student housing law would increase water usage by 12 times over the usage generated by the current zoning. The Rockland County Sewer District, in commenting on Chaim Chofetz's proposed site plan for the Nike site, noted that the increased development, while within the existing capacity of the sewage system, "may lead to an overflow of the Sewer District's facilities in the future." In a similar vein, the Rockland County Commissioner of Planning, in comments submitted to the Town Board pursuant to General Municipal Law § 239–m, asserted that the impact to the community character of neighboring communities with low to moderate density "would be significant" and that, therefore, adult student housing of the type authorized by the adult student housing law should not be permitted "in the immediate proximity of a municipal boundary."

These assertions establish a basis for legitimate concern on the part of the Villages that the development permitted by the adult student housing law will have a substantial detrimental effect on the roads in their community, their shared water supply and sewer systems, and the character of their neighborhoods. They fall short, however, of establishing the property interest that provided the basis for the standing of the municipalities in *Town of Riverhead* and *Town of Coeymans*, since there is no claim that the Villages themselves own or otherwise have responsibility for these facilities.

Nevertheless, a municipality is more than the collection of pavement, pipes, and other improvements that make up its infrastructure. Rather, a village is a local governmental unit with broad powers, conferred not just by legislative grant, but as a matter of constitutional entitlement (*see Town of Black Brook v. State of New York*, 41 N.Y.2d 486, 489, 393 N.Y.S.2d 946, 362 N.E.2d 579; N.Y. Const. art. IX). It "is politically a separate municipality, with powers of its own and authority to govern itself as it sees fit, within the limits of the organic law of its creation and the state and federal Constitutions" (*Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 389, 47 S.Ct. 114, 71 L.Ed. 303).

In the furtherance of this authority, municipal officials exercise a broad array of powers with respect to the nature of the community, including the powers to protect and enhance the "physical and visual environment" (*see* Municipal Home Rule Law § 10[1][a][10]), and to enact zoning regulations (*see Matter of Kasper v. Town of Brookhaven, supra* at 217, 535 N.Y.S.2d 621; *Matter of Schilling v. Dunne, supra* at 184, 506 N.Y.S.2d 179; *North Bay Assoc. v. Hope, supra* at 706, 497 N.Y.S.2d 757; *Yoga Socy. of N.Y. v. Incorporated Town of Monroe, supra* at 843, 392 N.Y.S.2d 81). It is through the exercise of these powers that they define the character of the community for the benefit of its residents (*see Curtiss–Wright Corp. v. Town of E. Hampton*, 82 A.D.2d 551, 556, 442 N.Y.S.2d 125).

[31] Community character is specifically protected by SEQRA. SEQRA requires the preparation of an environmental impact statement with respect to any action that "may have a significant effect on the environment" (ECL 8–0109[2]). "Environment," for this purpose, includes, significantly, "existing patterns of population concentration, distribution, or growth, and

existing community or neighborhood character" (ECL 8–0105[6]). The criteria by which the significance of a project is determined include "the creation of a material conflict with a community's current plans or goals as officially approved or adopted" and "the impairment of the character or quality of important historical, archeological, architectural, or aesthetic resources or of existing community or neighborhood character" (6 NYCRR 617.7[c][1][iv], [v]). "The impact that a project may have on … existing community character, with or without a separate impact on the physical environment, is a relevant concern in an environmental analysis" (*Chinese Staff & Workers Assn. v. City of New York*, 68 N.Y.2d 359, 366, 509 N.Y.S.2d 499, 502 N.E.2d 176).

The power to define the community character is a unique prerogative of a municipality acting in its governmental capacity. All of the other incidents of local government, including its electoral and legislative processes, management policies, and fiscal decisions, are ultimately aimed at determining and maintaining the community that its residents desire. It is the right to continue to exercise that authority which the Villages assert here, in the face of the potential threat posed by the Town's action with respect to the property along the Villages' borders. Substantial development in an adjoining municipality can have a significant detrimental impact on the character of a community (*see Matter of National Merritt v. Weist*, 41 N.Y.2d 438, 444, 393 N.Y.S.2d 379, 361 N.E.2d 1028; *Matter of Holmes v. Brookhaven Town Planning Bd.*, 137 A.D.2d 601, 604, 524 N.Y.S.2d 492), thereby limiting the ability of the affected municipality to determine its community character in ways far more important than might the traffic concerns at issue in *Village of Port Chester v. City of Rye, supra*, or the individual variance that was challenged in *Village of*

*East Hills v. Siegel, supra*. Thus, unlike the solid waste generation fee at issue in *Incorporated Vil. of Northport v. Town of Huntington, supra*, the Villages sue here not to assert a claim that belongs to their residents individually but, rather, to protect their unique governmental authority to define their community character. The Villages have thus established a "demonstrated interest in the potential environmental impacts" of the adult student housing law, and they therefore have standing to seek judicial review of the SEQRA process that resulted in its adoption. Because it is only the Village of Wesley Hills, however, that has alleged any such interest as to the Chofetz Chaim site plan application, it is only that village that has established the requisite standing to pursue the thirteenth cause of action.

[32] Finally, the harms alleged by the appellants are not speculative and the interposition of their causes of action are not premature. The appellants suffered actual and concrete harm, and thus became aggrieved, when the adult student housing law was enacted, at which point the Town Board committed itself to a definite course of future action, notwithstanding the fact that no site plan for the development of any particular site had by then been, or has yet to be, approved (*see Matter of Eadie v. Town Bd. of Town of N. Greenbush*, 7 N.Y.3d 306, 317, 821 N.Y.S.2d 142, 854 N.E.2d 464; *Matter of Young v. Board of Trustees of Vil. of Blasdell*, 89 N.Y.2d 846, 848–849, 652 N.Y.S.2d 729, 675 N.E.2d 464; *Matter of Save the Pine Bush v. City of Albany*, 117 A.D.2d 267, 269–270, 502 N.Y.S.2d 540, *affd.* 70 N.Y.2d 193, 201–203, 518 N.Y.S.2d 943, 512 N.E.2d 526; *Matter of J.B. Realty Enter. Corp. v. City of Saratoga Springs*, 270 A.D.2d 771, 773, 704 N.Y.S.2d 742; *Matter of Price v. County of Westchester*, 225 A.D.2d 217, 220, 650 N.Y.S.2d 839; *Matter of Wing v. Coyne*,

129 A.D.2d 213, 216–217, 517 N.Y.S.2d 576; *Matter of Avy v. Town of Amenia*, 4 Misc.3d 1020(A), 2004 WL 1949174, *affd.* 27 A.D.3d 557, 813 N.Y.S.2d 134).

Accordingly, the Supreme Court correctly dismissed the appellants' tenth cause of action, as well as the seventh, eighth, eleventh, and twelfth causes of action insofar as asserted by the Villages, but incorrectly dismissed the first through sixth and ninth causes of action insofar as asserted by the Villages. The Supreme Court improperly dismissed the first through ninth, eleventh, and twelfth causes of action insofar as asserted by the Shapiros, and improperly dismissed the thirteenth cause of action insofar as asserted by the Village of Wesley Hills, but properly dismissed the thirteenth cause of action insofar as asserted by the Village of Chestnut Ridge, the Village of Montebello, the Village of Pomona, and the Shapiros.

Thus, the order and judgment is modified, on the law, by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the Villages and substituting therefor provisions denying those branches of the cross motions, by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, seventh, eighth, and twelfth causes of action as asserted by the Shapiros and substituting therefor provisions denying those branches of the cross motions, and by deleting the provisions thereof granting those branches of the defendants' cross motions which were to dismiss the thirteenth cause of action insofar as asserted by the Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions; as so modified, the order and judgment is

affirmed insofar as appealed from, without costs or disbursements, and the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the Villages, the first, second, third, fourth, fifth, sixth, seventh, eighth, and twelfth causes of action insofar as asserted by the Shapiros, and the thirteenth cause of action insofar as asserted by the Village of Wesley Hills are reinstated, and the matter is remitted to the Supreme Court, Westchester County, for a determination, on the merits, of the first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth causes of action pursuant to CPLR article 78, and for further proceedings in connection with the seventh, eleventh, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro.

The parties' remaining contentions are without merit.

ORDERED that the order and judgment is modified, on the law, (1) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the petitioners/plaintiffs Village of Chestnut Ridge, Village of Montebello, Village of Pomona, and Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions, (2) by deleting the provisions thereof granting those branches of the respondents/defendants' cross motions which were to dismiss the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro, and substituting therefor provisions denying those branches of the cross motions, and (3) by deleting the provisions thereof granting those branches of the respon-

dents/defendants' cross motions which were to dismiss the thirteenth cause of action insofar as asserted by the petitioner/plaintiff Village of Wesley Hills, and substituting therefor provisions denying those branches of the cross motions; as so modified, the order and judgment is affirmed insofar as appealed from, without costs or disbursements, the first, second, third, fourth, fifth, sixth, and ninth causes of action insofar as asserted by the petitioners/plaintiffs Village of Chestnut Ridge, Village of Montebello, Village of Pomona, and Village of Wesley Hills, the first, second, third, fourth, fifth, sixth, seventh, eighth, ninth, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro, and the thirteenth cause of action insofar as asserted by the petitioner/plaintiff Village of Wesley Hills are reinstated, and the matter is remitted to the Supreme Court, Westchester County, for a determination, on the merits, of the first, second, third, fourth, fifth, sixth, eighth, ninth, and thirteenth causes of action pursuant to CPLR article 78, and for further proceedings in connection with the seventh, eleventh, and twelfth causes of action insofar as asserted by the petitioners/plaintiffs Milton B. Shapiro and Sonya Shapiro.

RITTER, COVELLO and BALKIN, JJ., concur.



Gerald J. MURRAY, plaintiff-appellant,

v.

CITY OF NEW YORK, defendant third-party plaintiff respondent-appellant,

Cody Construction, defendant-respondent, et al., defendants;

Massand Engineering, L.S., P.C., third-party defendant-respondent.

Supreme Court, Appellate Division, Second Department.

Aug. 14, 2007.

**Background:** Worker brought action against city and general contractor, seeking to recover damages for personal injuries sustained in accident at construction site. City filed third-party claim against contractor that supervised the construction site, seeking contractual indemnification. The Supreme Court, Queens County, Elliot, J., granted summary judgment in favor of city and general contractor, and granted summary judgment in favor of subcontractor on the third-party complaint. Worker and city appealed.

**Holdings:** The Supreme Court, Appellate Division, held that:

(1) worker lacked standing to appeal from trial court's order granting summary judgment in favor of subcontractor on city's third-party claim;

(2) general contractor was not liable based on theory of negligent entrustment;

(3) city was not liable on worker's claims for common law negligence and violation of statute imposing general duty to protect the health and safety of employees;

(4) city was not liable to worker under statute which required owners and contractors to provide reasonable and

Exhibit F

```
 1                        Proceedings              19
 2           that's all, not to adjourn the
 3           proceedings.
 4                 With regard to threshold issues,
 5           Mr. Zarin is here for the individual
 6           families and for the villages.  I know
 7           of no evidence that has been set forth
 8           that the villages have authorized by
 9           resolution this application, so if he
10           has that proof, certainly I would like
11           to see it.  I think that's germane to
12           the Court's consideration of the
13           issues, that is one threshold issue.
14                 The second threshold issue, your
15           Honor, since December 14th of 2005, the
16           premises that are the subject matter of
17           this proceeding insofar as the Nike
18           site were transferred.
19                 There is necessary party called
20           Mosdos, Mosdos Chofetz Chaim Inc. who
21           has not been given notice of this
22           particular proceeding, is not a party
23           to this particular proceeding, and I
24           think before the Court issues any
25           orders, would have a right to come and
```

```
1            Proceedings              20
2       argue their respective position.
3            THE COURT:  Would you just be a
4       little more specific with regard to
5       that argument?  Who is the necessary
6       party?
7            MR. LYNCH:  The current owner of
8       the site, the person who has the permit
9       for the site.  Your Honor, I have for
10      the Court's information, if I can hand
11      it up, it's the only copy I have, a
12      copy of a permit issued by the Town of
13      Ramapo, December 15th of 2005, to
14      Mosdos Chofetz Chaim, so at least since
15      December of '05--
16           THE COURT:  Is that an individual,
17      religious corporation?
18           MR. LYNCH:  I did not do the
19      incorporation, I don't know.  If I had
20      to guess, I would guess it's a
21      religious corporation.
22           THE COURT:  It is the same as
23      Yeshiva Chofetz Chaim, is that the same
24      people?
25           MR. LYNCH:  I am not the attorney
```

Case 15-1195, Document 55, 07/29/2015, 1564752, Page238 of 310

| 1 | Proceedings | 21 |

2    for the Mosdos Chofetz Chaim.  I don't

3    know its make-up.  They were not given

4    copies of the papers.  They own the

5    property.  They have the permit.  They

6    are a necessary party, I believe,

7    before the Court can enter any

8    particular order.  I also have a copy

9    of the deed if your Honor would want

10   that particular exhibit.  I can hand it

11   up, if I could, with your Honor's

12   permission.

13        So those, I think, are threshold

14   issues.

15        THE COURT:  Would you have these

16   marked as Respondent's B and C.

17        Mr. Zarin, we don't have copies

18   for you.  We have to give you copies

19   after this argument.

20        MR. ZARIN:  Can I take a look at

21   them?

22        THE COURT:  Show them to counsel,

23   please.

24        MR. LYNCH:  Your Honor, putting

25   aside --

```
 1                    Proceedings              22
 2          THE COURT:  One moment, let's
 3    review the documents for a second.
 4          MR. LYNCH:  Forgive me.
 5          MR. ZARIN:  I would just like to
 6    point out, your Honor, it appears both
 7    parties share the same address.
 8          THE COURT:  Well, Mr. Zarin, the
 9    real question in my mind is, we need a
10    rabbinical scholar present who can
11    answer this question.  The caption says
12    Yeshiva Chofetz Chaim of Radin, and
13    that says Mosdos Chofetz Chaim, and the
14    question in my mind, two-thirds of it
15    have the same words.  Whether we are
16    dealing with the same entity or not,
17    but that is something we have to
18    determine.  I don't know.
19          MR. ZARIN:  I would also like to
20    raise, your Honor, that there have
21    been --
22          THE COURT:  One moment, let us
23    have one argument completed and then
24    you can respond.
25          Before you proceed, one of the
```

1                              Proceedings                    32

2                   if they would have recognized the risks

3                   at that time, and they would have at

4                   that time ceased construction and

5                   ceased processing this to allow the

6                   process to play itself out and we

7                   sought a calendar preference with the

8                   Appellate Division which opposed, we

9                   sought to expedite in all respects this

10                  litigation, it was opposed with

11                  sanctions, with other motions and the

12                  like, so this pleading of equity now at

13                  this stage to allow them to continue I

14                  think is really fraught with a certain

15                  amount of disingenuousness and lacks

16                  merit.

17                      On the issue of the necessary

18                  party, your Honor, this case has had a

19                  number of pleadings post December 15th,

20                  '05, both some initiated by defendants,

21                  others initiated by us, in which

22                  defendants put in papers, never was the

23                  issue raised in any of those that we

24                  were lacking the necessary party, nor

25                  was this party ever added to their

1

2          caption as a relevant party to any of

3          their particular motions concerning the

4          property, so to raise it at this stage

5          again I think is without merit and

6          certainly disingenuous.

7                    With respect to the, I think the

8          sort of underlying issue here about

9          look, the irreparable harm, there

10         should be no irreparable harm here.

11                   If we have to undertake or redo

12         SEQRA, we will redo SEQRA and see if

13         there are any mitigations, and we will

14         face the issues at this juncture.

15                   This Court sitting as the

16         environmental court I think is well

17         versed in the intent or the purported

18         intent and the meaning and the

19         practical implications of SEQRA, and if

20         plaintiffs would have, or if defendant

21         town and the applicant would have

22         recognized the import of SEQRA at that

23         time, this project may have been very

24         different, as this Court cited.  It may

25         have had less density.  It may have had

Case 7:08-cv-00156-KMK Document 104-35 Filed 05/09/14 Page 52 of 90

Supreme Court of the State of New York
Appellate Division: Second Judicial Department

M60392
E/sl

ROBERT A. SPOLZINO, J.P.
DAVID S. RITTER
JOSEPH COVELLO
RUTH C. BALKIN, JJ.

2007-08557                                   DECISION & ORDER ON MOTION

In the Matter of Village of Chestnut Ridge,
et al., petitioners, v Town of Ramapo, et al.,
respondents.

(Index No. 04-16876)

       Motion by the respondent Yeshiva Chofetz Chaim of Radin for leave to appeal to this
court from an order of the Supreme Court, Westchester County, dated September 11, 2007, and to
stay enforcement of the order pending hearing and determination of the appeal.

       Upon the papers filed in support of the motion and the papers filed in opposition
thereto, it is

       ORDERED that the branch of the motion which is for leave to appeal is denied; and
it is further,

       ORDERED that the branch of the motion which is to stay enforcement of the order
pending hearing and determination of the appeal is denied as academic.

SPOLZINO, J.P., RITTER, COVELLO and BALKIN, JJ., concur.


                              ENTER:

                                   James Edward Pelzer
                                   Clerk of the Court

September 25, 2007
       MATTER OF VILLAGE OF CHESTNUT RIDGE v TOWN OF RAMAPO

Case 7:08-cv-00156-KMK   Document 104-8   Filed 05/09/14   Page 53 of 90

<u>534</u>

Exhibit H

# WARRANTY DEED

**KNOW** ALL MEN BY THESE PRESENTS THAT:

THIS WARRANTY DEED, executed this 13th day of December, 2005,

by first party,

## YESHIVA CHOFETZ CHAIM KIRYAS RADIN INC,

a Corporation organized under the laws of the state of NEW YORK (hereinafter referred to as "Grantor") whose post office mailing address is

## 1 KIRYAS RADIN DRIVE, RAMAPO NY 10977

To the second party,

## YESHIVA CHOFETZ CHAIM INC.,

a Corporation organized under the laws of the state of NEW YORK (hereinafter referred to as "Grantee") whose post office mailing address is

## 82 HIGHVIEW RD, SUFFERN, NY 10901.

WITNESSETH, That the first party, for good consideration of FOUR MILLION DOLLARS $4,000,000.00 and pursuant to a federal court order.
(*see attached*).

and other good and valuable consideration by the said second party, the receipt of which is hereby acknowledged, does hereby grant and release unto the second party and assigns forever, all the estate, rights, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of ROCKLAND , State of New York, to wit:

SEE ATTACHED DISCRIPTION (**Attachment A**)

Previously referenced as follows:

**LOT 89/41.20-2-40,** of the Recorder of deeds in the County of Rockland .

SUBJECT TO all easements, rights-of-way, mineral reservations of record and protective covenants, if any.

TO INCLUDE, any and all gas, oil and minerals, all and any other rights under, on or in any way within the boundaries of the above described property.

TO HAVE AND TO HOLD the premises herein granted unto the second party and assigns forever. And said first party covenants as follows:

**First.** That said first party is seized of said premises in fee simple, and has good right to convey the same;

**Second**. That the second party shall quietly enjoy the said premises;

**Third.** That the said premises are free from encumbrances;

**Fourth.** That the first party will execute or procure any further necessary assurance of the title to said premises;

**Fifth.** That said first party will forever warrant the title to said premises.

**IN WITNESS WHEREOF,** The said first party has caused its corporate seal to be hereunto affixed and these presents to be signed by its duly authorized officer the day and year first above written.

Name of Corporation: **YESHIVA CHOFETZ CHAIM KIRYAS RADIN INC.**

BY Authorized Representative:

Title _SEC._

CORPORATE SEAL

Print Name: _YESHIVA CHOFETZ CHAIM KIRYOS RADIN INC._
Title: _HERSHY ITZKOWITZ        SEC._

State of NEW YORK County of ROCKLAND
On the _13TH_ day of _DECEMBER 2005_ before me, a Notary Public, appeared _HERSHY ITZKOWITZ_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

RICHARD D'ANTONO
Notary Public, State of New York
Qualified in Rockland Co. No. 04DA6039231
Commission Expires March 27, 2006

Signature of Notary    Print Name    (Seal)
My Commission Expires on _3-27-06_

(Attachment A)

**DESCRIPTION OF PROPERTY**
FOR WARRANTY DEED DATED
<u>December 13, 2005</u>

Grantor: **YESHIVA CHOFETZ CHAIM KIRYAS RADIN INC,**
Grantee: **YESHIVA CHOFETZ CHAIM INC.,**

ALL THAT tract or parcel of land situated in the Village of New Hempstead, *Town of Ramapo* County of Rockland, State of New York, and more particularly described as follows:

Beginning at the point where the centerline of Grandview Avenue at the northwesterly corner of lands of the United States of America, said point being north 84°-51'-02". Proceeding thence:

1 .    West along said centerline a distance of 613 .*15* feet, from the northwesterly corner of lands of Tosha Samaroff

2.    Thence running south 04°-23'-35" west along said lands of the United States of America, a distance of 425.00 feet;

3.    Thence north *84°—51'*-02" west through lands of the Halloran H. Brown Estate, a distance of 500.00 feet;

4.    Thence north 04°-23 *'-35"* east, still through lands of the Halloran H. Brown Estate, a distance of 425.00 feet to the centerline of Grandview Avenue;

5.    Thence south 84°51'-02" east, along said centerline, a distance of 500.00 feet to a point or place of beginning.

Containing 4.88 acres of land more or less.

Grantor: **YESHIVA CHOFETZ CHAIM KIRYAS RADIN INC,**

(Page 5 of 21)   Case 7:08-cv-00156-KMK   Document 104-3   Filed 05/09/14   Page 57 of 90
Case 13-1105, Document 59, 07/29/2013, 1004752, Page248 of 310

538

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re:                                                       Chapter 11

YESHIVA CHOFETZ CHAIM KIRYAS                                  Case No. 03-16729 (RDD)
RADIN, INC.,

                                    Debtor.
-------------------------------------------------------x

### ORDER CONFIRMING SECOND AMENDED PLAN OF
### REORGANIZATION, AS MODIFIED AND FIXING DEADLINES

Upon the Second Amended Plan of Reorganization of Yeshiva Chofetz Chaim Kiryas

Radin, Inc. dated November 23, 2005 (the "Plan")[1]; and upon the Second Amended Disclosure Statement,

As Modified, for the Second Amended Plan of Reorganization, As Modified (the "Disclosure Statement")

dated November 23, 2005; and

Upon this Court's Order (i) Preliminarily Approving Second Amended Disclosure

Statement; (ii) Fixing Date for Hearing to Consider Final Approval of Second Amended Disclosure

Statement and Confirmation of Second Amended Plan; (iii) Fixing Last Date to File Objections to Approval

of Second Amended Disclosure Statement and Confirmation of Second Amended Plan; (iv) Fixing Time

Within Which Creditors May Vote to Accept or Reject Second Amended Plan; (v) Approving the Form

and Manner of notice Thereof; and Granting Related Relief (the "Disclosure Statement Order"); and

---

[1] All capitalized terms if not expressly defined herein, shall have the meaning proscribed in the Plan.
{H:290696.DOC;2}

THE COURT HAVING HELD A HEARING on December 13, 2005, upon notice, as set forth in the Affidavit of Service of Ethel R. Zwerin, dated December 2, 2005, to consider final approval of the Disclosure Statement and confirmation of the Plan; and

IT APPEARING THAT, no objections to the final approval of the Disclosure Statement or confirmation of the Plan have been filed with this Court; and

IT FURTHER APPERING THAT, no further notice is required; it is therefore

IN ACCORDANCE with Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Court makes the following findings of fact and conclusions of law which support final approval of the Disclosure Statement and confirmation of the Plan. To the extent any finding of fact contained herein shall later be determined to be a conclusion of law, it shall be so deemed and to the extent any conclusion of law contained herein shall later be determined to be a finding of fact it shall be deemed.

## THE COURT FINDS AND CONCLUDES THAT:

### JURISDICTION AND VENUE

1.    This civil proceeding arises under Sections 1128 and 1129 of Title 11 of the United States Code and arises in a case under Title 11 of the United States Code.

2.    Jurisdiction over this civil proceeding is vested in the United States District Court for this District pursuant to Section 1334 of Title 28 of the United States Code (the "Judicial Code").

2

3.    This civil proceeding arising under Sections 1128 and 1129 of Title 11 of the United States Code and arising in a case under Title 11 of the United States Code has been referred to this Court pursuant to Section 157(a) of the Judicial Code and the *Standing Order of Referral of Cases to Bankruptcy Judges* (S.D.N.Y. July 10, 1984) (Ward, Acting C.J.).

4.    This is a core proceeding arising under Sections 1128 and 1129 of Title 11 of the United States Code and arising in a case under the Bankruptcy Code. *See* 28 U.S.C. §157(b)(1).

5.    This Court may hear and determine this proceeding and enter appropriate orders and judgments pursuant to Section 157(b)(1) of Title 28 of the United States Code. *See* 28 U.S.C. §157(b)(2)(A), (L) and (O).

6.    Venue of this civil proceeding in this district is proper pursuant to Section 1409 of the Judicial Code.

## DISCLOSURE STATEMENT

7.    On December 1, 2005, this Court entered the Disclosure Statement Order, *inter alia*, preliminarily approving the Disclosure Statement, setting deadlines for the filing of objections to the Disclosure Statement and the Plan, and approving and directing the form and manner of service of notice thereof.

8.    Additionally the Disclosure Statement Order scheduled the Confirmation Hearing to be held on December 13, 2005 to consider whether to confirm the Plan pursuant to Section 1128 and 1129 of the Bankruptcy Code.

3

{00H0899.DOC;2}

<u>SOLICITATION OF BALLOTS; OBJECTIONS</u>

      9.    As set forth in the Disclosure Statement, the Plan, and the Disclosure Statement Order, notices were served upon all interested parties in the manner required by the Disclosure Statement Order.

      10.    All persons, Entities and governmental agencies entitled or required to receive notice of the Plan have received due, proper and adequate notice of the hearings on the adequacy of the Disclosure Statement and the confirmation of the Plan.

      11.    Scott A. Steinberg, Esq. has filed an Attorney's Certification of Acceptances and Rejections of Second Amended Plan of Reorganization, As Modified (the "Ballot Certification"). As set forth in thee Plan and the Ballot Certification, one (1) class of creditors (Class 2) is impaired by the Plan. As set forth in the Ballot Certification, the Plan has been accepted by 100% of the claims voting in Class 2.

<u>CONDITIONS PRECEDENT</u>

      12.    All of the conditions precedent to Confirmation, if any, set forth in the Plan have been met or waived on the record in open court.

<u>SECTION 1129(a)</u>

      13.    The Plan complies with the applicable provisions of the Bankruptcy Code.

      14.    The Plan properly classifies Claims as required by Section 1122 of the Bankruptcy Code.

4

{00290898.DOC;2}

Case 7:08-cv-00156-KMK   Document 104-3   Filed 05/09/14   Page 61 of 90
Case 13-1195, Document 59, 07/29/2013, 1004752, Page252 of 310

**542**

15.     The Claims within each Class designated under the Plan are substantially similar.

16.     The classification of individual claims was properly made and is appropriate in accordance with the terms of the Plan and the requirements of Section 1122 of the Bankruptcy Code for the purposes of tabulating ballots accepting and rejecting the Plan and for the purposes of distribution of the consideration to be distributed to holders of claims under the Plan.

17.     The Plan specifies the classes of Claims that are impaired or not impaired under the Plan, as required by Section 1123(a)(2) of the Bankruptcy Code, and specifies the treatment of each class of Claims that is impaired under the Plan, as required by Section 1123(a)(3) of the Bankruptcy Code.

18.     The Plan provides the same treatment for each Claim of a particular class, unless the holder of a particular Claim agrees to a less favorable treatment, as required by Section 1123(a)(4) of the Bankruptcy Code.

19.     The Debtor, its agents and professionals have acted in good faith for purposes of Section 1125(e) of the Bankruptcy Code, and have complied with all applicable provisions of the Bankruptcy Code.

20.     The Plan does not discriminate unfairly, and is fair and equitable, with respect to each Class of Claims that is impaired under, and has not accepted, the Plan.

21.     The Plan provides adequate, proper and legal means for the Plan's implementation as required by Section 1123(a)(5) of the Bankruptcy Code.

5

{00290899.DOC;2}

22.     The provisions of Article VI of the Plan with respect to the rejection of Executory Contracts and Unexpired Leases are fair and appropriate and are consistent with the provisions of Section 365 of the Bankruptcy Code.

23.     The Plan is consistent with the interests of creditors and with public policy as required by Sections 1123(a)(6) and 1123(a)(7) of the Bankruptcy Code.

24.     The Debtor, as proponent of the Plan, has complied with the applicable provisions of the Bankruptcy Code, and in particular: the Debtor has served copies of the Disclosure Statement, the Plan and the Disclosure Statement Order and Notification of Non-Voting Status, as required by the Disclosure Statement Order.

25.     No creditor has solicited acceptances of the Plan or participated in the offer, issuance, sale or purchase of securities of the Debtor.

26.     The Plan has been proposed in good faith and not by any means forbidden by law and, viewed in the light of the totality of the circumstances surrounding the formulation, submission, distribution, and confirmation of the Plan, the Plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code.

27.     As required by Section 1129(a)(4) of the Bankruptcy Code, any payment made or to be made by the Debtor or any person issuing securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with this case, or in connection with the Plan and incident to this case, has been approved by, or will be subject to the approval of, this Court as reasonable.

6

{00290899.DOC;2}

Case 7:08-cv-00156-KMK Document 104-3 Filed 05/09/14 Page 63 of 90
Case 15-1195, Document 55, 07/29/2015, 1564752, Page254 of 310

544

28.     The identity, qualifications and affiliations of the persons proposed to continue to serve, after confirmation of the Plan, as the officers of the Debtor, to the extent known, have been disclosed pursuant to 11 U.S.C. §1129(a)(5)(B) and such disclosure satisfies the requirements of the Bankruptcy Code. *See, In re American Solar King Corp.*, 90 B.R. 808, 814-17 (Bankr. W.D. Tex. 1988).

29.     The provisions for the appointment to, or continuance in office of, each individual proposed to serve as an officer of the Debtor following the Effective Date is consistent with the interests of creditors and interest holders and with public policy.

30.     There are no rate changes provided for in the Plan, with respect to which rates, a governmental regulatory commission has jurisdiction over the Debtor after confirmation.

31.     The Plan has been deemed accepted in accordance with the provisions of Section 1126(f) of the Bankruptcy Code by each Class of Claims under the Plan.

32.     No holder of an allowed secured claim has made an election under Section 1111(b)(2) of the Bankruptcy Code.

33.     Except to the extent that the holder of a particular Claim has agreed to a different treatment of such Claim, the Plan provides that as soon as practicable after the Effective Date: (i) the holders of Claims of a kind specified in Section 507(a)(1) of the Bankruptcy Code, will receive on account of such Claims, cash equal to the allowed amount of such Claim, (ii) each holder of a Claim of a kind specified in Section 507(a)(8) of the Bankruptcy Code, will receive payment in Cash in full in equal annual installments over a six year period from the date of assessment, together with applicable statutory interest

7

{0029089.DOC; 2}

accruing from the Effective Date on the unpaid portion thereof and the holder of each other Claim entitled to

Priority pursuant to Section 507(a) shall receive payment in cash, in full, on the Effective Date.

34.   Pursuant to 11 U.S.C. §1126(f), the Plan has accepted the Plan by all classes.

35.   The Debtor has paid or shall pay on or prior to the Effective Date all amounts due

under 28 U.S.C. §1930.

36.   The Debtor does not maintain any Retiree Benefits, as that term is defined in

Section 1114(a) of the Bankruptcy Code.

## FEASIBILITY

37.   The Plan is feasible, and confirmation of the Plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor

under the Plan, except to the extent that such liquidation or reorganization is proposed in the Plan.

## TRANSFER TAXES

38.   The making and delivery of any instrument of transfer respecting the transfer of any

asset pursuant to or in furtherance of the Plan and any other related instruments contemplated under the Plan

(collectively, the "Transfer Documents") constitute "the making and delivery of an instrument of transfer

under a plan confirmed under Section 1129" within the meaning of Section 1146(c) of the Bankruptcy

Code and will be free of the imposition of taxes of the kind specified in Section 1146(c) of the Bankruptcy

8

{00200848.DOC;2}

Code, including, but not limited to the sale of the Debtor's property located at Kiryas Radin Drive, Ramapo, New York, in accordance with the provisions of the Plan.

IT IS THEREFORE

## DISCLOSURE STATEMENT

ORDERED, that the Disclosure Statement dated November 23, 2005, be, and the same hereby is, approved in all respects; and it is further

## CONFIRMATION

ORDERED, that the Plan meets each of the requirements of section 1129(a) of the Bankruptcy Code; and it is further

ORDERED, that the Plan, is hereby confirmed; and it is further

## VESTING OF ASSETS

ORDERED, that except as provided in the Plan, after the Effective Date all of the assets and properties of the Debtor's Estate shall vest in the Debtor, free and clear of all Liens, Claims and encumbrances, and any and all Liens, Claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date; and it is further

ORDERED that, upon confirmation of the Plan the Debtor may operate, buy, use, acquire, and dispose of the assets of the Estate and may settle and compromise any Claims, interests and causes of action free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules except as set forth in

9

{00290098.DOC;1}

the Plan; and; it is further

ORDERED that, except as otherwise provided herein or in the Plan, as of the Effective Date, all property of the Debtor shall be free and clear of all Claims of Creditors, except for the obligations that are imposed by the Plan or by a Final Order of the Bankruptcy Court; and it is further

## DISBURSING AGENT

ORDERED, that pursuant to the Plan, the Debtor shall be the Disbursing Agent; and it is further

## CONSUMMATION OF THE PLAN

ORDERED, that the Debtor may enter into such agreements as is deemed necessary to consummate the Plan without further order of the Court; and it is further

ORDERED, that except as specifically provided in the Plan, or this Order, the Debtor is authorized, directed and empowered to do all things and take all actions reasonably necessary to effectuate the consummation and implementation of the Plan, including, but not limited to, executing all documents, filing all requisite documents with appropriate state and local authorities, establishing all accounts, making all distributions and paying all costs in connection with consummating the Plan; and it is further

ORDERED, that any Liens held against the Debtor's Property by any creditor of the Debtor, must be released to the extent provided in the Plan as a condition to payment of any Allowed Claim held by such creditor; and it is further

10

{00290698;100;2}

ORDERED, that this Order and all related agreements and documents necessary to implement the Plan shall be binding upon and inure to the benefit of any successors and assigns of the Debtor; and it is further

ORDERED, that, in furtherance hereof, and in accordance with Section 1142(b) of the Bankruptcy Code, the Debtor is authorized to execute and file and record any satisfaction of lien necessary to effectuate or consummate the terms of the Plan or this Order, in their own name, in the name of the Debtor, or in the name of any necessary party thereto, and each and every federal, state and local governmental agency or department is hereby directed to accept any such document; and it is further

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

ORDERED, that in accordance with the provisions of Article VI of the Plan, on the Effective Date, all of the Debtor's Executory Contracts and Unexpired Leases shall be deemed assumed; and it is further

11

{00790898.DOC;2}

Case 7:08-cv-00156-KMK Document 104-35, Filed 05/09/14 Page 68 of 90

### TRANSFER TAXES; RECORDING AND FILING DOCUMENTS

**ORDERED,** that Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including any instrument executed in furtherance of the transactions provided for thereby within three (3) years from the Effective Date), shall not be subject to tax under any law imposing a stamp tax, Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by Section 1146, if any, shall not be subject to any state, local or federal law imposing sales tax so long as the transfer is in furtherance of the transfer contemplated under this Plan; and it is further

**ORDERED,** that from after the Effective Date, pursuant to Section 1146(c) of the Bankruptcy Code, all state and local government agencies, entities or authorities are jointly and severally restrained and enjoined from commencing or continuing any action to collect from the Debtor or its property, any stamp or similar tax within the meaning of Section 1146(c) of the Bankruptcy Code with respect to the transactions contemplated or described in the Plan; and it is further

**ORDERED,** that the Office of the Clerk of the County of Rockland in Rockland County shall record any recordable document without the payment of any New York State Real Estate Transfer Tax imposed under Article 31 of the New York Tax Law, any real property transfer tax imposed by the County of Rockland or Town of Ramapo and any other tax within the purview of Section 1146(c) of the Bankruptcy Code as set forth in the preceding two decretal paragraphs; and it is further

12

[362406998.DOC:4]

ORDERED, that each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and instruments necessary useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan and this Order; and it is further

ORDERED, that all filing officers are directed to accept for recording or filing and to record or file the transfer documents in connection with the implementation of the Plan immediately upon presentation thereof without payment of such taxes and without the presentation of any affidavits, instruments or returns otherwise required for recording, and the recording officer is directed to comply with the provisions of this Order; and it is further

## RELEASES AND INJUNCTION

ORDERED, that the provisions of the Plan shall bind the Debtor and all creditors of the Debtor; and it is further

ORDERED, that pursuant to Section 1125(e) of the Bankruptcy Code, the Debtor, its employees, attorneys, and other persons who have solicited acceptances of the Plan (or any prior drafts of the Plan), are not liable, on account of such solicitation or participation, for violation of any applicable law, rule, or regulation governing solicitation of acceptances of the Plan; and it is further

ORDERED, that, except as otherwise provided in the Plan, this Order, or any other order of the Bankruptcy Court, on and after the Confirmation Date all non-Debtor entities and individuals are

13

{00290898.DOC;1}

permanently enjoined from commencing or continuing in any manner, or otherwise prosecuting, any action or proceeding, whether directly, derivatively or otherwise, on account of or respecting any claim, debt, right, cause of action, or liability that is released or to be released pursuant to the Plan; and it is further

ORDERED, that, the foregoing injunction shall apply to the holder of a debt, claim or interest, whether or not a proof of claim was filed or deemed filed, whether such claim was allowed, whether or not the holder of such claim accepted the Plan, and whether or not the right to payment was reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and it is further

ORDERED, that, any person injured by any willful violation of the foregoing injunction may recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages from any willful violator thereof; and it is further

### STATUTORY AND PROFESSIONAL FEES

ORDERED, that the Debtor shall pay any amounts due subsequent to confirmation of the Plan under 28 U.S.C. §1930 in accordance with the terms of that section and shall file all required reports; and it is further

ORDERED, that the Debtor shall be responsible for the payment of any statutory fees due the Office of the United States Trustee for quarterly fees after the Closing until entry of a final decree in this case or until the case is dismissed or converted; and it is further

14

{00296898.DOC;2}

ORDERED, that all applications of Professionals under Sections 330 or 503(b) of the Bankruptcy Code for allowance of compensation and reimbursement of expenses accrued through the Effective Date, must be filed not later than sixty (60) days after the Effective Date, and shall only be paid pursuant to applicable orders of this Court governing payment of professional fees and the applicable provisions of the Plan.  Claims for professional fees filed after such date shall automatically be deemed disallowed for all purposes under the Plan unless and until the claimant obtains an order of the Court allowing such Claims.  Payment of any Administrative Expense Claim shall be subject to approval by the Bankruptcy Court following a hearing.  Objections to requests for payment of Administrative Expense Claims must be filed with the Court, and served on counsel for the Debtor, and the U.S. Trustee, within twenty (20) days of the service of an application requesting such payment; and it is further

### RETENTION OF JURISDICTION

ORDERED, that the Court shall retain jurisdiction of this case with respect to motions pending before this Court on or before the Effective Date and thereafter; matters provided for in the Plan, including, but not limited to the consideration of any objections filed within the time permitted pursuant to the Plan to the allowance of any Claim and such other matters as are provided for in the Plan at Article XII, including the pending claim objection motion; and it is further

15

{D0290894.DOC;2}

<u>NOTICE PROVISIONS AND CLAIMS BAR DATES</u>

ORDERED, that notice of the entry of this Order in the form of Exhibit A hereto, which form is hereby approved, shall be mailed by the Debtor to all of its creditors, and such other parties as are entitled to notice, within ten days of the date of this Order; and it is further

ORDERED, that any claims of a kind specified in Articles II or VI of the Plan that are not filed on or before the respective deadlines set forth therein shall not participate in any distribution under the Plan and shall be forever barred; neither the Debtor, nor its estate, nor any disbursing agent, nor any employee or professional person employed by any of the foregoing shall have any liability in such capacity therefor or with respect thereto; and any holder of any such claim shall be forever barred from asserting any such claim against the Debtor, the estate, any disbursing agent, any employee or professional person employed by any of the foregoing in such capactiy, or its respective property, whether any such claim is deemed to arise prior to, on or subsequent to the Effective Date; and it is further

ORDERED, that, except as otherwise hereafter directed by the Court, notice of all subsequent pleadings in this case shall be limited to (i) the Debtor, (ii) Debtor's counsel, (iii) the United States Trustee, and (iv) any party affected by the relief sought; and it is further

<u>WAIVER OF TEN DAY STAY</u>

ORDERED, that the ten (10) day stay provisions in Bankruptcy Rule 3020(e) be, and hereby are,

16

{50790298.DOC;2}

waived and the Debtor is authorized, upon entry of this Order, to implement and effectuate the terms of the

Plan and this Order.

**DATED:**     New York, New York
              December 13, 2005

                                          /s/Robert D. Drain
                                    Honorable Robert D. Drain
                                    United States Bankruptcy Judge

R+R To:
YESHIVA CHOFETZ CHAIM INC.
82 HIGHVIEW RD.
SUFFERN N.Y. 10901

{00C609991.DOC;2}

17

Exhibit I

# WARRANTY DEED

**KNOW** ALL MEN BY THESE PRESENTS THAT:

THIS WARRANTY DEED, executed this 14th day of December, 2005,

by first party,

**YESHIVAH CHOFETZ CHAIM INC,**

a Corporation organized under the laws of the state of NEW YORK (hereinafter referred to as "Grantor") whose post office mailing address is

**82 HIGHVIEW RD., SUFFERN, NY 10901.**
To the second party,

**MOSDOS CHOFETZ CHAIM INC.,**

a Corporation organized under the laws of the state of NEW YORK (hereinafter referred to as "Grantee") whose post office mailing address is

**82 HIGHVIEW RD., SUFFERN, NY 10901.**

WITNESSETH, That the first party, for consideration in the sum of
**FOUR MILLION Dollars ($4,000,000.00)**

by the said second party, and other good and valuable consideration, the receipt of which is hereby acknowledged, does hereby grant and release unto the second party and assigns forever, all the estate, rights, title, interest and claim which the said first party has in and to the following described parcel of land, and improvements and appurtenances thereto in the County of ROCKLAND , State of New York, to wit:

SEE ATTACHED DISCRIPTION (Attachment "A")

Previously referenced as follows:

**LOT 89/41.20-2-40,** of the Recorder of deeds in the County of Rockland .

SUBJECT TO all easements, rights-of-way, mineral reservations of record and protective covenants, if any.

TO INCLUDE, any and all gas, oil and minerals, all and any other rights under, on or in any way within the boundaries of the above described property.

TO HAVE AND TO HOLD the premises herein granted unto the second party and assigns

3

forever. And said first party covenants as follows:

**First.** That said first party is seized of said premises in fee simple, and has good right to convey the same;

**Second.** That the second party shall quietly enjoy the said premises;

**Third.** That the said premises are free from encumbrances;

**Fourth.** That the first party will execute or procure any further necessary assurance of the title to said premises;

**Fifth.** That said first party will forever warrant the title to said premises.

**IN WITNESS WHEREOF,** The said first party has caused its corporate seal to be hereunto affixed and these presents to be signed by its duly authorized officer the day and year first above written.

Name of Corporation: **YESHIVAH CHOFETZ CHAIM INC.**

BY Authorized Representative:
Title _____ SEC,

CORPORATE SEAL

Print Name: _ELLIOT BERNEY_
Title: _____ SEC.

State of NEW YORK County of ROCKLAND
On the _14TH_ day of _DECEMBER_ 2005 before me, a Notary Public, appeared _ELLIOT BERNEY_ personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MOSHE E. MALIK
Notary Public, State of New York
No. 4961978
Qualified in Rockland County
Commission Expires Feb. 12, 20 _06_

Signature of Notary    Print Name    (Seal)
My Commission Expires on _____

<u>(Attachment "A")</u>

**DESCRIPTION OF PROPERTY**
FOR WARRANTY DEED DATED
<u>December 14, 2005</u>

Grantor: **YESHIVA CHOFETZ CHAIM INC,**
Grantee: **MOSDOS CHOFETZ CHAIM INC.,**

ALL THAT tract or parcel of land situated in the Village of New Hempstead, *TOWN OF RAMAPO* County of Rockland, State of New York, and more particularly described as follows:

Beginning at the point where the centerline of Grandview Avenue at the northwesterly corner of lands of the United States of America, said point being north 84°-51'-02". Proceeding thence:

1 . West along said centerline a distance of 61 3.15 feet, from the northwesterly corner of lands of Tosha Samaroff

2.       Thence running south 04°-23 *'-35"* west along said lands of the United States of America, a distance of 425.00 feet;

3.       Thence north *84°—51'*-02" west through lands of the Halloran H. Brown Estate, a distance of
500.00 feet;

4.       Thence north 04°-23'-35" east, still through lands of the Halloran H. Brown Estate, a distance of 425.00 feet to the centerline of Grandview Avenue;

*5.*       Thence south 84°-51'-02" east, along said centerline, a distance of 500.00 feet to a point or place of beginning.

**Containing 4.88 acres of land more or less.**

*MOSDOS CHOFETZ CHAIM*
*82 HIGAVIEW RD.*
*SUFFERN N.Y. 10901*

Exhibit J

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

THE VILLAGE OF CHESTNUT RIDGE, THE     :
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS,  :    Index No. 04-16876
MILTON B. SHAPIRO and DR. SONYA SHAPIRO, :

                                    Assigned Judge:
           Petitioners/Plaintiffs,   :    Hon. Francis A. Nicolai

   - against -                   :

THE TOWN OF RAMAPO, THE TOWN       :    NOTICE OF AMENDED
BOARD OF THE TOWN OF RAMAPO, THE      <u>VERIFIED PETITION</u>
PLANNING BOARD OF THE TOWN OF
RAMAPO, YESHIVA CHOFETZ CHAIM OF   :
RADIN, SCENIC DEVELOPMENT, LLC, and THE :
BOARD OF APPEALS OF THE TOWN OF RAMAPO,
and MOSDOS CHOFETZ CHAIM, INC.,     :

            Respondents/Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**R E C E I V E D**

SEP 2 8 2007

CHIEF CLERK
WESTCHESTER SUPREME
AND COUNTY COURTS

      **PLEASE TAKE NOTICE**, that upon the Amended Verified Petition of

Petitioners, verified on the 23rd day of December 2004, and upon all pleadings and proceedings

previously had and filed herein, including, the Memorandum of Law in Support of Petitioners'

Article 78 Petition dated October 12, 2004; the Affidavit of Robert H. Frankl, sworn to October

5, 2004; the Affidavit of Jerome Kobre, sworn to October 6, 2004; the Affidavit of Jeffrey

Osterman, sworn to September 29, 2004; the Affidavit of Bernard Adler, sworn to October 6,

2004; the Affidavit of Jay B. Rosenstein, sworn to September 14, 2004; the Affidavit of Robert

Moskowitz, sworn to September 22, 2004, the Affidavit of Milton B. Shapiro and Dr. Sonya

Shapiro, sworn to September 30, 2004, and all exhibits annexed thereto, application will be made

to the Supreme Court of the State of New York, County of Westchester, at 111 Dr. Martin Luther

King, Jr. Boulevard, White Plains, New York on the 17th day of October, 2007, at 9:30 o'clock in the forenoon, or as soon thereafter as counsel can be heard, for a judgment granting the relief requested in the Amended Verified Petition, and

**PLEASE TAKE FURTHER NOTICE**, that pursuant to Section 7804(c) of the Civil Practice Laws and Rules ("CPLR"), a Verified Answer and supporting affidavits, if any, must be served at least five (5) days before the return date of this application and that, pursuant to CPLR Section 7804(c), Respondents are directed to file a certified copy of the proceedings to be considered herein.

Dated: White Plains, New York
September 26, 2007

Respectfully submitted,

ZARIN & STEINMETZ

By:  Michael D. Zarin
*Attorneys for Petitioners/Plaintiffs*
81 Main Street, Suite 415
White Plains, New York 10601
(914) 682-7800

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE<br>VILLAGE OF MONTEBELLO, THE VILLAGE<br>OF POMONA, THE VILLAGE OF WESLEY HILLS,<br>MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | : <br> : <br> : <br> : | Index No. 04-16876 |

THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY HILLS,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,

Petitioners/Plaintiffs,

- against -

THE TOWN OF RAMAPO, THE TOWN
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC  DEVELOPMENT, LLC, and THE
BOARD OF APPEALS OF THE TOWN OF RAMAPO,
and MOSDOS CHOFETZ CHAIM, INC.,

Respondents/Defendants. :

Index No.  04-16876

Assigned Judge:
Hon. Francis A. Nicolai

AMENDED SUMMONS

Plaintiffs designate
Westchester County as
the place of trial.  Venue
is based upon the judicial
district where the
determination complained
of was made.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

To the above named Defendants:

**YOU  ARE  HEREBY  SUMMONED**  to  answer  the  Amended  Verified

Complaint  in  this  action  and  to  serve  a  copy  of  your  Answer,  or,  if  the  Amended  Verified

Complaint  is  not  served  with  this  Amended  Summons,  to  serve  a  Notice  of  Appearance,  on  the

Plaintiffs' attorneys within 20 days after the service of this Amended Summons, exclusive of the

day  of  service  (or  within  30  days  after  the  service  is  complete  if  this  Summons  is  not  personally

delivered  to  you  within  the  State  of  New  York);  and  in  case  of  your  failure  to  appear  or  answer,

judgment  will  be  taken  against  you  by  default  for  the  relief  demanded  in  the  Amended  Verified

Complaint.

Case 7:08-cv-00156-KMK Document 104-3 Filed 05/09/14 Page 82 of 90
Case 13-v-1155, Document 69, 07/29/2013, 1004752, Page273 of 310

563

Dated: White Plains, New York
      September 26, 2007

Respectfully submitted,

ZARIN & STEINMETZ

By: _____

Michael D. Zarin
*Attorneys for Petitioner/*
*Plaintiff Villages*
81 Main Street, Suite 415
White Plains, New York  10601
(914) 682-7800

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| THE VILLAGE OF CHESTNUT RIDGE, THE VILLAGE OF MONTEBELLO, THE VILLAGE OF POMONA, THE VILLAGE OF WESLEY HILLS, MILTON B. SHAPIRO and DR. SONYA SHAPIRO, | : |

Index No. 04-16876

              Petitioners/Plaintiffs,    :

Assigned Judge:
Hon. Francis A. Nicolai

    - against -            :

THE TOWN OF RAMAPO, THE TOWN   :
BOARD OF THE TOWN OF RAMAPO, THE
PLANNING BOARD OF THE TOWN OF   :
RAMAPO, YESHIVA CHOFETZ CHAIM OF
RADIN, SCENIC DEVELOPMENT, LLC, and THE   :
BOARD OF APPEALS OF THE TOWN OF RAMAPO,
and MOSDOS CHOFETZ CHAIM, INC.,   :

AMENDED VERIFIED
PETITION
AND COMPLAINT

              Respondents/Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

        Petitioners/Plaintiffs the Village of Chestnut Ridge, the Village of Montebello, the

Village of Pomona, and the Village of Wesley Hills (collectively, the "Villages"), by their

attorneys, Zarin & Steinmetz, and Jay B. Rosenstein, Robert Moskowitz, Milton B. Shapiro and

Dr. Sonya Shapiro (collectively with the Villages, the "Petitioners/Plaintiffs"), by their attorneys

Ross & Gess, Attorneys, P.C., as and for their Amended Verified Petition and Complaint herein,

respectfully allege, as follows:

<u>SUMMARY OF ACTION</u>

      1.    Petitioners/Plaintiffs bring this hybrid action against the Town of Ramapo

and the Town Board of the Town of Ramapo (collectively, the "Town" or "Ramapo") to have the

Town's recently enacted Adult Student Housing Law declared void and unconstitutional.

565

STATE OF NEW YORK     )
                                  )    ss.:

COUNTY OF WESTCHESTER    )

Being duly sworn, Allyson Crespo hereby deposes and says as follows:

1.      I am not a party to this action and am over 18 years of age;

2.      On September 26, 2007, I served the Notice of Amended Verified Petition and Amended Summons, dated September 26, 2007, the Amended Verified Petition and Complaint with Supporting Affidavits and Exhibits, dated December 23, 2004 and the Memorandum of Law in Support of Petitioners' Article 78 Petition dated October 12, 2004 by sending a copy via Federal Express within New York State addressed to the following persons at the last known addresses set forth below:

> Joseph Haspel, Esq.
> 40 Matthews Street, Suite 201
> Goshen, NY 10924

Allyson Crespo

Sworn to before me this
27th day of September, 2007

Notary Public

DEBORAH NICHOLLS
NOTARY PUBLIC, STATE OF NEW YORK
NO. 01NI6102815
QUALIFIED IN BRONX COUNTY
COMMISSION EXPIRES 12/08/2007

**Exhibit G**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-----------------------------------------------------------------X
THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY
HILLS, JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,

Petitioners/Plaintiffs,

-against-

THE TOWN OF RAMAPO, THE TOWN BOARD
OF TOWN OF RAMAPO, THE PLANNING BOARD
OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ
CHAIM OF RADIN, SCENIC DEVELOPMENT,
LLC and ROSE OCKO FOUNDATION,

Respondents/Defendants.
-----------------------------------------------------------------X

**AMENDED ANSWER**

**Index No. 04-16876**

The Defendant, Yeshiva Chofetz Chaim of Radin ("Chofetz Chaim"), as and for its Amended

Answer to the Amended Petition/Complaint of the Petitioners/Plaintiffs respectfully states upon

information and belief as follows:

1. Denies knowledge sufficient to form a belief as to the allegations set forth in paragraphs

1-42, 52, 54, 55, 57-69, 72-124, 126-206, 208-212, 215-216, 219-225, 229-233, 236-241, 246-250,

253-257, 260-269, 273-276, 279-282, 285-289 and 292-300 and therefore denies the same.

2. Denies the allegations in paragraphs 50, 213, 217, 226, 228, 234, 242, 243, 244, 251, 258,

270, 272, 277, 283, 290, 301, 303, 304, 305, 306 and 307.

3. Admits so much of paragraph 49 that Chofetz Chaim submitted a Site Plan Application,

but denies all other allegations in said paragraph.

4. Admits so much of paragraph 125 that the property is near the Villages of Wesley Hills

and New Hempstead, but denies all other allegations in said paragraph.

5. Repeats and realleges each and every previously referenced response to the allegations referred to in paragraphs 207, 214, 218, 227, 235, 245, 252, 259, 271, 278, 284, 291 and 302 and incorporates by reference said paragraphs.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

6. That the Plaintiffs have no standing to assert their claims.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

7. The claims of the Plaintiffs are barred by operation of the Statute of Limitations.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

8. Plaintiffs' Complaint should be dismissed as since Plaintiffs are merely alter egos of the Municipal Defendants whose claims have been dismissed.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

9. This action may not be maintained due to Plaintiffs' failure to join all necessary parties to this action, and in the absence of such indispensable entities who should be parties, this action cannot proceed as a matter of law and must therefore be dismissed.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

10. The Defendant has not been served in accordance with the provisions of law and the Court therefore lacks personal jurisdiction over the Defendant.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

11. This action brought by Plaintiffs together with the remedy sought by Plaintiffs violate the rights of the answering Defendant under the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. 2000 (cc) as well as the Federal Fair Housing Act (42 U.S.C. 3604 et seq.) and the Defendant is defending this action to enforce its rights pursuant to said laws.

12. By reason of the foregoing, the Defendant is entitled to a recovery of attorneys fees

pursuant to 42 U.S.C. §1988 and 42 U.S.C. §3613(c) for the defense of this matter which seeks enforcement of the aforesaid rights.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

13. Plaintiff has failed to comply with the Notice of Claim provision set forth in General Municipal Law 50(e).

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

14. The within action should be dismissed based upon the Plaintiff's failure to comply with the provisions of General Municipal Law 50(I).

WHEREFORE, Defendant requests that the Amended Complaint and Petition be dismissed; that Defendant be awarded attorney fees, costs and disbursements; together with such other and further relief as this Court is just and proper.

Dated: October 17, 2005
South Nyack, New York

Yours, etc.

FEERICK LYNCH, PLLC

_____
Dennis E. A. Lynch
**Attorney for Defendant Yeshiva Chofetz Chaim of Radin**
96 South Broadway
South Nyack, New York 10960
(845) 353-2000

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER
-------------------------------------------------------------------X
THE VILLAGE OF CHESTNUT RIDGE, THE
VILLAGE OF MONTEBELLO, THE VILLAGE
OF POMONA, THE VILLAGE OF WESLEY
HILLS, JAY B. ROSENSTEIN, ROBERT MOSKOWITZ,
MILTON B. SHAPIRO and DR. SONYA SHAPIRO,

                    Petitioners/Plaintiffs,

       -against-

THE TOWN OF RAMAPO, THE TOWN BOARD
OF TOWN OF RAMAPO, THE PLANNING BOARD
OF THE TOWN OF RAMAPO, YESHIVA CHOFETZ
CHAIM OF RADIN, SCENIC DEVELOPMENT,
LLC and ROSE OCKO FOUNDATION,

                  Respondents/Defendants.
-------------------------------------------------------------------X

**AFFIDAVIT OF
SERVICE**

**Index No. 04-16876**

STATE OF NEW YORK    )
                         ) ss.
COUNTY OF ROCKLAND  )

     I, SHANNON DALY being sworn, says: I am not a party to the action, am over 18 years of
age and reside at New City, New York. On October 17, 2005, I served the within AMENDED
ANSWER, by placing same in an official depository under the exclusive care and custody of the U.S.
Postal Service within New York State, addressed to each of the following persons at the last known
address set forth after each name:

     ROSS & GESS, P.C.
     275 North Middletown Road
     Pearl River, New York 10965

     HOLLAND AND KNIGHT LLP
     195 Broadway
     New York, New York 10007
     Attention: Robert Bergen

RICE & AMON
2 Executive Boulevard
Suffern, New York 10901
Attention: Terry Rice

_Shannon Daly_
SHANNON C. DALY

Sworn to before me this
17th day of October 2005.

_____
NOTARY PUBLIC

DENNIS E. A. LYNCH
Notary Public #4510237
Residing in Rockland County
My Commission Expires Mar. 25, 2007

**Exhibit H**

COPY

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - -X

RABBI JAMES BERNSTEIN, ET AL.,

          Plaintiffs,


   -against-        08-CV-0156 (KMK)


THE VILLAGE OF WESLEY HILLS, ET AL.,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - -X

          November 15, 2012

          10:50 a.m.


DEPOSITION of RABBI JAMES BERNSTEIN, a

Plaintiff herein, taken pursuant to Notice,

and held at the law offices of Zarin &

Steinmetz, 81 Main Street, White Plains,

New York, before Gabriel Alicea, a Court

Reporter and Notary Public of the State

of New York.



2

```
 1   A P P E A R A N C E S :

 2

 3        JOSEPH J. HASPEL, PLLC

 4             Attorneys for Plaintiffs

 5             1 West Main Street

 6             Goshen, New York 10924

 7        BY:  TODD N. ROBINSON, ESQ.,

 8                       of Counsel

 9

10        ZARIN & STEINMETZ

11             Attorneys for Defendants

12             VILLAGE OF WESLEY HILLS

13             VILLAGE OF CHESTNUT RIDGE

14             VILLAGE OF MONTEBELLO

15             81 Main Street, Suite 415

16             White Plains, New York 10601

17        BY:  MICHAEL D. ZARIN, ESQ.

18

19   MILBER MAKRIS PLOUSADIS & SEIDEN, LLP

20             Attorneys for Defendant

21             VILLAGE OF POMONA

22             3 Barker Avenue, 6th Floor

23             White Plains, New York 10601

24        BY:  DANIEL B. GROSSMAN, ESQ.
```

800.DAL.8779
dalcoreporting.com

 DALCO

**RABBI JAMES BERNSTEIN**                                    3

1      IT IS HEREBY STIPULATED AND AGREED by and

2  between the attorneys for the respective parties

3  herein, that filing and sealing be and the same are

4  hereby waived.

5      IT IS FURTHER STIPULATED AND AGREED that all

6  objections, except as to the form of the question,

7  shall be reserved to the time of the trial.

8      IT IS FURTHER STIPULATED AND AGREED that the

9  within deposition may be signed and sworn to before

10  any officer authorized to administer an oath, with

11  the same force and effect as if signed and sworn to

12  before the Court.

13

14

15

16

17

18

19

20

21

22

23

24



4                        **RABBI JAMES BERNSTEIN**

1              RABBI JAMES BERNSTEIN,

2     having been first duly sworn by the Notary Public

3     (Gabriel Alicea), and stating his address as 20

4     Skylark Drive, Spring Valley, New York 10977, was

5     examined and testified as follows:

6

7     EXAMINATION BY

8     MR. ZARIN:

9          Q.    Good morning, Rabbi.

10         A.    Good morning.

11         Q.    My name is Michael Zarin.  I'm from the

12    law firm of Zarin & Steinmetz.  We represent the

13    villages of Wesley Hills, Chestnut Ridge, and

14    Montebello, defendants in the subject matter.  I'm

15    going to ask you some questions about the case that

16    you filed in the United States District Court for

17    the Southern District of New York entitled "Rabbi

18    James Bernstein, et al., versus the Village of

19    Wesley Hills, et al."  The purposes of this

20    deposition is to learn more about the claims you

21    believe you have against the villages.  Do you

22    understand that?

23         A.    Yes.

24         Q.    I will give you some general instructions



**RABBI JAMES BERNSTEIN**                                          5

1    for the deposition today.  As you can see, we have a

2    court reporter who is recording this deposition.  If

3    you would, please keep your voice up so that the

4    court reporter can hear you, and please answer all

5    questions verbally.  If you answer a question with a

6    physical gesture such as nodding your head, you --

7    we would ask that you say for the record what your

8    specific answer is.  Do you understand that?

9         A.    Yes.

10        Q.    I would also ask you to please allow me to

11   finish my question before you answer.  Also, if I am

12   speaking too fast or too softly, or, for any reason,

13   you don't understand my question, please either ask

14   me to slow down, speak up, or ask me to clarify the

15   question.  Do you understand that?

16        A.    Yes.

17        Q.    Once -- once you ask the question, I will

18   assume that -- withdrawn.

19             Once you answer the question, I will

20   assume that you understand the question and that you

21   are replying with that understanding.  Do you

22   understand that?

23        A.    Yes.

24        Q.    Okay.  Rabbi, are you currently employed?



**RABBI JAMES BERNSTEIN**

```
 1        A.    Yes.

 2        Q.    Where is your place of business?

 3        A.    The yeshiva of Chofetz Chaim.

 4        Q.    And what's the location?

 5        A.    In the property on Grandview Avenue in

 6   Monsey.

 7        Q.    And how long have you been employed there?

 8        A.    I've been affiliated with Rabbi Zaks's

 9   yeshiva for about 15 years.

10        Q.    And do you receive any compensation?

11        A.    Yes, I do.

12        Q.    Can you tell me what that is?

13        A.    It's about a thousand dollars a month.

14        Q.    And how long have you been employed with

15   respect to the -- what we're going to refer to as

16   the Nike site for just easy -- easy reference?

17        A.    How long have I been employed?

18        Q.    How long have you been employed at the

19   Nike site?

20        A.    Not sure.  I'm not sure how to answer

21   that.  I -- I lived there for about -- in the

22   beginning, before it was -- before it was rebuilt,

23   I -- I lived there for about eight years until they

24   took it down.  Is -- as it's been -- the property
```



1  has been developed, and the synagogue has been

2  opened.  I've been -- I've been there working,

3  studying, teaching.  So that's about since

4  January -- it's going to be two years this -- this

5  coming January.

6       Q.   Okay.  And what are your -- your duties at

7  the -- what do we call it, yeshiva?  What are your

8  duties at the yeshiva?

9       A.   Basically, I study, and I teach other

10 people.

11      Q.   And who is your employer?

12      A.   Rabbi Zaks.

13      Q.   Personally?

14      A.   I guess it's the mosdos of Chofetz Chaim.

15      Q.   And do you have a -- any type of contract

16 with respect to your employment?

17      A.   No.

18      Q.   And do you receive payment by check?

19      A.   Sometimes, by check.  Sometimes, by cash.

20      Q.   And when you receive payment by check,

21 what is the name on the check, besides yourself, the

22 issuer?

23      A.   I can't recall.

24           MR. ZARIN:  I would ask, at this time, if



Case 7:08-cv-00156-KMK Document 104-5 Filed 05/09/14 Page 9 of 146
Case 1:08-cv-00156-KMK Document 104-5 Filed 05/09/14 Page 2 of 80

580

**8**          **RABBI JAMES BERNSTEIN**

1          you would please produce whatever copies you

2          have of checks that you may have received in

3          compensation for your employment at the yeshiva

4          over the past two years.

5               MR. GROSSMAN:   Join.

6

7     DOCUMENT/INFORMATION REQUESTED:

8

9          Q.   What do you teach at the yeshiva?

10         A.   Talmud.

11         Q.   Is it a full-time employment?

12         A.   Yes.

13         Q.   Do you have other duties at the yeshiva?

14         A.   Do I have other duties at the yeshiva?   I

15    don't think so.

16         Q.   How many hours a day would you estimate

17    that you teach?

18         A.   About -- I would say about seven -- seven

19    hours a day.

20         Q.   And do you have regular classes?

21         A.   Yes.

22         Q.   And how many classes a day does that

23    involve?

24         A.   Oh, it -- it varies from day-to-day.



**RABBI JAMES BERNSTEIN**                        9

```
1        Q.    Is there an average?

2        A.    An average of how many classes?  I would

3   say three.

4        Q.    And how long is each class?

5        A.    Each class is probably an hour.

6        Q.    And how many students, approximately, are

7   in a class?

8        A.    Usually, it's a small group, one or two.

9   Sometimes, I give a lecture to -- to a large orient.

10       Q.    Are these students -- strike that.

11             Do -- do all of the students who are in

12  your classes currently live at the Nike site?

13       A.    No.

14             MR. ROBINSON:  Objection.  If you know.

15       Q.    From how large an area do you attract

16  students?

17       A.    I believe they live in the -- the environs

18  of Spring Valley and Monsey.

19       Q.    Are these students formally enrolled in

20  the yeshiva?

21             MR. ROBINSON:  Objection.  If he knows.

22

23       (An off-the-record discussion was held.)

24
```



10     **RABBI JAMES BERNSTEIN**

1      A.   I don't know.

2      Q.   Are these students formally part of any

3    school?  Are they --

4      A.   I also don't know.

5      Q.   Are these -- the students that you teach,

6    are they -- are they the same students each week or

7    each month that you teach?

8      A.   Yes.

9      Q.   And are they enrolled in -- in the school

10   that you teach or the program?

11     A.   As I say, I -- I don't know.

12     Q.   To the best of your knowledge, do they pay

13   tuition to the yeshiva?

14     A.   Also, I don't know.

15     Q.   Is the yeshiva the correct name of the

16   school that you teach within?

17     A.   Yes.

18     Q.   Are the students that you teach members of

19   the yeshiva?

20     A.   I can't tell you.

21     Q.   I'm trying to understand what the

22   students' affiliation is to the yeshiva.  Do you

23   have any idea, the students you teach, how they are

24   affiliated with the yeshiva?



```
 1        A.    It's not my responsibility, so I don't

 2    know.

 3        Q.    Do you have any responsibility for

 4    administrative duties concerning the yeshiva?

 5        A.    No.

 6        Q.    So your -- your role is solely to teach

 7    approximately three to four classes a day on a

 8    full-time basis?

 9        A.    Yes.

10        Q.    Are you currently involved in any other

11    employment at this time?

12        A.    I -- I also give a class over the

13    telephone, long distance.  And I'm writing a book.

14    A few -- a few odds and ends.

15        Q.    Do you know how many students in total

16    attend yeshiva classes?

17        A.    No.  I can't tell you.

18        Q.    How many other -- strike that.

19              Are there other teachers such as yourself

20    currently teaching at the yeshiva?

21        A.    Yes.

22        Q.    How many?

23        A.    I can't tell you.  It's many.

24        Q.    And are they pretty much on the same type
```

800.DAL.8779
dalcoreporting.com



12          **RABBI JAMES BERNSTEIN**

1    of schedule as you are?

2          A.   No.  It's -- it's different.  Many of them

3    have a more formalized program.  I'm a little bit

4    older.  And it's more -- it's more flexible for me.

5          Q.   What's a "formalized program"?  What does

6    that mean?

7          A.   In other words, there are -- there are

8    students and teachers that have, you know, certain

9    hours of the day where they have sessions.  They

10   have morning sessions, afternoon sessions.  There's

11   an evening session.

12         Q.   Are you aware of how many of those

13   teachers there are --

14         A.   No.

15         Q.   -- at the yeshiva?

16         A.   No.

17         Q.   And what's the average class size, for

18   example, for those types of sessions?

19         A.   I can't tell you offhand.

20         Q.   Do you ever attend those sessions?

21         A.   I'm not -- not so much, no.

22         Q.   Who hired you to teach at the yeshiva?

23         A.   Rabbi Zaks.

24         Q.   When was the approximate date of your



**RABBI JAMES BERNSTEIN**                                    13

1    hiring?

2         A.   Well, as I said, I've been involved with

3    the -- with the yeshiva and the property there, you

4    know, living.  And I used to -- I used to study at

5    the yeshiva on Highview, the other -- other area of

6    Monsey.  So this has been on and off for 15 years.

7         Q.   And have you received, approximately, the

8    same compensation or income from Mr. Zaks during

9    those 15 years?

10        A.   No.  This has been about, I would say,

11   approximately, eight years that I've been receiving

12   this compensation.

13        Q.   And do you receive any other compensation

14   or income?

15        A.   Yes.

16        Q.   Can you name that, please.

17        A.   I mean, I have various sources.  I, you

18   know -- basically, people give me donations.  I

19   receive from Georgia, where I -- where I give some

20   classes over the phone.  My -- my parents help me.

21        Q.   And the donations that people make to you,

22   what -- what is the purpose or source of that?

23        A.   The purpose or source is, you know, kind

24   of a stipend to help me make my household expenses.

800.DAL.8779
dalcoreporting.com



14                    **RABBI JAMES BERNSTEIN**

1        Q.    Who makes such donations?

2        A.    Members of the community.

3        Q.    Prior to your teaching at the yeshiva, did

4    you teach at any other schools?

5        A.    Yes.  I was in Savannah, Georgia for nine

6    years, where I ran an adult education program, and I

7    was affiliated with a children's school.

8        Q.    Are these both Jewish religious studies?

9        A.    Yes.

10       Q.    What was your compensation at those --

11       A.    In terms of dollars?

12       Q.    Yes.

13       A.    Something like $20,000.

14       Q.    Annual?

15       A.    Yes.

16       Q.    And what is your educational background?

17       A.    I went to a number of yeshivas over a

18   period -- number of years.  I have a university

19   degree as well.

20       Q.    Where was that degree from?

21       A.    University of Wisconsin and Madison.

22

23       (An off-the-record discussion was held.)

24



1      Q.    What was your degree from the University

2   of Wisconsin?

3      A.    BA in linguistics.

4      Q.    And what -- what yeshivas did you attend

5   with respect to obtaining any type of degree or

6   certification?

7      A.    Well, I went to a number -- a number of

8   yeshivas.  I went to one -- I went to yeshivas in

9   Chicago.  In Israel, I went to a number of yeshivas

10  in Jerusalem and Bnei Brak.  It's near Tel Aviv.

11  Then I went to a koloeo -- it's for married

12  couples -- for six years in Jerusalem before I came

13  to America.

14     Q.    And did you receive any type of formal

15  degrees or certifications from any of these schools

16  or yeshivas?

17     A.    Yes.  The koloeo for the married couples,

18  I did.  This is going to be about 1986.  I received

19  an ordination.

20     Q.    And the ordination permits you to teach

21  Torah and rabbinical studies at yeshivas?

22     A.    Yes.

23     Q.    Do you currently live at the Kiryas Radin

24  or Nike site?


800.DAL.8779
dalcoreporting.com
DALCO

16                    **RABBI JAMES BERNSTEIN**

1        A.    No.

2        Q.    Have you ever lived at the -- have you

3   ever lived in the current buildings that are now --

4   have now been constructed on the Nike site?

5        A.    No.

6        Q.    Of the students you currently teach at the

7   yeshiva, do you have any idea how many of them live

8   at the site versus come from the outside?

9        A.    I don't think -- I don't think any of the

10  ones I teach live at the site.

11       Q.    Do you know students who are currently

12  living at the site?

13       A.    Yes.

14       Q.    Do you know whether they have a lease to

15  live at the site?

16       A.    No.

17       Q.    Do you know whether they pay rent to live

18  at the site?

19       A.    No.

20       Q.    No, they do not pay, or no --

21       A.    I don't know.  I don't know.

22       Q.    How -- how long does a student that you

23  have now study at the yeshiva?

24       A.    Oh, there's no -- I don't think there's

800.DAL.8779
dalcoreporting.com



1    any time limit.  Many of the people that I -- I

2    teach are working and, you know, whatever suits

3    their schedule.  So there's -- there's no time --

4    time limit.

5         Q.    Does -- does the yeshiva currently provide

6    any type of accreditation or certification once they

7    complete the courses?

8         A.    I don't know.

9         Q.    Who would know the answers to some of the

10   questions on how the yeshiva functions, if you know?

11        A.    I don't know.

12        Q.    You also mention that you study at the

13   yeshiva; is that correct?

14        A.    Yes.

15        Q.    And how often do you study at the yeshiva?

16        A.    So, much of my time is spent, you know,

17   researching and preparing.  Probably -- probably

18   most of my time is spent doing that.

19        Q.    And you will be physically located at the

20   Nike site when you are performing those activities?

21        A.    Yes.

22        Q.    And when you do research, what types of

23   books and documents are you researching?  Are they

24   located at the site?


800.DAL.8779
dalcoreporting.com
DALCO

1        A.    Yes.    There's a library there, yes.

2        Q.    How long have you been studying at the

3    Nike site?

4        A.    Well, it's gone through different stages.

5    I've been there -- as I'm saying, I've been there

6    for 15 years --

7        Q.    Let me clarify.  Since -- since the

8    current buildings were located at the site.

9        A.    As I mentioned, when the synagogue opened,

10    which, I believe, is going to be two years this

11    coming January.

12        Q.    Prior to the synagogue actually opening,

13    did you study at the site, or were you involved in

14    any other religious activities at the site?

15        A.    Yeah.  So there had been a -- there had

16    been a synagogue there in the old quarters.  Then it

17    had to move to the school that's nearby, you know.

18    It was kind of a facility that was owned by a public

19    school.  So the synagogue was there.  And the

20    studying was taking place there for -- for a couple

21    of years.

22        Q.    This was the time after the buildings were

23    built on the Nike site, but before they received all

24    the approvals to occupy --



```
 1        A.    Yes.
 2        Q.    And the first time that you began either
 3   studying or engaged in any religious activities at
 4   the site was approximately two years ago when the
 5   synagogue opened?  Is that your testimony?
 6        A.    Yes.
 7        Q.    Are you familiar with the term known as
 8   the AARTS program?
 9        A.    I've heard of it.
10        Q.    Do you know what AARTS stands for?
11        A.    I -- I don't remember the exact -- the
12   exact words.
13        Q.    How long have you lived at the current --
14   your current home?
15        A.    So this is since they -- they demolished
16   the former structures at the site.  So it's going to
17   be, I believe, January of 2006.  No.  I first moved
18   to another building.  Then I've been in this address
19   for about four years.
20        Q.    Where was the other building?
21        A.    The other building was on the other side
22   of Kiryas Radin.  It's called Pleasant Ridge.
23        Q.    Who owned that building?
24        A.    A gentleman.  I can't remember his name
```

800.DAL.8779
dalcoreporting.com



20       **RABBI JAMES BERNSTEIN**

```
 1   offhand.
 2        Q.   Did you rent space at that building?
 3        A.   Yes.
 4        Q.   Was this a single-family home?
 5        A.   Yes.
 6        Q.   Do you recall the address?
 7        A.   I can't recall the exact -- the exact
 8   address.
 9        Q.   And you rented a -- a room in the home,
10   or --
11        A.   The house.  We rented the house.
12        Q.   When you say "we," who --
13        A.   My family.
14        Q.   And your family is made up of who?
15        A.   I have -- I have a wife and seven
16   children.
17        Q.   And then you moved to your current --
18   current home?
19        A.   Yes.
20        Q.   Approximately, four years ago?
21        A.   Yes.
22        Q.   And why did you move?
23        A.   The other house was -- was demolished to
24   build a -- a new house for the owner.
```



1      Q.    Who is the owner again?

2      A.    I can't remember his name.

3      Q.    And where -- what town again was this

4   located?

5      A.    Right behind the Nike site.

6      Q.    Behind the Nike site?

7      A.    Yeah.

8      Q.    But not part of the site where the current

9   buildings are located?

10     A.    No.  No.

11     Q.    And was the owner of that house part of

12  the Chofetz Chaim community?

13     A.    No.

14     Q.    How did -- how did you end up renting from

15  this individual?

16     A.    I think -- I think Rabbi Zaks arranged it.

17     Q.    Do you recall what you paid in rent?

18     A.    No.

19     Q.    Did anyone pay the rent on your behalf?

20     A.    I -- I might have received -- I can't

21  remember what they call it.  I may have received

22  some -- some --

23     Q.    Subsidy?

24     A.    Yeah.  That went towards that.



800.DAL.8779
dalcoreporting.com

22                    **RABBI JAMES BERNSTEIN**

1       Q.    This would be wages that you would have
2  received from Rabbi Zaks for teaching at the
3  yeshiva?
4       A.    Yes.
5       Q.    You are saying that some -- some of your
6  wages may have been paid directly to the individual
7  you rented the home from?
8       A.    No.  I can't remember what they call it.
9  No.  But they gave -- they would give me some money
10  that I could use for household expenses.
11       Q.    A household stipend?
12       A.    Yeah.
13       Q.    And when you moved to your current
14  location, is that the -- basically, the same
15  arrangements exist today?
16       A.    Yes.
17       Q.    And you -- you rent today?
18       A.    Yes.
19       Q.    And who do you rent from?
20       A.    I rent from the -- the owner, who lives in
21  Israel.
22       Q.    And did someone find you that house?
23       A.    Yes.
24       Q.    And who --

800.DAL.8779
dalcoreporting.com


1      A.    Rabbi Zaks.

2            MR. GROSSMAN:  Is there more than one

3      Rabbi Zaks?

4      Q.    Can you name what Rabbi Zaks you've been

5      referring to?

6      A.    Rabbi Meir Zaks.

7      Q.    Now, are you aware that certain yeshivas

8      to create accredited post-secondary educational

9      institutions must obtain AARTS accreditation?

10     A.    Yes.

11     Q.    And do you know how a yeshiva obtains such

12     accreditation?

13     A.    No.

14     Q.    Does your current yeshiva have AARTS

15     accreditation?

16     A.    No.

17     Q.    To the best of your knowledge, did the

18     yeshiva ever seek AARTS accreditation?

19     A.    Yes.

20     Q.    When?

21     A.    I don't know.

22     Q.    What's your -- where do you derive that

23     knowledge?

24     A.    I just know that's always something that

800.DAL.8779
dalcoreporting.com

DALCO

24     **RABBI JAMES BERNSTEIN**

1   has been discussed.  It was a plan that they aspired

2   towards.

3        Q.    And do you know who would have been

4   responsible for seeking such accreditation?

5        A.    No.

6        Q.    And who did you hear about that plan from?

7        A.    Rabbi Zaks.

8        Q.    And did he ever discuss with you the

9   status of seeking such accreditation?

10       A.    No.

11       Q.    Can you describe to me, if you know, what

12   are the criteria or requirements for a yeshiva to

13   obtain AARTS accreditation?

14       A.    I don't know.

15       Q.    When did you first become aware that the

16   yeshiva aspired to AARTS accreditation?

17       A.    I can't say.  It's just always been a

18   topic of discussion.

19       Q.    But you are not aware of what if any

20   activities were taken to acquire such accreditation?

21       A.    No.

22       Q.    When you taught at the Grandview site, was

23   that building also owned by Chofetz Chaim?

24       A.    The Grandview site, meaning the -- the new



1  building?

2      Q.   No.  I'm sorry.  The prior -- Highview,

3  who owned that building?

4      A.   Who owned that building?  I -- I believe

5  the yeshiva.

6      Q.   And did you teach, essentially, the same

7  classes or types of classes at -- at that building

8  or when the yeshiva was located there as you are

9  currently?

10     A.   Very similar.

11     Q.   Do you have any of the same students today

12 that you were teaching at the Highview site?

13     A.   Yes.

14     Q.   Can you give me a percentage?

15     A.   Maybe half.

16     Q.   Do you know how many families currently

17 live at the Kiryas Radin campus?

18     A.   No.

19     Q.   You mentioned that you teach and study at

20 the Nike site.  Do you attend prayer at the Nike

21 site?

22     A.   Yes.

23     Q.   And when did you begin attending prayer?

24     A.   Again, just, specifically, that -- the new

800.DAL.8779
dalcoreporting.com



26  **RABBI JAMES BERNSTEIN**

1  building, or --

2      Q.    The new buildings, yes.

3      A.    As long as it's been there, those two

4  years.

5      Q.    When you say "as long as it's been there,"

6  the buildings have been there longer than two years?

7      A.    When the synagogue opened, about two years

8  ago, this coming January.

9      Q.    Okay.  Was there a formal ceremony when

10  the synagogue opened?

11      A.    Not that I -- not that I recall.

12      Q.    Was there any type of formal event?  Do

13  you recall when it opened?

14      A.    Yes.  I think -- I think Rabbi Zaks was

15  having a wedding.

16      Q.    At the -- at the synagogue?

17      A.    No.  What -- something related to -- to

18  the wedding.  The wedding didn't occur there.  A

19  special Sabbath with special guests related to the

20  family.

21      Q.    You believe that was the first time --

22      A.    That it opened, yeah.

23      Q.    Let me, please, finish the question.

24      A.    I'm sorry.



1    Q.    Thank you.  How often do you pray at the
2  synagogue?
3    A.    Three times a day.
4    Q.    And how long a period each time?
5    A.    In the morning, it's been 45 minutes.  In
6  the afternoon, it's about 15 minutes.  And in the
7  evening, it's about 15 minutes.
8    Q.    And do all the students that you teach
9  also pray at the synagogue?
10    A.    All the students that I teach?  No.
11    Q.    Do many of them also pray, the ones you
12  teach?
13    A.    Some of them do, yes.
14    Q.    And some of them will do it also three
15  times a day?
16    A.    Yes.
17    Q.    What percent, if you know, would you
18  estimate of the students you teach also pray at the
19  synagogue -- at the Nike site?
20    A.    I really can't tell you, offhand.  I would
21  have to sit down and --
22    Q.    Are your children in school?
23    A.    Yes.
24    Q.    And what school do they go to?



1        A.    Well, they range different ages, so they

2   go to many different schools.

3        Q.    Can you name a couple of them?

4        A.    Well, there's -- my youngest daughter goes

5   to a high school for girls called Bais Yaakov in

6   Monsey.  And I have one daughter who is in Israel.

7   And I have a son who is in the mountains in

8   Peekskill.  And I have three sons in Lakewood, New

9   Jersey.

10        Q.    And they are all currently enrolled in

11   religious studies?

12        A.    Yes.  And I have a married daughter who

13   lives on the site with her children.

14        Q.    How long has she lived on the site?

15        A.    How long has she lived on the site?  I

16   don't know, exactly.  I can't tell you, exactly.

17        Q.    Approximately?

18        A.    I would say a year-and-a-half.

19        Q.    And what's her name?

20        A.    Her name is Ester Reeds.  The last name is

21   R-E-E-D-S.

22        Q.    That's her married name?

23        A.    Yes.

24        Q.    How many children?

